**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Defendant. | CIVIL ACTION NO. 3:16-cv-2921 |

**ORIGINAL COMPLAINT**

Exxon Mobil Corporation is the common parent of an affiliated group of corporations (collectively, "**ExxonMobil**") as defined in section 1504 of the Internal Revenue Code of 1986 (the "**Code**").[1] ExxonMobil and its affiliates are engaged in the exploration, development, and production of crude oil and natural gas; the manufacture of petroleum products; and the transportation and marketing of crude oil, natural gas, petroleum, and petroleum products. ExxonMobil seeks a refund of federal income taxes that the United States of America, acting through the Commissioner of the Internal Revenue Service (the "**Commissioner**"), erroneously assessed and collected from ExxonMobil by denying its claims for refund as described below.

The Commissioner erroneously assessed and collected the taxes at issue in two ways. First, the Commissioner erroneously disallowed ExxonMobil's claims for a refund of income tax paid for 2008 and 2009 by determining that a certain federal credit for alcohol blending activities is included in gross income. Second, the Commissioner erroneously disallowed ExxonMobil's claims for a refund of income tax paid for 2006, 2007, 2008, and 2009 by determining that certain transactions were mineral leases, rather than purchases, for federal income tax purposes.

---

[1] Unless otherwise stated, all "section" references herein are to the Code (26 U.S.C.), as amended, through the years in issue.

ExxonMobil brings this action to recover the erroneously assessed and collected federal income taxes, plus statutory interest thereon as provided by law, for ExxonMobil's taxable years 2006 through 2009 (collectively, the "**Disputed Tax Years**").[2]

## I. PARTIES

1. Exxon Mobil Corporation is a New Jersey corporation with its global headquarters and principal place of business located at 5959 Las Colinas Boulevard, Irving, Texas 75039-2298. Exxon Mobil Corporation's Employer Identification Number is 13-5409005, which is reflected on all returns and claims described below.

2. Defendant is the United States of America. Service of process may be made on Defendant by certified mail, return receipt requested, to the following:

    a.    Loretta E. Lynch
           Attorney General for the United States
           Department of Justice
           950 Pennsylvania Ave., N.W.
           Washington, D.C. 20530-0001

    b.    Civil Process Clerk
           United States Attorney
           1100 Commerce Street
           Third Floor
           Dallas, Texas 75242-1699

    c.    John A. Koskinen
           Commissioner
           Internal Revenue Service
           1111 Constitution Ave., N.W.
           Washington, D.C. 20224

---

[2] ExxonMobil's taxable year is the calendar year.

## II. JURISDICTION AND VENUE

### Jurisdiction

3.   The Court has jurisdiction over this dispute under 28 U.S.C. § 1346(a)(1) because this is an action against the United States for the recovery of internal revenue taxes erroneously assessed and collected from ExxonMobil.

   a.   ExxonMobil timely filed a consolidated corporate income tax return for each of the Disputed Tax Years with the Internal Revenue Service Center in Austin, Texas, and has paid the total tax assessed for those years as follows:

| Taxable Year | Tax Paid |
| --- | --- |
| 2006 | $3,695,187,422 |
| 2007 | $3,893,091,559 |
| 2008 | $1,741,428,305 |
| 2009 | $   139,912,688 |

   b.   On June 26, 2014, ExxonMobil timely filed an Amended U.S. Corporation Income Tax Return ("**Form 1120X**") for 2006 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $264,720,803 plus statutory interest.

   c.   On June 26, 2014, ExxonMobil timely filed Form 1120X for 2007 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $297,976,031 plus statutory interest.

   d.   On April 13, 2015, ExxonMobil timely filed Form 1120X for 2008 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $652,852,400 plus statutory interest.

   e.   On April 13, 2015, ExxonMobil timely filed Form 1120X for 2009 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $138,971,996 plus statutory interest.

    f. None of ExxonMobil's Form 1120X claims for refund have been allowed or paid by the Commissioner for any Disputed Tax Year. The Commissioner disallowed such claims for refund by two notices of disallowance dated May 5, 2016.

    g. Therefore, the Court has jurisdiction because for each Disputed Tax Year ExxonMobil (i) made full payment of the taxes assessed, as required by 28 U.S.C. § 1346(a)(1) and *Flora v. United States*, 362 U.S. 145 (1960); (ii) timely filed its Form 1120X claims for refund, as required by sections 6511(a) and 7422(a); and (iii) filed this complaint within the time period prescribed in section 6532(a).

Venue

  4. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1402 because Exxon Mobil Corporation's principal place of business is located in this judicial district.

III. FACTUAL BACKGROUND

The Alcohol Fuel Credit is excluded from gross income.

  5. ExxonMobil Oil Corporation ("**EMOC**") is a member of the affiliated group of corporations for which ExxonMobil, as parent, files a consolidated federal income tax return. Thus, for federal income tax purposes, ExxonMobil takes into account the income, gains, deductions, losses, and credits of EMOC on its consolidated return.

  6. EMOC is a New York corporation, with its headquarters and principal place of business in Irving, Texas. EMOC's business is the production, refining, marketing, and transportation of petroleum, natural gas, and petroleum products.

  7. Section 4081(a) imposes a federal excise tax on the removal of taxable fuel from a refinery or terminal; the entry into the United States of taxable fuel for consumption, use, or warehousing; and certain sales of a taxable fuel. The rate of the section 4081 excise tax depends

on the type of taxable fuel, and ranges from $0.184 per gallon for non-aviation gasoline to $0.244 per gallon for diesel fuel or kerosene.

8. Taxpayers who incur federal excise taxes must file Form 720 quarterly and pay any excise tax not yet paid or otherwise satisfied. Each entity liable for the section 4081 excise tax must file its own Form 720. Unlike federal income tax returns, a common parent of an affiliated group of corporations cannot file a single Form 720 for its affiliated group.

9. In connection with its refining and terminal operations, EMOC incurred $3,106,273,065 of section 4081 excise tax liability in 2008 and $2,899,496,300 of section 4081 excise tax liability in 2009.

10. To promote energy independence and encourage the use of alternative fuels, Congress has long subsidized the blending of alcohol with gasoline. The American Jobs Creation Act of 2004 (Pub. L. 108-357, title III, § 301(a), October 22, 2004; effective December 31, 2004) enacted section 6426(b), which provided a credit for blending alcohol with taxable fuel (the "**Alcohol Fuel Credit**"). The Alcohol Fuel Credit replaced the prior subsidy, which reduced excise tax rates for taxable fuels containing certain amounts of alcohol.

11. The Alcohol Fuel Credit is equal to the number of gallons of alcohol a taxpayer blends with a taxable fuel that the taxpayer either sells or uses in its trade or business, multiplied by an applicable rate. For 2008 and 2009 the applicable rate was $0.51 per gallon and $0.45 per gallon, respectively.

12. Section 6426(a) provides that the Alcohol Fuel Credit is to be used "against the tax imposed by section 4081." To the extent a taxpayer's Alcohol Fuel Credit exceeds its section 4081 excise tax in a given year, the taxpayer can elect to receive either a cash payment under section 6427(e) or an income tax credit under section 34 or section 40.

13. Section 9503(b)(1)(D) provides that taxes collected under section 4081 are directed to the Highway Trust Fund. Section 9503(b)(1) further provides that the amount of section 4081 taxes to be received by the Highway Trust Fund must be "without reduction for credits under section 6426," including the Alcohol Fuel Credit. Section 9601 provides that the General Fund, which collects most federal taxes, shall transfer over to the Highway Trust Fund any Alcohol Fuel Credit used by a taxpayer against its section 4081 excise tax liability.

14. EMOC blended alcohol with the taxable fuel it produced as part of its refining and terminal operations, entitling it to an Alcohol Fuel Credit of $453,269,805 in 2008 and $509,917,115 in 2009. EMOC claimed these credits on quarterly Forms 720 for those periods.

15. For federal income tax purposes, taxable income is gross income less allowable deductions. Section 63(a). Gross income includes proceeds from the sale of products less the direct costs attributable to the production of those products, known as "cost of goods sold." Section 61(a)(3); 26 C.F.R. § 1.61-3(a). In the case of a seller of petroleum products, section 4081 excise taxes form a component of the taxpayer's cost of goods sold.

16. The Alcohol Fuel Credit is excluded from gross income. On its originally-filed consolidated corporate income tax returns for 2008 and 2009, ExxonMobil reduced cost of goods sold by the amount of the Alcohol Fuel Credit EMOC received in each year, which caused a corresponding overstatement of gross income. ExxonMobil reversed this cost of goods sold reduction in its refund claims filed for 2008 and 2009, resulting in a decrease in gross income of $453,269,805 for 2008 and $509,917,115 for 2009.

<u>The DFA transactions are purchases for federal income tax purposes.</u>

17. ExxonMobil and the national oil company of the State of Qatar formed several joint stock companies over several years. The joint stock companies were formed to develop and

produce offshore natural gas reserves and to construct and operate facilities necessary to transport, manufacture, market, export, and deliver liquefied natural gas ("**LNG**") to foreign locations and buyers. Additionally, the joint stock companies were formed to construct facilities to produce, manufacture, and market condensate and liquefied petroleum gas from the same gas reserves. The joint stock companies are classified as partnerships for federal income tax purposes.

18. Under certain Development and Fiscal Agreements (collectively, the "**DFAs**"), the joint stock companies purchased various rights, including the right to develop and exploit certain offshore natural gas reserves. As a result, the joint stock companies acquired operating mineral interests in such offshore natural gas reserves for federal income tax purposes.

19. Under the DFAs, among other commitments, the joint stock companies agreed to make certain contractual payments (the "**DFA Payments**") to the State of Qatar in the future based on the value of LNG, condensate, and liquefied petroleum gas manufactured from such natural gas. The DFA Payments primarily are based on the greater of a fixed amount per one million British thermal units or a variable amount based on a formula tied to published foreign crude oil and gas prices. The valuation point for determining the amount of the DFA Payments occurs only after substantial non-extraction activities have occurred.

20. For federal income tax purposes, the transactions under the DFAs, under all the facts and circumstances, are purchases because the State of Qatar did not retain an economic interest in the minerals in place under 26 C.F.R. § 1.611-1(b)(1) and controlling case law. *See, e.g., Comm'r v. Sw. Exploration Co.*, 350 U.S. 308 (1956); *Anderson v. Helvering*, 310 U.S. 404 (1940); *Palmer v. Bender*, 287 U.S. 551 (1933); *Burnet v. Harmel*, 287 U.S. 103 (1932). The State of Qatar became entitled to, and has received, payments that are substantially unrelated to

the value of the natural gas at the point of extraction and that reflect the significant value of petroleum products manufactured and marketed by the joint stock companies. Therefore, the DFA transactions are purchases, not mineral leases, and ExxonMobil properly reported the DFA Payments as deferred purchase payments of principal and interest under section 483.

21. The method for calculating the unstated interest on the deferred purchase payments is set forth in 26 C.F.R. § 1.483-4.

22. The principal portion of these payments increases depletable basis, and the interest expense portion of these payments is apportioned between U.S. and foreign source income.

23. For the Disputed Tax Years, these adjustments increase taxable income by increasing foreign source income more than U.S. source income is reduced. Additional foreign tax credits satisfy the taxes that would be owed on the additional foreign source income. Thus, the claims reflect a refund of income taxes paid that results principally from the reduction of U.S. source income.

<u>The PSC transactions are purchases for federal income tax purposes.</u>

24. The Malaysian national oil and gas company (the "**MNOC**") is vested with the entire ownership in, and the exclusive rights to explore and exploit, oil and gas lying onshore or offshore in that country. The MNOC has formed a subsidiary (the "**Subsidiary**") to engage in the exploration, development, and production of oil and gas.

25. Under certain production sharing contracts (collectively, the "**PSCs**"), ExxonMobil, or ExxonMobil and the Subsidiary, obtained various rights, including the rights to explore, develop, produce, transport, process, store, and market oil and gas from offshore Malaysia. As a result, ExxonMobil acquired operating mineral interests in such offshore oil and gas reserves for federal income tax purposes.

26. Under the PSCs, among other commitments, ExxonMobil agreed to make certain contractual payments (the "**PSC Payments**") to the MNOC in the future based on the value of the petroleum after transportation, storage, processing, and marketing.

27. Pursuant to the PSCs, ExxonMobil has made investments both onshore and offshore in Malaysia, including significant investments in offshore platforms; a pumping, compression, and pipeline network; and transportation, storage, processing, and terminal facilities (collectively, the "**Petroleum Operations**"). The valuation point for determining the amount of the PSC Payments occurs only after substantial non-extraction activities associated with the Petroleum Operations have taken place.

28. For federal income tax purposes, the transactions under the PSCs, under all the facts and circumstances, are purchases because the MNOC did not retain an economic interest in the minerals in place under 26 C.F.R. § 1.611-1(b)(1) and controlling case law. *See, e.g., Comm'r v. Sw. Exploration Co.*, 350 U.S. 308 (1956); *Anderson v. Helvering*, 310 U.S. 404 (1940); *Palmer v. Bender*, 287 U.S. 551 (1933); *Burnet v. Harmel*, 287 U.S. 103 (1932). The MNOC became entitled to, and has received, payments that are substantially unrelated to the value of the crude oil and natural gas at the point of extraction and that reflect the significant value of petroleum after being transported, stored, processed, and marketed by ExxonMobil. Therefore, the PSC transactions are purchases, not mineral leases, and ExxonMobil properly reported the PSC Payments as deferred purchase payments of principal and interest under section 483.

29. The method for calculating the unstated interest on the deferred purchase payments is set forth in 26 C.F.R. § 1.483-4.

30. The principal portion of these payments increases depletable basis, and the interest expense portion of these payments is apportioned between U.S. and foreign source income.

31. For the Disputed Tax Years, these adjustments increase taxable income by increasing foreign source income more than U.S. source income is reduced. Additional foreign tax credits satisfy the taxes that would be owed on the additional foreign source income. Thus, the claims reflect a refund of income taxes paid that results principally from the reduction of U.S. source income.

## IV. CLAIMS FOR RELIEF

### COUNT I – OVERPAYMENT OF INCOME TAX – ALCOHOL FUEL CREDIT

32. ExxonMobil incorporates by reference the allegations contained in the above paragraphs.

33. The Commissioner erroneously disallowed ExxonMobil's claims for a refund of income tax paid for 2008 and 2009 as a result of erroneously determining that the Alcohol Fuel Credit is included in gross income.

34. ExxonMobil seeks recovery for such portions of the overpayment of federal income taxes for 2008 and 2009 that were erroneously assessed and collected by the Commissioner as a result of this erroneous determination and correlative adjustments, including any additional carrybacks or carryovers that may be applied to the Disputed Tax Years.

35. ExxonMobil is the sole owner of this claim and has made no assignment or transfer of any part of this claim.

### COUNT II – OVERPAYMENT OF INCOME TAX – DFAs

36. ExxonMobil incorporates by reference the allegations contained in the above paragraphs.

37. The Commissioner erroneously disallowed ExxonMobil's claims for a refund of income tax paid for the Disputed Tax Years as a result of erroneously determining that the DFA transactions are mineral leases and not purchases for federal income tax purposes.

38. ExxonMobil seeks recovery for such portions of the overpayment of federal income taxes for the Disputed Tax Years that were erroneously assessed and collected by the Commissioner as a result of this erroneous determination and correlative adjustments, including any additional carrybacks or carryovers that may be applied to the Disputed Tax Years.

39. ExxonMobil is the sole owner of this claim and has made no assignment or transfer of any part of this claim.

### COUNT III – OVERPAYMENT OF INCOME TAX – PSCs

40. ExxonMobil incorporates by reference the allegations contained in the above paragraphs.

41. The Commissioner erroneously disallowed ExxonMobil's claims for a refund of income tax paid for the Disputed Tax Years as a result of erroneously determining that the PSC transactions are mineral leases and not purchases for federal income tax purposes.

42. ExxonMobil seeks recovery for such portions of the overpayment of federal income taxes for the Disputed Tax Years that were erroneously assessed and collected by the Commissioner as a result of this determination and correlative adjustments, including any additional carrybacks or carryovers that may be applied to the Disputed Tax Years.

43. ExxonMobil is the sole owner of this claim and has made no assignment or transfer of any part of this claim.

### V. CONDITIONS PRECEDENT

44. All conditions precedent have been satisfied.

### VI. PRAYER FOR RELIEF

FOR ALL THESE REASONS, ExxonMobil prays that the Court enter judgment against the United States:

    a.      Awarding ExxonMobil the overpayments of taxes for the taxable years 2006, 2007, 2008, and 2009 in the amounts set forth in paragraphs 3(b)-(e) of this complaint, or such other amount as is legally refundable, plus statutory interest as provided by law; and

    b.      Awarding ExxonMobil all other relief to which it is entitled.

Respectfully submitted,

THOMPSON & KNIGHT LLP

By: _____
    Emily A. Parker
    Texas Bar No. 15482500
    emily.parker@tklaw.com

    Mary A. McNulty
    Texas Bar No. 13839680
    mary.mcnulty@tklaw.com

    William M. Katz, Jr.
    Texas Bar No. 00791003
    william.katz@tklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
FAX (214) 969-1751

MILLER & CHEVALIER, CHARTERED

    Kevin L. Kenworthy
    D.C. Bar No. 414887
    kkenworthy@milchev.com

    George A. Hani
    D.C. Bar No. 451945
    ghani@milchev.com

900 16th Street NW
Washington, D.C. 20006
(202) 626-5800
FAX (202) 626-5801

**ATTORNEYS FOR PLAINTIFF
EXXON MOBIL CORPORATION**