**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-cv-2921-N |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF EXXON MOBIL CORPORATION'S**
**MOTION FOR PROTECTIVE ORDER, BRIEF IN SUPPORT,**
**AND REQUEST FOR ORAL ARGUMENT**

Emily A. Parker
State Bar No. 15482500
emily.parker@tklaw.com

Mary A. McNulty
State Bar No. 13839680
mary.mcnulty@tklaw.com

William M. Katz, Jr.
State Bar No. 00791003
william.katz@tklaw.com

J. Meghan Nylin
State Bar No. 24070083
meghan.nylin@tklaw.com

Leonora S. Meyercord
State Bar No. 24074711
lee.meyercord@tklaw.com
THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas  75201
(214) 969-1700
(214) 969-1751 (Fax)

Kevin L. Kenworthy
D.C. Bar No. 414887
kkenworthy@milchev.com

George A. Hani
D.C. Bar No. 451945
ghani@milchev.com

MILLER & CHEVALIER, CHARTERED
900 16th Street NY
Washington, D.C.  20006
(202) 626-5800
(202) 626-5801 (Fax)

ATTORNEYS FOR PLAINTIFF EXXON MOBIL CORPORATION

## Table of Contents

Page

I. INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................3

    A. ExxonMobil's Audit Documents and Section 6103 ............................... 3

    B. The Magistrate Judge's Good Cause Finding and Entry of the Protective Order ................................................................................. 4

    C. ExxonMobil's Position on the Protective Order.................................... 7

    D. ExxonMobil's Attempts to Reach an Agreement with Defendant ......................... 8

III. ARGUMENTS AND AUTHORITIES..........................................................................9

    A. The Designated Documents were not "already in the knowledge or possession of the party to whom disclosure is made" when this lawsuit was filed....................................................................... 10

        1. The IRS is not a "party" to this tax refund suit....................................... 10

        2. Paragraph 2 prevents designation as Confidential Information only if the information was already in Defendant's possession at the time this lawsuit commenced.................................................... 13

    B. The Designated Documents have not been "disclosed to the public or third persons in a manner making such information no longer confidential."............. 14

    C. The Designated Documents meet the Protective Order's standard for Confidential Information. .................................................................. 17

        1. The Designated Documents meet the Protective Order's standard for trade secrets or confidential commercial information........................ 18

        2. The Designated Documents meet the Protective Order's standard for "other information required by law or agreement to be kept confidential.".................................................................. 22

    D. Excluding the Designated Documents from the Protective Order's scope would violate ExxonMobil's due process rights................................ 23

IV. CONCLUSION.................................................................................................25

## Table of Authorities

### Cases

*AmerGen Energy Co., LLC v. United States,*
115 Fed. Cl. 132 (2014) ............................................................. 15

*Bates v. United States,*
522 U.S. 23 (1997) ..................................................................... 15

*Batton v. Evers,*
598 F.3d 169 (5th Cir. 2010) ..................................................... 12

*Blackmar v. Guerre,*
342 U.S. 512 (1952) ................................................................... 12

*Carpenter v. U.S.,*
484 U.S. 19 (1987) ..................................................................... 23

*Deleeuw v. IRS,*
681 F. Supp. 402 (E.D. Mich. 1987) .......................................... 11

*Edionwe v. Bailey,*
860 F.3d 287 (5th Cir. 2017) ..................................................... 23

*Estate of Yaeger v. Comm'r,*
92 T.C. 180 (1989) ..................................................................... 15

*Flightsafety Servs. Corp. v. Dep't of Labor,*
326 F.3d 607, 611 (5th Cir. 2003) ............................................. 17

*GlobeRanger Corp. v. Software AG United States of Am., Inc.,*
836 F.3d 477 (5th Cir. 2016) ..................................................... 17

*Heartland Acad. Cmty. Church v. Waddle,*
317 F. Supp. 2d 984 (E.D. Mo. 2004), *aff'd*, 427 F.3d 525 (8th Cir. 2005) .......................... 24

*In re Continental Gen. Tire, Inc.,*
979 S.W.2d 609 (Tex. 1998) ...................................................... 23

*In re Violation of Rule28(D),*
635 F.3d 1352 (Fed. Cir. 2011) ................................................. 17

*Johnson v. Sawyer,*
120 F.3d 1307 (5th Cir. 1997) ............................................. 15, 16

*Jones v. IRS,*
No. 89-4369, 1990 WL 80051 (S.D.N.Y. May 30, 1990) ........... 11

*Lamie v. U.S. Trustee,*
540 U.S. 526 (2004) ................................................................... 15

*Lampert v. United States,*
854 F.2d 335 (9th Cir. 1988) ..................................................... 16

*Lonesource, Inc. v. United Stationers Supply Co.,*
   5:11-cv-33, 2013 WL 3490390 (E.D.N.C. July 11, 2013) .................................................... 17

*Long v. Secretary of Treasury,*
   No. CV-92-1280, 1992 WL 442694 (E.D.N.Y. Nov. 10, 1992) ........................................... 11

*Maginn v. IRS,*
   No. 92-313, 1995 WL 355241 (W.D. Penn. May 29, 1992) ................................................. 12

*Neon Enter. Software, LLC v. Int'l Bus. Machines Corp.,*
   No. A-09-CA-896 AWA, 2011 WL 2964796 (W.D. Tex. July 20, 2011) ............................ 23

*Neon Enter. Software, LLC v. Int'l Bus. Machines Corp.,*
   No. A-09-CA-896 AWA, 2012 WL 470196 (W.D. Tex. Feb. 13, 2012) ............................... 22

*Ohio Valley Envtl. Coal. v. Elk Run Coal Co.,*
   291 F.R.D. 114 (S.D. W. Va. 2013) .................................................................................... 17

*Paul v. Davis,*
   424 U.S. 693 (1976) ............................................................................................................. 23

*PSC Prof'l Servs. Grp., Inc. v. Am. Digital Sys., Inc.,*
   555 F. Supp. 788 (E.D. Pa. 1983) ....................................................................................... 24

*Republic Servs., Inc. v. Liberty Mut. Ins. Companies,*
   No. CIV.A. 03-494-KSF, 2006 WL 1635655 (E.D. Ky. June 9, 2006) ................................ 24

*Rowley v. United States,*
   76 F.3d 796 (6th Cir. 1996) ................................................................................................ 16

*Ruckelshaus v. Monsanto Co.,*
   467 U.S. 986 (1984) ............................................................................................................. 23

*Sheets v. Yamaha Motors Corp., U.S.A.,*
   849 F.2d 179 (5th Cir. 1988) .............................................................................................. 23

*Simpson v. Lifespring, Inc.,*
   572 F. Supp. 1251 (E.D. Pa. 1983), *aff'd,* 770 F.2d 1075 (3d Cir. 1985) ............................ 24

*Tax Analysts v. I.R.S.,*
   391 F. Supp. 2d 122 (D.D.C. 2005) .................................................................................... 16

*Tubos de Acero de Mexico, S.A. v. Am. Intern. Inv. Corp.,*
   292 F.3d 471 (5th Cir. 2002) .............................................................................................. 23

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.,*
   498 F. Supp. 2d 25 (D.D.C. 2007) ...................................................................................... 14

*United States ex rel. Long v. GSD&M Idea City LLC,*
   No. 3:11-CV-1154-O, 2014 WL 12648520 (N.D. Tex. Jan. 3, 2014) .................................. 17

*United States v. Clarke,*
   __ U.S. __, 134 S. Ct. 2361 (2014) ...................................................................................... 4

*United States v. Hickey,*
   367 F.3d 888 (9th Cir. 2004) .............................................................................................. 12

*United States v. LaRouche Campaign,*
   695 F. Supp. 1265 (D. Mass. 1988) ................................................................ 12

*United States v. Ledee,*
   772 F.3d 21 (1st Cir. 2014) ........................................................................... 12

*U.S. v. O'Hagan,*
   521 U.S. 642 (1997) ....................................................................................... 23

*United States v. Powell,*
   379 U.S. 48 (1964) ........................................................................................... 4

*Van Deelen v. Johnson,*
   497 F.3d 1158 (10th Cir. 2007) ...................................................................... 24

*Vann v. United States,*
   615 F. Supp. 6 (M.D. Tenn. 1985) .................................................................. 11

*Wheeler v. Pilgrim's Pride Corp.,*
   591 F.3d 355 (5th Cir. 2009) .......................................................................... 15

*White v. United States,*
   No. C80-53, 1980 WL 1607 (N.D. Ohio May 30, 1980) ................................. 12

## Statutory Authorities

26 U.S.C. § 6103 ................................................................................... passim

26 U.S.C. § 6103(a) .............................................................................. passim

26 U.S.C. § 6103(b) ................................................................................. 4, 15

26 U.S.C. § 6103(h) .............................................................................. passim

26 U.S.C. § 6103(k) ................................................................................. 6, 25

26 U.S.C. § 7402(b) ...................................................................................... 4

26 U.S.C. § 7422(f)(1) .................................................................................. 11

26 U.S.C. § 7422(f)(2) .................................................................................. 11

26 U.S.C. § 7602 ..................................................................................... 4, 22

26 U.S.C. § 7604(a) ....................................................................................... 3

31 U.S.C. § 3730(e)(4)(A) ............................................................................ 14

## Rules and Regulations

Fed. R. Civ. P. 4(i)(1)(C) .............................................................................. 12

Fed. R. Civ. P. 26(c)(1)(G) ....................................................................... passim

Fed. R. Civ. P. 72(a) ...................................................................................... 5

**Additional Authorities**

*IRS Chief Counsel Advice* 200305010 (Jan. 10, 2002) ................................................................. 4

*Internal Revenue Manual* § 11.3.11.13(3), (7) (Sept. 21, 2015) .................................................. 16

*Internal Revenue Manual* § 25.5.3.2(4) (Dec. 22, 2016) ............................................................. 4

*Restatement of Torts* § 757 cmt. B. (1939) ................................................................................. 17

## Appendix Index

| Tab | Description | Appendix Pages |
|-----|-------------|----------------|
| 1 | Declaration of William M. Katz, Jr. (Oct. 9, 2017) | App. 5–10 |
| 2 | Letter from Cory Johnson, Senior Litigation Counsel, Department of Justice, to Emily Parker, Attorney, Thompson & Knight LLP (Sept. 27, 2017) (Exhibit 1-A, attached to Declaration of William M. Katz) | App. 11–12 |
| 3 | Letter from Cory Johnson, Senior Litigation Counsel, Department of Justice, to Emily Parker, Attorney, Thompson & Knight LLP (June 23, 2017) (Exhibit 1-B, attached to Declaration of William M. Katz) | App. 13 |
| 4 | Letter from Emily Parker, Attorney, Thompson & Knight LLP, to Jonathan Blacker and Joshua David Smeltzer, Counsel, Department of Justice (Jan. 26, 2017) (Exhibit 1-C, attached to Declaration of William M. Katz) | App. 14–16 |
| 5 | Email from Bill Katz, Attorney, Thompson & Knight LLP, to Cory Johnson, Senior Litigation Counsel, Department of Justice (June 30, 2017) (Exhibit 1-D, attached to Declaration of William M. Katz) | App. 17–20 |
| 6 | Email from Bill Katz, Attorney, Thompson & Knight LLP, to Cory Johnson, Senior Litigation Counsel, Department of Justice (July 19, 2017) (Exhibit 1-E, attached to Declaration of William M. Katz) | App. 21 |
| 7 | Letter from Jonathan Blacker, Trial Attorney, Department of Justice, to Emily Parker, Attorney, Thompson & Knight LLP (Aug. 25, 2017) (Exhibit 1-F, attached to Declaration of William M. Katz) | App. 22–35 |
| 8 | Letter from Emily Parker, Attorney, Thompson & Knight LLP, to Cory Johnson, Senior Litigation Counsel, Department of Justice (Sept. 25, 2017) (Exhibit 1-G, attached to Declaration of William M. Katz) | App. 36–39 |
| 9 | Letter from Emily Parker, Attorney, Thompson & Knight LLP, to Cory Johnson, Senior Litigation Counsel, Department of Justice (Oct. 6, 2017) (Exhibit 1-H, attached to Declaration of William M. Katz) | App. 40–41 |
| 10 | Email from Cory Johnson, Senior Litigation Counsel, Department of Justice, to Emily Parker, Attorney, Thompson & Knight LLP, (Oct. 6, 2017) (Exhibit 1-I, attached to Declaration of William M. Katz) | App. 42–43 |
| 11 | Declaration of Robert F. Ylagan (Oct. 9, 2017) | App. 44–54 |

# I.    INTRODUCTION

Pursuant to paragraph 5 of the June 20, 2017 protective order (Dkt. No. 29) (the "Protective Order"), Exxon Mobil Corporation ("ExxonMobil") moves the Court for a protective order for 416[1] documents that ExxonMobil produced and designated as Confidential Information under the Protective Order (collectively, the "Designated Documents").  These documents meet the Protective Order's definition of Confidential Information because they are "comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G)."  Prot. Order (Dkt. No. 29) ¶ 2.

Rather than challenge any specific confidentiality designation, as required by paragraph 5, the United States of America ("Defendant") has generally challenged the Designated Documents by claiming that some, unspecified subset of them were "previously provided to the IRS at the administrative level" and are allegedly "already independently in [Defendant's] possession."  *See* Letter from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Sept. 27, 2017) (App. 11–12).[2]  Although ExxonMobil has asked Defendant to identify the specific documents that were produced to the Internal Revenue Service ("IRS") and are allegedly in Defendant's possession, Defendant has refused to do so and

---

[1] On September 21, 2017, ExxonMobil produced and designated as Confidential Information 436 documents.  By letter dated October 6, 2017, ExxonMobil advised Defendant that it withdrew its confidentiality designation for 20 documents.  *See* Letter from Emily Parker, Attorney, Thompson & Knight, to Cory Johnson, Senior Litigation Counsel, DOJ (Oct. 6, 2017) (App. 40–41).

[2] In an October 6, 2017 email, Defendant claims that it is objecting to ExxonMobil's interpretation of the Protective Order, rather than making a "a blanket objection to everything marked confidential" in ExxonMobil's September 21 document production.  *See* Email from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Oct. 6, 2017) (App. 42–43).  Although Defendant disagrees with ExxonMobil's interpretation of the Protective Order, Defendant has not identified any contrary legal authorities disproving ExxonMobil's position that the IRS and Defendant are separate parties and that the IRS is not a party to this lawsuit.  *Compare id. with* Letter from Emily Parker, Attorney, Thompson & Knight LLP, to Cory Johnson, Senior Litigation Counsel, DOJ (Sept. 25, 2017) (App. 36–39).

has threatened to disclose publicly the Designated Documents if ExxonMobil does not seek relief from the Court by October 10, 2017.  *See id.*; Email from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Oct. 6, 2017) (App. 42–43); Decl. of William M. Katz, Jr. ("Katz Decl.") ¶¶ 7–9 (Oct. 9, 2017) (App. 7–8).

As explained below, the Protective Order applies to the Designated Documents and prevents Defendant from publicly disclosing them.  Even if some of the Designated Documents were previously produced to the IRS during audit, that does not prevent them from being designated as Confidential Information under the Protective Order.  As used in the Protective Order, the term "party" clearly refers to a party to the lawsuit—as distinguished from a nonparty—and the only parties in this lawsuit are ExxonMobil and Defendant.  The IRS is not a "party" to this lawsuit, and ExxonMobil did not disclose any of the Designated Documents to Defendant before filing this lawsuit.  Accordingly, none of the Designated Documents falls within the Protective Order's first exception for "information that is already in the knowledge or possession of the *party* to whom disclosure is made unless that *party* is already bound by agreement not to disclose such information."  Prot. Order (Dkt. No. 29) ¶ 2 (emphasis added).  Further, the Designated Documents do not fall within the Protective Order's second exception for "information that has been disclosed to the public or third persons in a manner making such information no longer confidential."  *Id.*  To the extent any of the Designated Documents were disclosed to the IRS as a "third person," that disclosure was not in a manner making such information no longer confidential because the IRS must maintain the document's confidentiality under 26 U.S.C. § 6103.  Finally, adopting Defendant's interpretation of the Protective Order would deprive ExxonMobil of its due process rights by permitting Defendant to destroy ExxonMobil's valuable property rights in its trade secrets and confidential business information

without due process of law.  Accordingly, this motion for protective order should be granted, and the Designated Documents should be protected from public disclosure under the Protective Order.

## II.     BACKGROUND

In this lawsuit, ExxonMobil seeks a refund of federal income taxes, plus interest, for taxable years 2006 through 2009.  To support its claims, ExxonMobil must disclose to Defendant information protected by Rule 26(c), including "trade secret or other confidential research, development, or commercial information."  FED. R. CIV. P. 26(c)(1)(G).  The Designated Documents—which consist of confidential agreements and other documents relating to the transactions in Qatar and Malaysia at issue in this lawsuit and nonpublic detailed financial information, tax calculations and workpapers—contain information protected by Rule 26(c).  ExxonMobil recently produced the Designated Documents to Defendant and designated them as Confidential Information under the Protective Order due to their confidential nature and the harm that would result from public disclosure.  Rather than challenge any specific confidentiality designation made by ExxonMobil, Defendant has generally challenged the Designated Documents because a subset of them was "previously provided to the IRS."  *See* Letter from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Sept. 27, 2017) (App. 11–12).

### A.  ExxonMobil's Audit Documents and Section 6103

Before filing this tax refund lawsuit, ExxonMobil produced about 470,000 pages of documents (the "Audit Documents") to the IRS during audit in response to informal requests and administrative summonses.[3]  Some of the Designated Documents are Audit Documents.  *See*

---

[3] If a taxpayer fails to comply with a document request during an audit, the IRS may issue a summons to produce the documents, and the United States may petition a federal district court to enforce the summons.  26 U.S.C. §§

Katz Decl. ¶ 6 (App. 6–7). All documents produced to the IRS during audit receive statutory confidentiality protection, with only limited exceptions for disclosure.  *See* 26 U.S.C. § 6103(a) (mandating "[r]eturns and return information shall be confidential"); *id.* § 6103(b)(1), (2) (broadly defining "return" and "return information"); *id.* § 6103(c)–(o) (providing for specified disclosure exceptions).

Section 6103(h) allows limited disclosure by which (i) the IRS may disclose return or return information to the DOJ, and (ii) the DOJ may disclose return or return information in a judicial proceeding.  26 U.S.C. § 6103(h)(2)-(4).  However, the limited disclosure allowed by section 6103(h) need not be public, and courts routinely preserve the confidentiality of returns and return information through protective orders.  *See* Dkt. No. 33 at 8–10 (collecting protective orders).

**B.  The Magistrate Judge's Good Cause Finding and Entry of the Protective Order**

Before producing its trade secrets and other confidential business information in discovery in this lawsuit, ExxonMobil moved for entry of a protective order under Rule 26(c).  *See* Dkt. No. 22.  ExxonMobil demonstrated good cause for a protective order through the Declaration of William M. Katz, Jr., which describes the confidential documents, some of which are included in the Designated Documents.  *See* Dkt. No. 22-3 ¶¶ 3–8 (describing confidential

---

7402(b), 7604(a); *see United States v. Clarke*, __ U.S. __, 134 S. Ct. 2361 (2014), *United States v. Powell*, 379 U.S. 48 (1964).   Before producing agreements with confidentiality provisions to the IRS during its audit, ExxonMobil asked the IRS to issue a so-called "friendly summons" under 26 U.S.C. § 7602 to avoid any dispute with its counter-parties that ExxonMobil breached the confidentiality of the agreements in Qatar and Malaysia by voluntarily producing the agreements.  Internal Revenue Manual § 25.5.3.2(4) (Dec. 22, 2016) (the IRS issues a "friendly summons" when a party requests that it be served with a summons as evidence of its legal duty to produce records and indicates it will voluntarily comply).  As is customary when producing trade secrets and commercial information that is not publicly known during  the audit process, ExxonMobil did not label such information as confidential nor did it enter into an agreement with the IRS to protect such information from public disclosure because section 6103 automatically affords that protection to taxpayers.  *See, e.g., IRS Chief Counsel Advice* 200305010 (Jan. 10, 2002) (rejecting a taxpayer's request to enter into a confidentiality agreement because, under sections 6103 and 7612, "the confidentiality of the software requested from the taxpayer is adequately protected without any collateral agreement" and "the Service has a strong policy interest in avoiding any contractual agreement that alters statutory rights and obligations").

agreements in Malaysia and Qatar; business and negotiations plans and strategies; nonpublic detailed financial and tax information; proprietary technical information; and information about oil and gas research, development, production, reserve, and well information).

After considering the briefing and supporting declaration, the Magistrate Judge concluded that ExxonMobil had "sufficiently established good cause for the entry of a protective order under Fed. R. Civ. P. 26(c)(1)(G)" to protect its trade secrets and confidential business information. Dkt. No. 28. The Magistrate Judge then noted that "[a] protective order will be entered separately, after consideration of the parties' proposed modifications to the Court's model order." *Id.* Defendant did not object to the Magistrate Judge's good cause finding for entry of a protective order. *See* FED. R. CIV. P. 72(a) (14-day deadline to object to a magistrate judge's order).

ExxonMobil did not propose any modification to the model order's definition of Confidential Information: "the document is comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G), or other information required by law or agreement to be kept confidential." Dkt. No. 22-2 ¶ 2. However, the model order was not designed expressly to address a taxpayer's disclosures to the IRS during audit, and in paragraph 2 it excludes from coverage the following two categories of information:

1. "information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information" or

2. "information that has been disclosed to the public or third persons in a manner making such information no longer confidential."

Dkt. No. 22-2 ¶ 2. Because these exclusions, when read out of context, could be construed to prevent the model order from applying to certain confidential Audit Documents that are

protected by Rule 26(c)(1)(G)—as Defendant has alleged—ExxonMobil proposed the following

modification shown in bold:

> information that is already in the knowledge or possession of the party to whom disclosure is made unless **such information consists of return or return information that has been designated Confidential Information pursuant to paragraph 3** … .

Dkt. No. 22-2 ¶ 2.   The Magistrate Judge signed the Protective Order without changing the

language in paragraph 2 of the model order.   *See* Prot. Order (Dkt. No. 29) ¶ 2.

After the Protective Order was entered, Defendant took the position that paragraph 2

prevented ExxonMobil from designating any of the Audit Documents as confidential when

produced the Defendant in this case.   *See* Letter from Cory Johnson, Senior Litigation

Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (June 23, 2017) (App. 13)

("And, pursuant to the protective order, they should be produced to us without any

confidentiality designation if they were previously provided to the IRS during the audit, or have

been otherwise disclosed.").   Because ExxonMobil interpreted the Protective Order differently,[4]

it moved for clarification and asked the Magistrate Judge to add the following bolded language

to paragraph 2:

> Confidential Information does not include, and this Protective order does not apply to, **(a)** information that is already in the knowledge or possession of the party to whom disclosure is made unless **(i) such information consists of return or return information within the meaning of 26 U.S.C. § 6103(b)(1) and (2) that otherwise falls within the definition of Confidential Information, or (ii)** that party is already bound by agreement not to disclose such information**; or (b)** information that has been disclosed to the public or third persons in a manner making such information no longer confidential.

Dkt. No. 30.   The Magistrate Judge denied the motion for clarification, stating:

---

[4]  By modifying the Protective Order at Defendant's request to permit the use of Confidential Information for "any purpose or activity described in 26 U.S.C. § 6103 (h) or (k)," the Magistrate Judge concluded that the Protective Order applies to the Audit Documents that are governed by section 6103.   *See* Prot. Order (Dkt. No. 29) ¶¶ 6, 7.   If the Protective Order did not apply to documents governed by section 6103, there would have been no need to accept Defendant's modification and permit the use of Confidential Information under section 6103(h) or (k).

> The Court disagrees that the general finding that good cause exists for entry of a protective order conflicts with the defendant's position regarding information that was already in its possession.  It declines to clarify paragraph 2 to confirm that confidential and proprietary information provided to the IRS during the audit can be designated as confidential information.

Dkt. No. 31.  Notably, the Magistrate Judge did not rule that the Audit Documents cannot be produced and designated as Confirmation Information under the Protective Order.  Without any explanation, she instead declined to clarify paragraph 2 to expressly confirm that the Audit Documents may be designated as Confidential Information.  *See id*.  ExxonMobil then filed an Objection to Paragraph 2 of the Protective Order, which the Presiding Judge overruled without explanation.  *See* Dkt. No. 39.

### C.  ExxonMobil's Position on the Protective Order

ExxonMobil's position has been consistent.  Since first moving for entry of a protective order, ExxonMobil has explained that any protective order should apply expressly to the Audit Documents.  The Protective Order is subject to different interpretations, however, and Defendant is relying on an improper interpretation that would prevent ExxonMobil from designating any of the Audit Documents produced to Defendant as Confidential Information under the Protective Order.  But there is no basis for distinguishing between any documents produced to Defendant that qualify as Confidential Information, whether or not Audit Documents, and doing so would conflict with Rule 26(c)(1)(G) and the Magistrate Judge's good cause finding.

Neither the Magistrate Judge nor the Presiding Judge adopted Defendant's interpretation of paragraph 2 of the Protective Order.  As explained below, ExxonMobil may designate the Audit Documents produced to Defendant as Confidential Information as long as they (i) were not already in Defendant's "knowledge or possession" when this lawsuit was filed, and (ii) meet the Protective Order's definition of Confidential Information.  Because the Designated Documents meet these requirements, the Protective Order applies to them.

### D. ExxonMobil's Attempts to Reach an Agreement with Defendant

Defendant has falsely accused ExxonMobil of "delay" and "gamesmanship" in response to the actions taken by ExxonMobil to protect its Confidential Information. *See* Letter from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Sept. 27, 2017) (App. 11–12). But ExxonMobil has consistently tried to reach an agreement with Defendant about the Protective Order to allow the Court to promptly try this case and refund $1.3 billion in overpaid taxes to ExxonMobil. The parties' negotiations began in January 2017, when ExxonMobil proposed a protective order applicable to its "competitively sensitive" and "confidential tax and financial information." *See* Letter from Emily Parker, Attorney, Thompson & Knight LLP, to Jonathan Blacker and Joshua David Smeltzer, Counsel, DOJ (Jan. 26, 2017) (App. 14). After trying unsuccessfully to reach an agreement, the parties submitted competing protective orders to the Court in March and April 2017. *See* Dkt. Nos. 22 (ExxonMobil's proposal) and 26 (Defendant's proposal).

After the Magistrate Judge issued the Protective Order on June 20, 2017, taking some language from ExxonMobil's proposal and some from Defendant's, ExxonMobil twice contacted Defendant to discuss an agreement that would have resolved both parties' objections to the Protective Order. *See* Email from Bill Katz, Attorney, Thompson & Knight LLP, to Cory Johnson, Senior Litigation Counsel, DOJ (June 30, 2017) (App. 17–20); Email from Bill Katz, Attorney, Thompson & Knight LLP, to Cory Johnson, Senior Litigation Counsel, DOJ (July 19, 2017) (App. 21). But Defendant rejected all of ExxonMobil's offers, including another offer made on September 21, 2017, and directly threatened to file publicly ExxonMobil's confidential documents. *See* Katz. Decl. ¶¶ 7–11 (App. 7–9).

Defendant has also accused ExxonMobil of making "*no effort* to differentiate documents previously given to the IRS from others in designating these documents confidential." *See* Letter

from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Sept. 27, 2017) (App. 11).   But the Protective Order does not require this differentiation because the IRS is not a party to this lawsuit.  In addition, the Protective Order's focus is not on what was produced to the IRS but on whether the Designated Documents were "already in the knowledge or possession of the party to whom disclosure is made" when this lawsuit was filed.  Prot. Order (Dkt. No. 29) ¶ 2.

Defendant admits that it does not have possession of all the Audit Documents that ExxonMobil produced to the IRS.  *See* Letter from Jonathan Blacker, Trial Attorney, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP at 3 n.3 (Aug. 25, 2017) (App. 24) (admitting that Defendant has only "some documents given to the IRS by Exxon" rather than "everything" ExxonMobil produced to the IRS during audit).  But when ExxonMobil asked Defendant to identify those Audit Documents that are allegedly already in Defendant's possession, Defendant refused to do so.  *See* Katz Decl. ¶ 8 (App. 7–8)  Because only Defendant can show whether a given document was already in its possession when this lawsuit was filed, and because Defendant has refused to identify any such documents, ExxonMobil properly marked the Designated Documents as Confidential Information under the Protective Order and is entitled to a protective order for them.

### III.    ARGUMENTS AND AUTHORITIES

The Protective Order applies to the Designated Documents for four reasons.  *First*, the Designated Documents were not in the knowledge or possession of a "party" to this lawsuit before suit was filed on October 18, 2016, which is the Protective Order's effective date.  Case law, statutes, and the Federal Rules of Civil Procedure distinguish between the IRS and the United States as parties, and the IRS is not a party to this lawsuit.  *Second*, to the extent ExxonMobil disclosed any of the Designated Documents to the IRS during audit, that did not

render them "no longer confidential" under the Protective Order because section 6103(a) expressly mandates that all documents furnished to the IRS "shall be confidential." 26 U.S.C. § 6103(a).  Although section 6103(h) permits disclosure of documents in certain tax proceedings, the statute does not require public disclosure that would destroy the documents' confidentiality. Courts routinely enter protective orders to protect taxpayers' trade secrets and confidential business information from public disclosure despite section 6103(h).  *Third,* the Designated Documents meet the Protective Order's definition of Confidential Information, as supported specifically by the Declaration of Robert F. Ylagan (the "Ylagan Declaration").  *Fourth*, adopting Defendant's interpretation of the Protective Order and declining to protect the Designated Documents from public disclosure would deprive ExxonMobil of constitutionally protected property interests in its trade secrets and confidential business information without due process.

### A.  The Designated Documents were not "already in the knowledge or possession of the party to whom disclosure is made" when this lawsuit was filed.

#### 1.  The IRS is not a "party" to this tax refund suit.

There are only two parties to this lawsuit:  Exxon Mobil Corporation and the United States of America.  The IRS is not a "party" to this lawsuit.  Therefore, if the Designated Documents were in the IRS's possession when this lawsuit was filed, they were not "already in the knowledge or possession of the party to whom disclosure is made."  Prot. Order (Dkt. No. 29) ¶ 2.

By distinguishing between a "party" and a "nonparty," the Protective Order confirms that a "party" refers to a party in this lawsuit.  *Id.* ¶ 1 (noting that the Protective Order "governs any document, information, or other thing furnished by *any party to any other party*" and "includes *any nonparty* who receives a subpoena in connection with this action" (emphases added)).

Defendant is a party to this lawsuit, but ExxonMobil did not disclose any confidential information to Defendant until after this lawsuit was filed. *See* Katz Decl. ¶ 6 (App. 6–7). ExxonMobil disclosed confidential information to the IRS during audit, but the IRS is not a party to this lawsuit. Accordingly, there is no scenario under which ExxonMobil disclosed confidential information to a "party" to the this lawsuit before suit was filed, such that paragraph 2 would prevent ExxonMobil from designating any of the Designated Documents as Confidential Information under the Protective Order.

Case law, statutes, and the Federal Rules of Civil Procedure consistently distinguish between the IRS and the United States as parties. In a tax refund suit, a taxpayer must sue the United States, rather than the IRS, and if a refund suit names the IRS as the defendant, courts will either substitute the United States as the proper party or dismiss the case. *See Long v. Secretary of Treasury*, No. CV-92-1280, 1992 WL 442694, at *2 n.1 (E.D.N.Y. Nov. 10, 1992) (concluding the taxpayer's refund suit against the IRS and the Secretary of the Treasury was not against the proper party and substituting the United States as defendant under 26 U.S.C. § 7422(f)(2)); *Jones v. IRS*, No. 89-4369, 1990 WL 80051, at *1 (S.D.N.Y. May 30, 1990) (concluding the IRS is not a proper party in a refund suit, as 26 U.S.C. § 7422(f)(1) "bars a suit directly against the IRS;" "[a] refund action must be brought against the United States, rather than against the IRS"); *Vann v. United States*, 615 F. Supp. 6, 6 n.1 (M.D. Tenn. 1985) (concluding the IRS is not a proper defendant in a taxpayer's refund suit against it and the United States and dismissing the suit against the IRS).

Likewise, a taxpayer must sue the United States in a summons proceeding, as the IRS is not a proper party in the suit. *See, e.g.*, *Deleeuw v. IRS*, 681 F. Supp. 402, 403–04 (E.D. Mich. 1987) (finding the IRS is not a proper party in a proceeding to quash a summons because "[a]n

executive department of the United States or one of its agencies may only be sued in its own name if the authority to be sued has been expressly been [sic] conferred by Congress" (citing *Blackmar v. Guerre*, 342 U.S. 512, 514–15 (1952))).

In Freedom of Information Act cases, the reverse is true: the IRS, not the United States, is the proper defendant. *See Batton v. Evers*, 598 F.3d 169, 173 n.1 (5th Cir. 2010) (concluding that the proper defendant is the IRS and that the United States is not "a proper party to this action"); *Maginn v. IRS*, No. 92-313, 1995 WL 355241, at *4 (W.D. Penn. May 29, 1992) (same); *White v. United States*, No. C80-53, 1980 WL 1607, at *3 (N.D. Ohio May 30, 1980) (same).

The Federal Rules of Civil Procedure also recognize a distinction between the United States and an agency, such as the IRS. When parties sue the United States and have to effect service of process, the Federal Rules of Civil Procedure require that a copy of the summons and complaint be provided to any "nonparty agency" whose order is being challenged in the lawsuit filed against the United States. FED. R. CIV. P. 4(i)(1)(C). [5] Therefore, when the United States is a party to a lawsuit, the rules specify that an agency of the United States, such as the IRS, is a "nonparty." Courts have applied this distinction in the contexts of collateral estoppel, judicial estoppel, and a prosecutor's duty to search for and produce materials. *See United States v. Ledee*, 772 F.3d 21, 30 (1st Cir. 2014) (noting that in the context of judicial estoppel the government "cannot inevitably be viewed as a single party"); *United States v. Hickey*, 367 F.3d 888, 893 (9th Cir. 2004) (holding that the SEC and the United States are "not the same party" for purposes of collateral estoppel); *United States v. LaRouche Campaign*, 695 F. Supp. 1265, 1280

---

[5] After filing this lawsuit, ExxonMobil asked the clerk to issue a summons to the IRS, consistent with Rule 4. *See* Dkt. No. 4 ("Request for Clerk to issue Summons to John A. Koskinen, Commissioner, Internal Revenue Service filed by Exxon Mobil Corporation"). The IRS received a copy of the summons and complaint on October 25, 2016. *See* Dkt. No. 10.

(D. Mass. 1988) (rejecting defendant's argument that the United States is a single entity such that a prosecutor's duty to search for and produce all materials extended to any government office or agency in which those materials might be found).

For all these reasons, the IRS is not a "party" to this lawsuit.  Therefore, Defendant cannot rely on prior disclosures by ExxonMobil to the IRS as the basis to argue that the Designated Documents are not Confidential Information under the Protective Order.

### 2. Paragraph 2 prevents designation as Confidential Information only if the information was already in Defendant's possession at the time this lawsuit commenced.

The Protective Order broadly "governs any document, information, or other thing *furnished by any party to any other party*."  Prot. Order (Dkt. No. 29) ¶ 1 (emphasis added). Paragraph 3 expounds on what may be designated as Confidential Information:  "Documents and things produced *during the course of this litigation* within the scope of paragraph 2 may be designated by the producing party as containing Confidential Information[.]"  *Id.* ¶ 3 (emphasis added); *see also id.* ¶ 1 (describing protected information as Confidential Information "produced, given or filed *in this action*" (emphasis added)).  Accordingly, the Protective Order governs documents produced during the entire course of this litigation, from the day it commenced on October 18, 2016, until the day it ends.

Because the Protective Order applies to documents produced throughout this lawsuit, the term "already" in paragraph 2 refers to the time period before this lawsuit was filed.  *See id.* ¶ 2. If a document was "already" in Defendant's possession when this lawsuit was filed, paragraph 2 of the Protective Order prevents it from being designated as Confidential Information.  To interpret "already" as referring to any time other than before this lawsuit was filed would conflict with the Protective Order's temporal scope, which is the entire course of litigation.  *See id.* ¶ 1, 3.

ExxonMobil did not produce any of the Designated Documents to Defendant before this lawsuit

was filed.  *See* Katz Decl. ¶ 6 (App. 6–7). Accordingly, ExxonMobil properly labeled the Designated Documents as Confidential Information, and this designation applies to "any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information" that may be in or come into Defendant's possession.  Prot. Order (Dkt. No. 29) ¶ 1.

### B. The Designated Documents have not been "disclosed to the public or third persons in a manner making such information no longer confidential."

ExxonMobil did not produce any Audit Documents to the IRS in a manner "making such information no longer confidential."  Prot. Order (Dkt. No. 29) ¶ 2 (excluding from coverage "information that has been disclosed to the public or third persons in a manner making such information no longer confidential").  Section 6103(a) mandates that all Audit Documents "shall be confidential."  26 U.S.C. § 6103(a).  Although section 6103(h) permits limited disclosure of return and return information in tax proceedings, it does not require public disclosure of such information.  Congress did not use the word "publicly" as a modifier when drafting section 6103(h).  *Compare, e.g.*, 26 U.S.C. § 6103(h)(4) (providing that "information may be *disclosed* in a Federal or State judicial administrative proceeding" (emphasis added)) *with* 31 U.S.C. § 3730(e)(4)(A) (providing for dismissal of action or claim under this section if "substantially the same allegations or transactions as alleged in the action or claim were *publicly disclosed*—(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party …." (emphasis added)); *see also U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 46 (D.D.C. 2007) ("All of this authority suggests that documents whose *disclosure is restricted by a court*—such as a sealed qui tam complaint, which has yet to even be served on the defendant—*do not qualify as public disclosures*."  (emphases added)).  As the Fifth Circuit has admonished, "[u]nder well-settled principles, courts must refrain from reading

additional terms"—such as the word "publicly"—into statutes. *Wheeler v. Pilgrim's Pride Corp.*, 591 F.3d 355, 374 (5th Cir. 2009) (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) (holding that if the text evinces "a plain, nonabsurd meaning" then the court should not "read an absent word into the statute") and *Bates v. United States*, 522 U.S. 23, 29 (1997) (holding that courts "ordinarily" should "resist reading words or elements into a statute that do not appear on its face")).  The plain, nonabsurd meaning of section 6103(h) permits disclosure by Defendant in this case, but the disclosure may be restricted by a court and need not be public.  *See* 26 U.S.C. § 6103(b)(8) (defining "disclosure" as "the making known to any person *in any manner whatever* a return or return information" (emphasis added)).

Because the disclosure contemplated by section 6103(h) is not necessarily public disclosure, section 6103 "does not override a court's power over its own procedures and areas of authority."  *Estate of Yaeger v. Comm'r*, 92 T.C. 180, 188–89 (1989) ("[N]otwithstanding the [IRS's] authority under section 6103, we will issue a protective order if we determine that it is appropriate in this case.").  Thus, courts routinely enter protective orders in tax cases, notwithstanding section 6103(h), that protect documents previously produced to the IRS during audit.[6]  *See* Dkt. No. 33 at 8–10 (collecting protective orders).  If disclosure to the IRS made the information "no longer confidential," there would be no reason to enter these protective orders.

Nor has ExxonMobil waived the confidentiality of the Designated Documents by suing Defendant for a tax refund.  The Fifth Circuit has noted that confidentiality would be waived, if at all, only when the information is publicly disclosed in the judicial proceeding, not when suit is filed.  *Johnson v. Sawyer*, 120 F.3d 1307, 1318–19 (5th Cir. 1997) (tax return information

---

[6] Section 6103(h) also does not make the presumption of open judicial proceedings irrebuttable, as evidenced by courts routinely entering of protective orders.  Because the "language is permissive, not mandatory," section 6103(h) "neither requires nor prohibits disclosure" and the presumption of public access can be rebutted as in all other civil proceedings.  *AmerGen Energy Co., LLC v. United States*, 115 Fed. Cl. 132, 142 (2014).

"arguably" lost its confidentiality when it was made available to the public via disclosure in open court[7]; *see also Lampert v. United States*, 854 F.2d 335, 338 (9th Cir. 1988) ("Once tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information."); *Rowley v. United States*, 76 F.3d 796, 801–02 (6th Cir. 1996) (information in the public domain loses confidentiality).[8] Even the IRS takes this position: "The IRS has consistently argued that tax information *placed in the public record in connection with tax administration* is no longer confidential," but "information supplemental to that which has become public *remains subject to the confidentiality provisions*." Internal Revenue Manual § 11.3.11.13(3), (7) (Sept. 21, 2015) (emphases added).

Logically, this position makes sense. If a confidential document is never publicly filed in a judicial tax proceeding, the information will not lose its confidential status after the proceeding. The information remains confidential even though the taxpayer filed a lawsuit and the government could have disclosed the document in the judicial proceeding under section 6103(h)(4). *See Tax Analysts v. I.R.S.*, 391 F. Supp. 2d 122, 130–31 (D.D.C. 2005) (rejecting IRS's argument that a taxpayer's confidentiality is "dissolved" by knowingly and voluntarily litigating tax liabilities and holding that documents are still confidential when they reveal more than what appears in the Tax Court's public record). Because the Designated Documents have not entered the public domain, they maintain their confidential status. Accordingly,

---

[7] The Fifth Circuit held that, despite public disclosure in the court case, the information in the hands of the IRS remained confidential and subject to the Section 6103. 120 F.3d at 1318–19.

[8] *Johnson* addressed whether section 6103(a) prohibited disclosure of a taxpayer's returns and return information after the information was publicly filed in court. *Id.* at 1317. The *Johnson* court disagreed with the *Lampert* and *Rowley* courts, holding "the fact that tax return information is *otherwise available* in the public record—and therefore arguably has lost its confidentiality—does not remove section 6103's proscription against improper disclosure of tax return information." *Id.* at 1321 n.1. But despite the different holdings, all three opinions concluded that confidentiality was arguably lost only when the information became part of the public domain, not when the lawsuit was filed.

ExxonMobil's disclosure of any of the Designated Documents to the IRS was not in a manner "making such information no longer confidential" under paragraph 2 of the Protective Order.

### C. The Designated Documents meet the Protective Order's standard for Confidential Information.

As shown above, paragraph 2's exceptions do not apply to the Designated Documents, and ExxonMobil properly designated them as Confidential Information under the Protective Order because they are "comprised of trade secrets or commercial information that is not publicly known and is of technical or commercial advantage" to ExxonMobil or are "other information required by law or agreement to be kept confidential." *See* Prot. Order (Dkt. No. 29) ¶ 2. Although Defendant has not challenged any specific confidentiality designation, as required by paragraph 5 of the Protective Order, ExxonMobil nevertheless submits the Ylagan Declaration to provide additional detail regarding the confidentiality designations of specific documents. The Ylagan Declaration shows that the Designated Documents meet the Protective Order's definition of Confidential Information because they contain either (1) trade secrets or confidential commercial information[9] or (2) information required by law or agreement to be kept confidential.[10]

---

[9] The Restatement of Torts applies a six-factor test to determine whether a trade secret exists: "(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." RESTATEMENT OF TORTS § 757 cmt. B. (1939); *see also GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016). "Business information is confidential commercial information if its disclosure would cause substantial competitive harm to the person from whom it was obtained." *United States ex rel. Long v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) (citing *Flightsafety Servs. Corp. v. Dep't of Labor*, 326 F.3d 607, 611 (5th Cir. 2003); *see also In re Violation of Rule28(D)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011) (holding "Rule 26(c)(1)(G) is limited to commercial information that has competitive significance"); *Lonesource, Inc. v. United Stationers Supply Co.*, 5:11-cv-33, 2013 WL 3490390 at * 1 (E.D.N.C. July 11, 2013) (holding "contract terms and other information relating to the parties' negotiated business relationship" was confidential and proprietary and overcomes the presumption of access). Courts have also considered the Restatement of Torts' six-factor test in determining whether commercial information warrants protection under Rule 26(c). *See, e.g., Ohio Valley Envtl. Coal. v. Elk Run Coal Co.*, 291

### 1. The Designated Documents meet the Protective Order's standard for trade secrets or confidential commercial information.

The Designated Documents include the following categories of documents related to the Qatar transactions at issue in this lawsuit: (1) the Development and Fiscal Agreements ("DFAs") and other key agreements with the State of Qatar, Qatar Petroleum, and other parties pursuant to which ExxonMobil purchased various rights, including the right to develop and exploit offshore natural gas reserves and to supply Qatar liquefied natural gas ("LNG") produced from certain LNG trains; (2) confidential and proprietary economic models analyzing the economics related to the construction of new LNG trains under the DFAs; (3) internal presentations and documents regarding project financials and economics and development strategies in Qatar, including the assumptions used in ExxonMobil's economic evaluation of such opportunities; and (4) technical information related to ExxonMobil's facilities and operations in Qatar, including the design of LNG trains.   Ylagan Decl. ¶¶ 4–8 (App. 45–49).   The key agreements are subject to broad confidentiality provisions and have not been publicly disclosed.  *Id.* ¶ 5 (App. 45–46).   The economic models, internal presentations and documents, and technical information are not publicly available or publicly disclosed, are used internally, and ExxonMobil considers them to contain highly confidential and proprietary information.  *Id.* ¶¶ 6–8 (App. 47–49).   Public disclosure by ExxonMobil outside of this proceeding of the pricing and cost information in these documents would create risk of antitrust and competition law liability for ExxonMobil.  *Id.* ¶¶ 5–7 (App. 45–48).

The key agreements govern ExxonMobil's operations in Qatar, where ExxonMobil and its predecessors have invested billions of dollars since the early 1990s in developing its business.

---

F.R.D. 114, 119 (S.D. W. Va. 2013) (noting "consideration of these factors is useful in discerning whether corporate research qualifies as confidential commercial information entitled to protection under Rule 26(c)").

[10]  To the extent that the Court has any questions about specific provisions in the Designated Documents, ExxonMobil offers to produce the documents for an in camera inspection.

*Id.* ¶ 5 (App. 45–46). Hundreds of employees developed the economic models and technical information over ExxonMobil and its predecessors' 40-year history of worldwide integrated LNG activities. *Id.* ¶¶ 6, 8 (App. 47–49). Disclosure of the agreements, economic models, internal presentations and documents, and technical information would significantly harm ExxonMobil: (a) by damaging its ongoing commercial relationship with its counterparties and current negotiations for expansion in Qatar because disclosure violates the terms of the agreements and confidentiality is very important to the State of Qatar; (b) by damaging its relationship and credibility with other producing countries and their national oil companies, who could perceive ExxonMobil as more likely to violate the confidentiality provisions in their agreements; (c) by granting its competitors, other producing countries, and their national oil companies a competitive advantage over ExxonMobil in future contracting or bidding opportunities; (d) by giving its counterparties economic analysis and insight into its negotiating strategies that could be used against ExxonMobil in future negotiations; and (e) by granting a competitive advantage to LNG purchasers who could use the terms of the disclosed agreements in future negotiations for the sale and purchase of LNG. *Id.* ¶¶ 5–9 (App. 45–49).

ExxonMobil's operations in Qatar are material to its business. At year-end 2016, ExxonMobil had interests in 65 thousand net acres offshore Qatar, and ExxonMobil participated in 62.2 million tons per year gross LNG capacity and 2.0 billion cubic feet per day of flowing gas capacity. Thus, any negative change in ExxonMobil's relationship with Qatar would cause significant and immediate economic harm to ExxonMobil. *Id.* ¶ 10 (App. 49–50).

The Designated Documents include the following categories of documents related to the Malaysian transactions at issue in this lawsuit: (1) the various production sharing contracts ("PSCs") and amendments with Petroliam Nasional Berhad ("Petronas"), the Malaysian national

oil and gas company, and other related key agreements and documents; (2) confidential and proprietary models analyzing the economics related to the PSCs; and (3) internal presentations regarding development strategies in Malaysia.  *Id.* ¶ 11 (App. 50).  The PSCs are considered confidential by Petronas and ExxonMobil and are not publicly disclosed.  *Id.* ¶¶ 12, 15 (App. 50–53).  The economic models and internal presentations are not publicly available or publicly disclosed, are used internally, and are considered by ExxonMobil to contain highly confidential and proprietary information.  *Id.* ¶¶ 13–14 (App. 51–52).

The rights under the PSCs are ExxonMobil's most valuable asset in Malaysia.  *Id.* ¶ 12 (App. 50–51). ExxonMobil and its predecessors have invested billions of dollars in infrastructure in Malaysia during their 40 plus years of operating there.  *Id.* ¶ 14 (App. 52).  Hundreds of employees developed the economic models and expansion strategies in Malaysia over this time period.  *Id.* ¶¶ 13–14 (App. 51–52).  Public disclosure of the PSCs, economic models, and internal presentations would harm ExxonMobil: (a) by impeding ExxonMobil's ability to negotiate further PSCs in Malaysia; (b) by interfering with ExxonMobil's ongoing commercial relationship with Petronas; (c) by granting ExxonMobil's competitors,  producing countries, and their national oil companies a competitive advantage over it in future contracting or bidding opportunities; (d) by giving its counterparties economic analysis and insight into its negotiating strategies that may be used against ExxonMobil in future negotiations; and (e) by allowing ExxonMobil's competitors and counterparties to gain these advantages without having to invest the significant time and resources that ExxonMobil invested.  *Id.* ¶¶ 12–14 (App. 50–52).

Public disclosure of these documents would negatively impact ExxonMobil's relationship with Petronas.  *Id.* ¶ 15 (App. 52–53).  ExxonMobil's operations in Malaysia are material to its business.   At year-end 2016, ExxonMobil had interests in PSCs in Malaysia covering 200

thousand net acres offshore.   Thus, any negative change in ExxonMobil's relationship with Malaysia would cause significant and immediate economic harm to ExxonMobil.  *Id.* ¶ 16 (App. 53).

The Designated Documents also include nonpublic detailed financial information reflecting ExxonMobil's internal analyses and evaluations of the transactions at issue in this lawsuit and tax calculations regarding ExxonMobil's foreign tax credits.  Public disclosure of this information would harm ExxonMobil by allowing competitors to use the information against ExxonMobil in future contracting or bidding opportunities and by allowing its contractual counterparties to understand how ExxonMobil analyzes and evaluates the transactions at issue, which would impact future negotiations.  *Id.* ¶ 17 (App. 53–54).

None of the Designated Documents has been publicly disclosed.  ExxonMobil takes steps to ensure that the terms of its confidential agreements and confidential information are not publicly disclosed, including restricting the persons with access to key decision-makers and project personnel; restricting the internal distribution of the confidential information to personnel with a business reason to have or know such information; keeping digital copies of the agreements and other documents on secure, password-protected computer systems; and restricting access to the facilities where the agreements and other documents are stored, either in hard copy or electronically.  *Id.* ¶¶ 5–8, 13–14, 17–18 (App. 45–54).

Thus, all of the Designated Documents contain valuable trade secrets and confidential commercial information that is not publicly available.  ExxonMobil has invested billions of dollars in developing this information, and the disclosure of such confidential commercial information would cause significant and immediate economic harm to its business.  The key agreements with the State of Qatar and Qatar Petroleum contain express confidentiality

provisions, and Petronas and ExxonMobil consider the PSCs to be confidential.  ExxonMobil has taken strict measures to guard the secrecy of the highly confidential information in the Designated Documents by restricting access to such information.   Therefore, ExxonMobil properly designated the Designated Documents as Confidential Information.

### 2. The Designated Documents meet the Protective Order's standard for "other information required by law or agreement to be kept confidential."

Many of the Designated Documents contain express confidentiality provisions, which are broad and apply to all of the related agreements and documents in Qatar.  Ylagan Decl. ¶¶ 5, 7, 9 (App. 45–49).  In addition, the PSCs are considered confidential by Petronas and ExxonMobil and are not publicly disclosed.  *Id*. ¶¶ 12, 15 (App. 50–53).  To avoid any dispute with its counterparties that ExxonMobil breached the confidentiality of the agreements in Qatar and Malaysia by voluntarily producing the agreements, ExxonMobil asked the IRS to issue an administrative summons under 26 U.S.C. § 7602 before producing those agreements during audit.  As explained above, to the extent any of the Designated Documents are part of the Audit Documents produced by ExxonMobil to the IRS during audit, section 6103(a) applies to those documents and requires that they be kept confidential by law.  *See* 26 U.S.C. § 6103(a) (mandating that tax returns and return information "shall be confidential").  Thus, the Designated Documents are required to be kept confidential by law or agreement, and ExxonMobil properly designated them as Confidential Information under the Protective Order.[11]

---

[11] *See Neon Enter. Software, LLC v. Int'l Bus. Machines Corp.*, No. A-09-CA-896 AWA, 2012 WL 470196, at *6 (W.D. Tex. Feb. 13, 2012) (concluding licensing agreements which contain confidentiality clauses have need for continued confidentiality protection).

**D. Excluding the Designated Documents from the Protective Order's scope would violate ExxonMobil's due process rights.**

ExxonMobil has a constitutionally protected property right in its trade secrets and confidential business information.[12]  As described above, the Designated Documents contain some of ExxonMobil's most important and valuable trade secrets and confidential business information.  Thus, denying this motion would deprive ExxonMobil of its due process rights.

A procedural due process violation involves the deprivation of a protected interest in property or liberty without due process.  *See Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017).  For example, public disclosure of trade secrets and confidential business information would deprive a party of its property right in that information.  *See, e.g.*, *Tubos de Acero de Mexico, S.A. v. Am. Intern. Inv. Corp.*, 292 F.3d 471, 483 (5th Cir. 2002) ("A disclosure of a trade secret to others who have no obligation of confidentiality extinguishes the property right in the trade secret." (quoting *Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 183 (5th Cir. 1988))).  Courts have therefore generally protected trade secrets and confidential business information from public disclosure by entering protective orders and sealing documents.  *See* FED. R. CIV. P. 26(c)(1)(G) (providing for courts to enter protective orders to protect trade secrets and confidential business information); *see also, e.g.*, *Neon Enter. Software, LLC v. Int'l Bus. Machines Corp.*, No. A-09-CA-896 AWA, 2011 WL 2964796, at *1 (W.D. Tex. July 20, 2011)

---

[12] A party has a constitutionally protected property right when the party has a legitimate claim of entitlement to it that is created "by existing rules or understandings that stem from an independent source such as state law." *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) (quoting *Paul v. Dav*is, 424 U.S. 693, 709 (1976)).  The Supreme Court has recognized that state law may create a cognizable trade secret property right protected by the Takings Clause.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) ("We therefore hold that to the extent that Monsanto has an interest in its health, safety, and environmental data cognizable as a trade-secret property right under Missouri law, that property right is protected by the Taking Clause of the Fifth Amendment.").  And Texas law recognizes trade secrets as property rights.  *See In re Continental Gen. Tire, Inc.*, 979 S.W.2d 609, 612 (Tex. 1998) ("[Our trade secret privilege] recognizes that trade secrets are an important property interest, worthy of protection.").  Additionally, a company's confidential business information "has long been recognized as property." *Carpenter v. U.S.*, 484 U.S. 19, 26 (1987); *see also U.S. v. O'Hagan*, 521 U.S. 642, 654 (1997) ("A company's confidential information, we recognized in *Carpenter*, qualifies as property to which the company has a right of exclusive use.").

("It is not uncommon for a court to seal documents filed in a case when those records contain trade secrets, sensitive commercial information …."). For example, a magistrate judge for the Eastern District of Kentucky prevented the public disclosure of a company's trade secrets and other confidential business information based in part on the company's due process rights:

> It is well settled that trade secrets are a form of property. Therefore, the Fifth Amendment, which has been applied to the states and judicial action, affords property protection for Liberty's trade secrets and other confidential information. The value of a constitutionally-protected property such as a trade secret is depleted if the court permits public disclosure thereof. Since public knowledge of a company's trade secret destroys the value of such material, the forced disclosure of Liberty's claims handling and training materials would result in an uncompensated taking. Based on the foregoing analysis, the Magistrate Judge concludes that this factor weighs in favor of entering a protective order.

*Republic Servs., Inc. v. Liberty Mut. Ins. Companies*, No. CIV.A. 03-494-KSF, 2006 WL 1635655, at *7 (E.D. Ky. June 9, 2006) (citations omitted). The Designated Documents here should be entitled to protection for the same reasons.

If the Designated Documents are not covered by the Protective Order, ExxonMobil will be faced with a Hobson's choice: either give up its constitutional right to petition the government for a tax refund[13] or give up its constitutionally protected property rights in its trade secrets and confidential business information.[14] ExxonMobil should not be forced to choose which constitutional right to give up, especially when (i) the Magistrate Judge already found that

---

[13] The right to petition the government for the redress of tax grievances is constitutionally protected by the First Amendment. *See Van Deelen v. Johnson*, 497 F.3d 1158 (10th Cir. 2007) (finding that the right to petition the government for the redress of tax grievances is protected by the Petition Clause of the First Amendment and the right "has been with us and clearly established since the Sons of Liberty visited Griffin's Wharf in Boston").

[14] *Cf. Heartland Acad. Cmty. Church v. Waddle*, 317 F. Supp. 2d 984, 1079 (E.D. Mo. 2004), *aff'd*, 427 F.3d 525 (8th Cir. 2005) ("Parents and Heartland were given a Hobson's Choice … instead of due process. Parents could either receive due process and leave their child in protective custody, or forgo the right to present evidence in opposition to the mass removal tactic and take custody of their child."); *Simpson v. Lifespring, Inc.*, 572 F. Supp. 1251, 1253 (E.D. Pa. 1983), *aff'd*, 770 F.2d 1075 (3d Cir. 1985) (noting that due process limits of personal jurisdiction would be distorted if officers of corporations operating in several states were faced with the "Hobson's choice" of "either disassociat[ing] themselves from the corporation or defend[ing] the propriety of their conduct in a distant forum" (quoting *PSC Prof'l Servs. Grp., Inc. v. Am. Digital Sys., Inc.*, 555 F. Supp. 788, 793 (E.D. Pa. 1983))).

ExxonMobil's trade secrets and confidential business information should be protected; (ii) no prejudice to Defendant will occur—the Protective Order authorizes the use of the Audit Documents pursuant to section 6103(h) or (k), but requires that any filing of Audit Documents with the Court be under seal if they have been produced to Defendant by ExxonMobil and designated as Confidential Information; and (iii) the Protective Order's scope extends to the Designated Documents.   Accordingly, the Protective Order should apply to the Designated Documents, and ExxonMobil's due process rights should be protected.

## IV.   CONCLUSION

For all these reasons, ExxonMobil respectfully requests that the Court grant this motion and enter an order finding that:

1. ExxonMobil properly designated the Designated Documents as Confidential Information under paragraph 2 of the Protective Order; and

2. the party objecting to a Confidential Information designation pursuant to paragraph 5 of the Protective Order bears the burden of proof to demonstrate that the information is "already in the knowledge or possession of the party to whom disclosure is made."

ExxonMobil also requests oral argument on this motion.   A hearing is necessary because Defendant threatened to disclose publicly ExxonMobil's Designated Documents without following the procedure for objecting to designations set forth in paragraph 5 of the Protective Order, despite the fact that Defendant provided ExxonMobil with no contrary legal authorities disproving ExxonMobil's position that the IRS and Defendant are separate parties and that the IRS is not a party to this lawsuit.[15]

---

[15] *See* Katz. Decl. ¶ 7 (App. 7); Letter from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Sept. 27, 2017) (App. 11–12); Email from Cory Johnson, Senior Litigation Counsel, DOJ, to Emily Parker, Attorney, Thompson & Knight LLP (Oct. 6, 2017) (App. 42–43).

Respectfully submitted,

THOMPSON & KNIGHT LLP

By:      /s/ *Emily A. Parker*
       Emily A. Parker
       State Bar No. 15482500
       emily.parker@tklaw.com
       Mary A. McNulty
       State Bar No. 13839680
       mary.mcnulty@tklaw.com
       William M. Katz, Jr.
       State Bar No. 00791003
       william.katz@tklaw.com
       J. Meghan Nylin
       State Bar No. 24070083
       meghan.nylin@tklaw.com
       Leonora S. Meyercord
       State Bar No. 24074711
       lee.meyercord@tklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas  75201
(214) 969-1700
(214) 969-1751 (Fax)

MILLER & CHEVALIER, CHARTERED

       Kevin L. Kenworthy
       D.C. Bar No. 414887
       kkenworthy@milchev.com
       George A. Hani
       D.C. Bar No. 451945
       ghani@milchev.com

900 16th Street NW
Washington, D.C.  20006
(202) 626-5800
(202) 626-5801 (Fax)

**ATTORNEYS FOR PLAINTIFF
EXXON MOBIL CORPORATION**

## <u>CERTIFICATE OF CONFERENCE</u>

As reflected in the exhibits to and testimony in my declaration (App. 5–43), I certify that the parties have conferred about the relief requested in this motion, and that the parties have been unable to reach an agreement.  Accordingly, this opposed motion is submitted to the Court for determination.

/s/ <i>William M. Katz, Jr.</i>
William M. Katz, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was filed and served electronically through ECF on October 9, 2017, on all counsel of record.

/s/ <i>William M. Katz, Jr.</i>
William M. Katz, Jr.