**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

EXXON MOBIL CORPORATION,

       Plaintiff,

v.

UNITED STATES OF AMERICA,

       Defendant.

CIVIL ACTION NO. 16-cv-02921

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF EXXON MOBIL**
**CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND AND RELEVANT CODE PROVISIONS.........................3

      A.     EMOC's refining and terminal operations subjected it to Fuel
             Excise Tax.....................................................................................................3

      B.     EMOC's blending activities entitled it to Alcohol Credits.....................4

      C.     ExxonMobil's income tax reporting of EMOC's Alcohol Credits.........5

III.    LEGAL STANDARD..............................................................................................7

IV.    ARGUMENT ........................................................................................................7

      A.     The Code provisions at issue show that the Alcohol Credit EMOC
             claimed under section 6426(a) was a payment in satisfaction of its
             Fuel Excise Tax............................................................................................8

      B.     Long-standing tax principles require payments for independent
             activities to be analyzed separately, so the Alcohol Credit cannot
             reduce EMOC's Fuel Excise Tax ........................................................16

      C.     Treating the Alcohol Credit as a reduction of EMOC's Fuel Excise
             Tax creates inequitable and arbitrary results ........................................19

      D.     *Sunoco* was wrongly decided..................................................................24

V.     CONCLUSION....................................................................................................30

APPENDIX

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affiliated Foods, Inc. v. Comm'r*
    128 T.C. 62 (2007)............................................................................................26, 27

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).....................................................................................................7

*Bailey v. Comm'r*,
    103 F.2d 448 (5th Cir. 1939) ....................................................................................16

*Bhd. of R.R. Trainmen v. Balt. & O. R .Co. et. al.*,
    331 U.S. 519 (1947)...................................................................................................11

*Carter Trust, ex. rel. v. United States*, 256 F. Supp. 2d 536 (N.D. Tex. 2003) ...............................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................................................7

*Consol. Edison Co. of New York v. United States*,
    10 F.3d 68 (2d Cir. 1993)..........................................................................................17

*Doe v. KPMG LLP*,
    398 F.3d 686 (5th Cir. 2005) ......................................................................................9

*Drake v. Panama Canal Comm'n*,
    907 F.2d 532 (5th Cir. 1990) ....................................................................................22

*Fed. Home Loan Mortg. Corp. v. Comm'r*,
    121 T.C. 129 (2003)...................................................................................................26

*Flood v. United States*,
    33 F.3d 1174, 1178 n.5 (9th Cir. 1994) ....................................................................10

*Fort Howard Corp. & Subsidiaries  v. Comm'r*,
    103 T.C. 345, 364 (1994)...........................................................................................26

*Free v. Abbot Labs.*,
    51 F.3d 524 (5th Cir. 1995) ......................................................................................21

*INS v. Nat'l Ctr. for Immigrants' Rights Inc.*,
    502 U.S. 183 (1991)...................................................................................................11

*Lenz v. Comm'r*,
    101 T.C. 260 (1993)...................................................................................................10

*Maines v. Comm'r*,
144 T.C. 123 (2015)..................................................................................27, 28

*Sierra Club v. Abston Constr. Co. Inc.*,
620 F.2d 41 (5th Cir. 1980) ...................................................................15

*Summa Holdings, Inc. v. Comm'r*,
848 F.3d 779 (6th Cir. 2017) ..................................................................25

*Sunoco v. United States*,
129 Fed. Cl. 322 (Ct. Cl. Nov. 22, 2016).................................... *passim*

*Sunoco v. United States*,
No. 17-1402 (Fed. Cir. Dec. 22, 2016), ECF No. 1 ...................... *passim*

*In re Timbers of Inwood Forest Assoc., Ltd.*,
793 F.2d 1380 (5th Cir. 1986) ................................................................13

*Trinity Indus., Inc. v. United States*,
757 F.3d 400 (5th Cir. 2014) ....................................................................7

*United States v. Diebold, Inc.*,
369 U.S. 654 (1962)....................................................................................7

*United States v. Janis*,
428 U.S. 433 (1976)....................................................................................7

*United States v. Serfass*,
684 F.3d 548 (5th Cir. 2012) ..................................................................20

*United States v. Solis-Campozano*,
312 F.3d 164 (5th Cir. 2002) ..................................................................20

*Watervliet Paper Co. v. Comm'r*,
16 B.T.A. 604 (1929)................................................................................17

*Whitfield v. United States*,
543 U.S. 209 (2005)..................................................................................22

**Statutes**

2 U.S.C. § 166............................................................................................15

I.R.C. § 25A...............................................................................................21

I.R.C. § 30B ..............................................................................................21

I.R.C. § 34 ..................................................................................... *passim*

I.R.C. § 40 ...........................................................................................................12, 13, 14, 22

I.R.C. § 44 ...........................................................................................................................21

I.R.C. § 45E .........................................................................................................................21

I.R.C. § 50 ...........................................................................................................................22

I.R.C. § 54 ...........................................................................................................................22

I.R.C. § 54A .........................................................................................................................22

I.R.C. § 54AA .......................................................................................................................22

I.R.C. § 61 .............................................................................................................................5

I.R.C. § 63 .............................................................................................................................5

I.R.C. § 87 ................................................................................................................5, 13, 22, 29

I.R.C. § 163 ...........................................................................................................................21

I.R.C. § 164 ......................................................................................................................17, 28

I.R.C. § 263A ........................................................................................................................21

I.R.C. § 275 ...........................................................................................................................21

I.R.C. § 280C ...................................................................................................................21, 22, 29

I.R.C. § 280D ...................................................................................................................21, 29

I.R.C. § 461 ...........................................................................................................................16

I.R.C. § 1397E .......................................................................................................................22

I.R.C. § 1400N .......................................................................................................................22

I.R.C. § 1502 ...........................................................................................................................5

I.R.C. § 1504 ...........................................................................................................................5

I.R.C. § 4041 (2015) .........................................................................................................12, 23

I.R.C. § 4051 (2015) .................................................................................................................8

I.R.C.§ 4081 ........................................................................................................... *passim*

I.R.C. § 4083 ...........................................................................................................................3

iv

I.R.C. § 6401 ............................................................................................4, 13

I.R.C. § 6426 ..............................................................................................*passim*

I.R.C. § 6427 ..............................................................................................*passim*

I.R.C. § 9503 ..............................................................................................*passim*

American Jobs Creation Act of 2004, Pub. L. 108-357, 118 Stat. 1418 (2004) ................... *passim*

Crude Oil Windfall Profit Tax Act of 1980, Pub. L. No. 96-223, 94 Stat. 229, 230
    (1980) ..........................................................................................................21

Federal-Aid Highway Act of 1956, Pub. L. No. 84-627, § 209, 70 Stat. 374, 379
    (1956) ..........................................................................................................11

Food, Conservation, and Energy Act of 2008, Pub. L. 110-246, §§ 15331-15332,
    122 Stat. 1561, 2277-2279 (2008) .............................................................16

Highway Improvement Act of 1982, Pub. L. No. 97-424, § 531, 96 Stat. 2097,
    2187 (1983) ................................................................................................11

Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of
    2010, Pub. L. No. 111-312, § 708(b)(1), 124 Stat. 3296, 3312 (2010) ..................................16

**Other Authorities**

I.R.S. Notice 2005-4, § 2, 2005-1 C.B. 289, 290 (Jan. 1, 2005) ..................................11

I.R.S. Notice 2005-62, § 5, 2005-2 C.B. 443, 447 (Jan. 1, 2005) ................................11

I.R.S. Priv. Ltr. Rul. 201022012 (June 4, 2010) ........................................................8

I.R.S. Tech. Adv. Mem. 200215004 (Apr. 12, 2002) ..................................................8

Fed. R. Civ. P. 56 ....................................................................................................7

H.R. Rep. No. 108-548, pt. 1 (2004) .................................................................12, 13

H.R. Rep. No. 108-755 (2004) ...................................................................13, 14, 26

I.R.S. Chief Counsel Adv. 201342010 (Aug. 29, 2013) ........................................4, 22

Molly F. Sherlock, Cong. Research Serv., R41227, Energy Tax Policy:
    Historical Perspectives On and Current Status Of Energy Tax
    Expenditures (2011) ..................................................................................15

Rev. Rul. 2005-28, 2005-1 C.B. 997, 997 (May 9, 2005) ..........................................27

v

Salvatore Lazzari, CONG. RESEARCH SERV., RL32739, ALCOHOL FUELS TAX
    INCENTIVES (2005) .................................................................................................15

Treas. Reg. § 1.61-3 ...........................................................................................................6

Treas. Reg. § 1.461-4 ..............................................................................................16, 17, 18

Treas. Reg. § 1.1502-11 .....................................................................................................5

Treas. Reg. § 48.4081-1 .....................................................................................................3

I.      **INTRODUCTION**

Plaintiff Exxon Mobil Corporation ("ExxonMobil") is entitled to partial summary judgment on its tax refund claims because it is entitled to deduct the excise tax imposed by section 4081 (the "Fuel Excise Tax"), without reduction for the federal government blending subsidy provided by section 6426 (the "Alcohol Credit").[1]

A taxpayer's Fuel Excise Tax is fixed under section 4081(a) as a specified rate multiplied by the number of gallons of gasoline the taxpayer removes from its refineries or terminals.  A taxpayer includes the Fuel Excise Tax as part of its deduction for cost of goods sold ("COGS") for the sale of gasoline.

The Alcohol Credit is an incentive for blending alcohol with gasoline.  That subsidy is payable in cash, as a refundable credit against income tax, or as a credit against the Fuel Excise Tax.  When the Alcohol Credit is allowed as a credit against the Fuel Excise Tax, the credit is a payment in satisfaction of that tax but does not change the amount of that tax.  The Fuel Excise Tax included in the COGS deduction is fixed by statute, without any reduction for the Alcohol Credit.

The government disagrees, arguing that the Alcohol Credit should be treated as reducing the Fuel Excise Tax, instead of as a payment in satisfaction of that tax.  In the government's view, the amount of "Fuel Excise Tax" included in COGS is not the amount fixed by section 4081(a) as the "Fuel Excise Tax," but rather the smaller amount that remains after subtracting the Alcohol Credit.  The government's view would increase ExxonMobil's taxable income by the amount of the Alcohol Credit, effectively imposing federal income tax on the blending subsidy.

---

[1] Unless otherwise indicated, all "section" and "§" references are to the Internal Revenue Code of 1986, 26 U.S.C. ("I.R.C." or "Code"), as amended and in effect during income tax periods at issue (2008 and 2009).  Corresponding regulations found in Title 26, Code of Federal Regulations, are cited as "Treas. Reg."

The Fuel Excise Tax determined under section 4081(a) without any reduction for the Alcohol Credit is properly included in COGS for three reasons: (1) the relevant statutory framework shows that the Alcohol Credit is a payment in satisfaction of the Fuel Excise Tax; (2) established tax principles require the Fuel Excise Tax to be calculated independently from the Alcohol Credit; and (3) the government's position would create inequitable and arbitrary results.

First, the relevant Code provisions show that the Alcohol Credit, when used as a credit against the Fuel Excise Tax, is a payment in satisfaction of that tax. In 2004, Congress amended the Code to separate the blending subsidy from the Fuel Excise Tax. These changes made the Alcohol Credit independent of any Fuel Excise Tax and enabled taxpayers to receive the Alcohol Credit in cash. The government agrees that these cash payments are not subject to federal income tax. The tax-free nature should not change just because the Alcohol Credit is received in the form of a credit against the Fuel Excise Tax. In substance, the blender is receiving a tax-free cash payment in the amount of the Alcohol Credit and using that cash to pay its Fuel Excise Tax. Treating the Alcohol Credit as a payment of the Fuel Excise Tax is also the only interpretation that can be reconciled with section 9503, which dictates that the Highway Trust Fund receives the Fuel Excise Tax unreduced by any Alcohol Credits. Just as the Alcohol Credit does not reduce the amount of Fuel Excise Tax received by the Highway Trust Fund, it also does not reduce COGS used to determine taxable income.

Second, established tax principles require the Alcohol Credit and the Fuel Excise Tax to be treated as two independent payments, rather than a single net payment. A blender's Alcohol Credit and its Fuel Excise Tax are fixed by separate activities that have separate federal income tax consequences. Any netting or offsetting of the amounts due from each of the two activities merely reduces the amount of cash changing hands, but does not change the amount due.

2

Third, the government's approach creates arbitrary and inequitable results. The Alcohol Credit does not affect a blender's taxable income when received in cash, but the government argues that it effectively increases taxable income (through a reduction to COGS) when used as a credit against the Fuel Excise Tax. That disparate treatment is illogical, and there is no reason to think that Congress intended to create it when Congress did not say so explicitly.

II.   **FACTUAL BACKGROUND AND RELEVANT CODE PROVISIONS**

There is no genuine dispute as to any material fact; the only dispute is one of law. The material facts and Code provisions are summarized below.

    A.   **EMOC's refining and terminal operations subjected it to Fuel Excise Tax**

ExxonMobil Oil Corporation ("EMOC"), a wholly-owned subsidiary of ExxonMobil, engages in the production, refining, marketing, and transportation of petroleum, natural gas, and petroleum products. *See* MacFarlane Decl. ¶2 (Appx-002).

Taxpayers like EMOC are subject to the section 4081 Fuel Excise Tax for the removal of "taxable fuel" from any refinery or terminal. Taxable fuel includes gasoline, aviation gasoline, diesel fuel, and kerosene. I.R.C. § 4083(a)(1); Treas. Reg. § 48.4081-1. For gasoline, section 4081(a) fixes the Fuel Excise Tax at 18.3 cents per gallon.[2] The Fuel Excise Tax is due quarterly and is reported on IRS Form 720. All Fuel Excise Tax payments are directed to the U.S. Treasury's Highway Trust Fund. I.R.C. § 9503(b)(1)(D).

For 2008 and 2009, EMOC was subject to Fuel Excise Tax of $3,106,273,065 and $2,899,496,300, respectively. *See* MacFarlane Decl. ¶3 (Appx-003). EMOC reported these

---

[2] Different tax rates apply to diesel fuel, kerosene, and aviation gasoline. See I.R.C.§ 4081(a)(2)(A). An additional 0.1 cent per gallon excise tax is imposed on the removal of taxable fuel as the separate Leaking Underground Storage Tank Trust Fund tax. See I.R.C. § 4081(a)(2)(B).

amounts of Fuel Excise Tax on its Forms 720, and, pursuant to section 9503(b), the Highway Trust Fund received these amounts as Fuel Excise Taxes paid.

B.      **EMOC's blending activities entitled it to Alcohol Credits**

The Alcohol Credit encourages taxpayers to blend alcohol with petroleum-based fuels.[3] The subsidy is calculated based on the number of gallons of alcohol blended with a "taxable fuel" (*i.e.*, gasoline or diesel fuel) that is then sold or used in a blender's trade or business.  I.R.C. § 6426(b).  EMOC's 2008 and 2009 blending activities resulted in $453,269,805 and $509,917,115 in Alcohol Credits.  *See* MacFarlane Decl. ¶4 (Appx-003).

Blenders generally may claim the Alcohol Credit in three different ways.  First, section 6426(a) allows blenders to claim as "a credit against the tax imposed by section 4081 an amount equal to" the Alcohol Credit.  EMOC used this method in 2008 and 2009, using its Alcohol Credits to satisfy its Fuel Excise Tax .  *See* MacFarlane Decl. ¶5 (Appx-003).  Second, the Code also allows for a direct cash payment of the Alcohol Credit.  I.R.C. § 6427(e).  A coordination provision states that any cash payment is reduced by the amount of Alcohol Credit a blender uses to satisfy its Fuel Excise Tax.  I.R.C. § 6427(e)(3).  These cash payments are not taxable income to the recipients.[4]  Third, instead of a cash payment, taxpayers can claim the Alcohol Credit as a refundable credit against their income tax, which like the cash payment under section 6427(e) is not taxable income.[5]  I.R.C. § 34(a)(3).

---

[3] "Alcohol" is typically plant-based ethanol derived from corn.  *See* I.R.C. § 6426(b)(4)(A).  The subsidy is 51 cents per gallon of alcohol blended for calendar years 2008 and earlier, and 45 cents per gallon of alcohol blended for calendar years 2009 through 2011.  I.R.C. § 6426(b)(2)(A).

[4] Section 6427(j) provides that the Alcohol Credits paid in cash are treated as "refunds of overpayments" of the Fuel Excise Tax.  A refund of an overpaid federal tax is not itself taxable income; it is simply the return to the taxpayer of its own money.  The IRS has acknowledged that "§ 6427(e) payments are not items of gross income."  I.R.S. Chief Counsel Adv. 201342010 (Aug. 29, 2013).

[5] *See* I.R.C. § 6401(b)(1) (treating the refunded portion of a section 34(a)(3) credit as an overpayment of tax (and therefore not an item of income)).

When Congress enacted the Alcohol Credit as part of the American Jobs Creation Act of 2004, Pub. L. 108-357, 118 Stat. 1418 (2004) ("AJCA"), it dramatically overhauled the structure of the blending incentives.  Previously, a blender could receive a benefit in the form of reduced excise tax rates.  *See* I.R.C. § 4081(c) (2003).  The reduced Fuel Excise Tax rates meant that less money went to the Highway Trust Fund when fuel was blended.  Alternatively, a blender could claim the benefit as a non-refundable income tax credit under section 40(a), but section 87 specifically made this credit includable in taxable income.

The AJCA revamped the regime to increase the funding of the Highway Trust Fund. Congress eliminated the reduced excise tax rates for blended fuels, and created the Alcohol Credit to encourage blending.  Thus, under the new regime, Congress separated the Fuel Excise Tax from the blending subsidies so that the same Fuel Excise Tax rates applied to all taxable fuels, whether blended with alcohol or not.  Further, Congress mandated that the amount of Fuel Excise Tax fixed under section 4081(a) is paid to the Highway Trust Fund without reduction for the Alcohol Credit.

C.      **ExxonMobil's income tax reporting of EMOC's Alcohol Credits**

The Code imposes a corporate income tax on the "taxable income" of every U.S. corporation.[6]  For this purpose, taxable income is defined as "gross income minus the deductions allowed by" other provisions of the Code.  I.R.C. § 63(a).  For businesses that produce products for sale, such as EMOC's manufacture and sale of motor fuels, gross income includes the gain from sales of property, which is calculated as the total sales minus COGS.  I.R.C. § 61(a)(3);

---

[6] While each ExxonMobil subsidiary (like EMOC) subject to the Fuel Excise Tax must file a separate federal excise tax return (Form 720), ExxonMobil files a consolidated *income* tax return (Form 1120) that includes the income and income tax liability of itself and its domestic subsidiaries.  I.R.C. §§ 1502-1504, Treas. Reg. § 1.1502-11.

Treas. Reg. § 1.61-3(a).  COGS consists of the costs attributable to producing a product, including the Fuel Excise Tax.  When COGS is reduced, gross income increases, and vice versa.

On its original consolidated income tax returns for tax years 2008 and 2009, ExxonMobil incorrectly reduced its COGS by the amount of its Alcohol Credit.  *See* MacFarlane Decl. ¶5 (Appx-003).  ExxonMobil timely filed amended returns for those years, eliminating the improper reduction to its COGS.

The following example illustrates the treatment of the Alcohol Credit by EMOC on its Forms 720 and by ExxonMobil on its original and amended income tax returns (Forms 1120), and how the change affected its income tax liability:

| Table 1: Fuel Excise Tax (Form 720) | |
|---|---|
| 1. Fuel Excise Tax | **$80** |
| 2. Tax payment using the Alcohol Credit | ($10) |
| 3. Remaining Fuel Excise Tax Paid with Return | **$70** |

| Table 2: Federal Income Tax (Form 1120) | | |
|---|---|---|
| | **Original Return** | **Amended Return** |
| 1. Gross Sales | $100 | $100 |
| 2. COGS Deduction | **($70)** | **($80)** |
| 3. Taxable Income (line 1 – line 2) | $30 | $20 |
| 4. Income Tax (line 3 x 35%) | $10.5 | $7 |

In Table 2 above, the "Original Return" column shows the COGS deduction reduced by the Alcohol Credit ($10), which effectively treated the Alcohol Credit as taxable income resulting in $3.50 of additional income tax.  The "Amended Return" column shows a reversal of the COGS reduction, which decreased taxable income by $10 and decreased tax by $3.50.

The corrected tax treatment reflected on ExxonMobil's amended returns results in tax refund claims of $159 million and $178 million for 2008 and 2009, plus statutory interest.  *See* MacFarlane Decl. ¶6 (Appx-003).  The IRS denied ExxonMobil's refund claims, and ExxonMobil timely filed this refund suit.

III.   **LEGAL STANDARD**

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, the Court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the Court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In a tax refund suit the taxpayer bears the burden of proving entitlement to the refund amount at issue. *United States v. Janis*, 428 U.S. 433, 440 (1976). The court reviews the plaintiff's tax liability *de novo* and should grant partial summary judgment in favor of ExxonMobil if it shows by a preponderance of evidence that there is no genuine dispute as to any material fact and ExxonMobil is entitled to a federal tax refund as a matter of law. *See Trinity Indus., Inc. v. United States*, 757 F.3d 400, 413 (5th Cir. 2014); *see, e.g., Carter Trust, ex. rel. v. United States*, 256 F. Supp. 2d 536 (N.D. Tex. 2003).

IV.   **ARGUMENT**

The issue is whether EMOC's Alcohol Credit reduces the amount of Fuel Excise Tax used to compute taxable income. The answer is "no." EMOC's Fuel Excise Tax was fixed by section 4081. When EMOC used the Alcohol Credit as a "credit against" its Fuel Excise Tax, EMOC paid a portion of its Fuel Excise Tax. EMOC paid the balance of its Fuel Excise Tax either with cash or through other means (*i.e.*, carried forward overpayments from previous quarters and semimonthly deposits). Because EMOC paid its Fuel Excise Tax fixed under section 4081, it is entitled to include that Fuel Excise Tax in its COGS, unreduced by the

Alcohol Credit.  The government's position is contrary to clear statutory language in the Code and established federal income tax principles.  It also leads to absurd and inequitable results.

    A.    **The Code provisions at issue show that the Alcohol Credit EMOC claimed under section 6426(a) was a payment in satisfaction of its Fuel Excise Tax**

Section 6426(a) provides that the Alcohol Credit is allowed as a "credit against" a blender's Fuel Excise Tax.  A straight-forward reading of the term "credit against" is that the credit is used to satisfy the underlying obligation.  If a customer receives a $30 dollar credit for returning a scarf and then applies that credit against the purchase of a $100 jacket, the customer pays only $70 of cash to obtain the jacket.  No one would suggest that the cost of the jacket was less than $100, and sales tax would be imposed on the full $100 cost.  Similarly, EMOC's cost of the gasoline includes the Fuel Excise Tax, unreduced by the Alcohol Credit, notwithstanding that its cash outlay is reduced due to the blending subsidy.

The Code elsewhere uses this precise term, "credit against," to describe a credit that satisfies a tax obligation, but does not alter the amount of the obligation.  For example, section 31(a)(1) uses the term "credit against" to describe the effect on an employee's income tax liability of tax withheld from his or her paycheck.  These withheld amounts, when applied as a "credit against" the employee's income tax liability, did not reduce, but instead satisfied, that employee's income tax liability.[7]

---

[7] Similarly, in the excise tax context, the IRS concluded that credits offered under section 4051(d) for trucks sold with tires as a "credit against" the excise tax imposed on heavy trucks and trailers under section 4051(a) satisfy, rather than reduce, that excise tax liability.  I.R.S. Tech. Adv. Mem. 200215004 (Apr. 12, 2002) ("The § 4051(d) credit does not reduce the § 4051[(a)] liability; rather, credits are used to reduce the balance due.")  Like the Fuel Excise Tax and the Alcohol Credit, the section 4051(a) excise tax and section 4051(d) credit are reported and claimed on Form 720.  *See also* I.R.S. Priv. Ltr. Rul. 201022012 (June 4, 2010) (same conclusion).  ExxonMobil does not cite this guidance as precedential authority, but rather to underscore that the government's position is inconsistent with the IRS's prior interpretation of the "credit against" language.

Significantly, the meaning of the "credit against" language in section 6426(a) is illuminated by considering the other AJCA changes that establish the framework for the Alcohol Credit and Fuel Excise Tax. *Doe v. KPMG LLP*, 398 F.3d 686, 688 (5th Cir. 2005) ("When interpreting a statute, we start with the plain text, and read all parts of the statute together to produce a harmonious whole."). Congress enacted section 6426 as part of a broader legislative effort to encourage the use of blended fuels without depleting the Highway Trust Fund. Congress added or changed twelve Code provisions relating to the Fuel Excise Tax and blending subsidies.[8]

Compared to prior law, the AJCA indisputably separates the Alcohol Credit from the Fuel Excise Tax. One of Congress's most significant changes was adding section 6427(e), which allows the Alcohol Credit to be received as a tax-free cash payment. The availability of the cash payment means that, unlike before, receiving the Alcohol Credit does not depend upon the blender having Fuel Excise Tax against which it must apply the blending subsidy. The Alcohol Credit therefore cannot be viewed as reducing the Fuel Excise Tax. Rather, when a blender uses the Alcohol Credit as a "credit against" its Fuel Excise Tax, the blender effectively receives cash from the government for its blending activities and simultaneously returns that cash to the government to satisfy a separate, fixed obligation–its Fuel Excise Tax. The Alcohol Credit operates as a payment mechanism in the same way as, for example, wage withholding is used as a "credit against" a taxpayer's federal income tax. A wage earner has and pays the same income tax liability whether it is satisfied by an upfront withholding or by a later payment when the tax return is filed. Similarly, the blender has and pays the full liability imposed under section

---

[8] These provisions, contained in sections 301-303 of the AJCA, are Code sections 38, 40, 40A, 87, 4041, 4081, 4083, 4101, 4104, 6426, 6427, and 9503.

4081(a), and therefore should include in its COGS the Fuel Excise Tax determined under section 4081, without any reduction for the Alcohol Credit.

Further, Congress employed language in the AJCA that allows a blender the option to claim the Alcohol Credit as credit against its Fuel Excise Tax, as a cash payment, or as an income tax credit, regardless of its Fuel Excise Tax liability.  Section 6427(e)(3) states that "No amount shall be payable under paragraph (1) [providing for the cash payment of the Alcohol Credit] . . . with respect to any mixture . . . with respect to which an amount is allowed as a credit under section 6426."  This is a coordination rule, not an ordering rule.  Because section 6427(e)(3) refers to credit amounts "allowed" rather than "allowed or allowable," any section 6427(e) cash payment to a blender must be reduced by the Alcohol Credit the blender *actually claimed* under section 6426(a) as a credit against its Fuel Excise Tax, rather than by any amount that the blender *could have claimed* (but did not) as a credit against its Fuel Excise Tax.  This reasoning applies to the refundable section 34(a)(3) income tax credit as well, since that credit is simply the amount "payable" (not paid) to a taxpayer under section 6427(e)(3).  Case law supports this natural reading.  *Flood v. United States*, 33 F.3d 1174, 1178 n.5 (9th Cir. 1994) ("The words 'allowed as a deduction' and 'allowable as a deduction' do not carry the same meaning in the tax code. . . . Deductible expenses that exceed taxable income may be *disallowed* because they will not result in reduction of the taxpayer's income tax, but they are nevertheless *allowable* unless forbidden elsewhere in the tax code.") (emphasis in original); *Lenz v. Comm'r*, 101 T.C. 260, 265 (1993) ("'Allowable deduction' generally refers to a deduction which qualifies under a specific Code provision whereas 'allowed deduction', on the other hand, refers to a deduction granted by the Internal Revenue Service which is actually taken on a return and will result in a reduction of the taxpayer's income tax.").

10

The IRS has issued administrative guidance that a blender must first use the Alcohol Credit under section 6426(a) to satisfy any Fuel Excise Tax liability before it can receive a cash payment under section 6427(e).  *See* I.R.S. Notice 2005-4, § 2, 2005-1 C.B. 289, 290 (Dec. 15, 2004) and I.R.S. Notice 2005-62, § 5, 2005-2 C.B. 443, 447 (Aug. 1, 2005).  The IRS's guidance avoids the need for the government to pay out cash for the blending subsidy only to receive cash back for the Fuel Excise Tax.  In any event, whether a taxpayer is first required to use the Alcohol Credit as a credit against its Fuel Excise Tax before receiving a cash payment, the point remains that section 6427(e) unambiguously allows blenders to receive the Alcohol Credit regardless of how much Fuel Excise Tax they owe.  Congress's decision to grant blenders the opportunity to receive the Alcohol Credit as a cash payment, or to apply it against their income tax obligations under section 34(a)(2), demonstrates that it operates to satisfy, not reduce, a taxpayer's Fuel Excise Tax when claimed as a credit against that liability.[9]

A second significant change made in the AJCA was the amendment to section 9503(b) regarding the funding of the Highway Trust Fund.  This change also demonstrates that the Alcohol Credit is a payment when claimed as a credit against the Fuel Excise Tax.  Congress established the Highway Trust Fund in 1956 as a separate account of the U.S. Treasury dedicated solely to building, improving, and repairing the nation's highways, and it codified the Highway Trust Fund provisions into the Code as section 9503 in 1983.  Federal-Aid Highway Act of 1956, Pub. L. No. 84-627, § 209, 70 Stat. 374, 397 (1956); Highway Improvement Act of 1982, Pub. L.

---

[9] Further supporting this view, the heading of section 6427(e)(3) is "Coordination with other repayment provisions," implying that like section 6427(e), section 6426(a) is also a "payment provision" of which the taxpayer may choose to avail itself to satisfy its Fuel Excise Tax.  Although statute headings cannot limit the plain meaning of a statute, they may be used to "shed light on some ambiguous word or phrase" and are "tools available for the resolution of doubt."  *Bhd. of R.R. Trainmen v. Balt. & O. R .Co. et. al.*, 331 U.S. 519, 529 (1947).  *See also INS v. Nat'l Ctr. for Immigrants' Rights Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

No. 97-424, § 531, 96 Stat. 2097, 2187 (1983).  Since its inception, certain excise taxes, including the Fuel Excise Tax, have been dedicated to the Highway Trust Fund.  The key problem that Congress identified with the pre-2004 regime was that the Highway Trust Fund received less money as a result of the reduced Fuel Excise Tax rates for blended fuels.  *See* H.R. REP. NO. 108-548, pt. 1, at 141 (2004) (Ways & Means Rep.) ("Highway vehicles using alcohol-blended fuels contribute to the wear and tear of the same highway system used by gasoline or diesel vehicles.  Therefore, the Committee believes that alcohol-blended fuels should be taxed at rates equal to gasoline or diesel.").

Congress solved this problem through the AJCA.  The act amended section 9503(b)(1) to require that "taxes received under sections 4041 and 4081 shall be determined without reduction for credits under section 6426."  The words Congress selected are important.  Congress clearly contemplated that amounts received by the Highway Trust Fund would be "taxes received" and that those amounts would equal the Fuel Excise Tax fixed by section 4081 without any reduction for the Alcohol Credit.  It follows that the Fuel Excise Tax paid by taxpayers is determined solely by section 4081, without regard to any blending subsidy.  This is the only interpretation that results in the Highway Trust Fund having "received" the Fuel Excise Tax determined under section 4081.  If Congress believed that some lesser amount of Fuel Excise Tax were being received by the Highway Trust Fund—and thus paid by taxpayers—it could have referred to the "taxes received" by the Highway Trust Fund being increased by the credits under section 6426.  Instead, it described excise taxes received by the Highway Trust Fund as the amount fixed by the relevant statutes (section 4041 and section 4081), unreduced by the Alcohol Credit.

In summary, the AJCA marked a significant departure from the old regime of reduced excise tax rates and income tax credits (under section 40) for alcohol blending, and from the

12

income tax treatment of the blending subsidies.  The reduced excise tax rates meant lower

deductions for excise taxes, and so the subsidy was effectively subject to tax.  The section 40

credits were explicitly taxed as income under section 87.  The AJCA eliminated the reduced

excise tax rates completely, but retained the section 40 income tax credit and its section 87

income inclusion.  At the same time, the AJCA added the Alcohol Credit and explicitly allowed

taxpayers to receive it as a tax-free cash payment (section 6427(e)) or a tax-free refundable

income tax credit (section 34(a)(3)).[10]  When the Alcohol Credit is claimed as a credit against

the Fuel Excise Tax instead of a cash payment or refundable income tax credit, it also should be

treated as tax-free–that is, as a payment rather than a reduction of the taxpayer's deductible Fuel

Excise Tax.

      The text of the AJCA clearly shows that the Alcohol Credit is a payment of the Fuel

Excise Tax and–unsurprisingly–the legislative history is equally unambiguous.  Both the House

Ways and Means Committee Report and the Conference Report state that, as a result of the new

regime, the Alcohol Credit claimed under section 6426(a) "is treated as a payment of the

taxpayer's tax liability received at the time of the taxable event."  H.R. REP. NO. 108-548, pt. 1,

at 142 (2004); H.R. REP. NO. 108-755, at 304 (2004) (Conf. Rep.).  Conference Committee

Reports are often considered the most important piece of legislative history, so this language is

especially probative.  *In re Timbers of Inwood Forest Assoc., Ltd.*, 793 F.2d 1380, 1399 n.33 (5th

---

[10] In general, and as discussed below (*infra* at p. 23 & n.23), federal tax credits are not taxable income unless a provision of the Code specifically provides otherwise.  *Cf.* I.R.C. § 87 (providing that the credit for alcohol blending under section 40 is income).  The Code embraces the section 6427(e) payment and section 34(a)(3) refundable income tax credit as nontaxable by describing them as "overpayments" of tax. *See* I.R.C. §§ 6401(b)(1) and 6427(j)(1).  The IRS has agreed that these benefits are nontaxable as well. I.R.S. Chief Counsel Advice 201342010 (Aug. 29, 2013) (analyzing the section 6426(c) biodiesel mixture credit (which, like the Alcohol Credit, may be claimed under section 6426(a), section 6427(e), or section 34(a)(3)) and stating that "[b]y electing the § 6426(c) excise tax credit and/or the § 6427(e) excise tax payment instead of the § 40A income tax credit, a blender is not required by § 87 or by § 61 to include in its gross income the amount of the § 6426(c) excise tax credits and/or the § 6427(e) payments that it claims.").

Cir. 1986) ("The report of a conference committee is important to a determination of congressional intent, and . . . [b]ecause the conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of Congressional intent.") (internal citations and quotations omitted).

The Conference Report also states that providing the Alcohol Credit in cash under section 6427(e) was intended to provide an "equivalent benefit" to "the partial exemption for fuels" under former section 4081(c).  H.R. Rep. No. 108-755 at 308.  It is clear from the context that "equivalent benefit" in the Conference Report does not require a reduction of the deduction for the Fuel Excise Tax but rather refers to *timing*: under the pre-AJCA exemption regime, the benefit of reduced excise taxes imposed on blended fuels was realized immediately.  *Id.*  The pertinent passage is:

> To the extent the alcohol fuel mixture credit exceeds any section 4081 liability of a person, the Secretary is to pay such person an amount equal to the alcohol fuel mixture credit with respect to such mixture.  Thus, if the person has no section 4081 liability, the credit is totally refundable.  These payments are intended to provide an equivalent benefit to replace the partial exemption for fuels to be blended with alcohol and alcohol fuels being repealed by the provision.  If claims for payment are not paid within 45 days, the claim is to be paid with interest.  The provision also provides that in the case of an electronic claim, if such claim is not paid within 20 days, the claim is to be paid with interest.

> *Id*.

Congress designed the AJCA to provide quick cash payments to match as closely as possible the immediate timing benefit of reduced excise tax rates.  "Equivalent benefit" cannot be read to support equivalent income tax consequences.  Prior to the AJCA, blenders with no excise tax liability obviously could not benefit from the reduced excise tax rates under former section 4081(c), and could only claim the separate *taxable* income tax credit under section 40. As a result of the AJCA, these blenders became eligible to receive a *tax-free* cash payment under

section 6427(e).  Thus, it is impossible for blenders to receive an "equivalent benefit" under the AJCA for income tax purposes.

The Ways & Means and Conference Reports unequivocally state that the Alcohol Credit, when used as a credit against the Fuel Excise Tax, is a payment of that tax.  Subsequent reports of the Congressional Research Service ("CRS") confirm that approach and underscore the income tax consequences of the new blending subsidies.  In analyzing the 2004 changes, the CRS stated that "[w]hen income tax effects are considered, . . . the new excise tax credit has a greater economic or subsidy value than the exemption before it because income tax deductions are taken at 18.4¢ rather than 13.3¢."  Salvatore Lazzari, CONG. RESEARCH SERV., RL32739, ALCOHOL FUELS TAX INCENTIVES Summary (2005).[11]  Thus, the CRS report is similarly unequivocal that blenders such as EMOC are entitled to include the Fuel Excise Tax imposed under section 4081 in their COGS, without any reduction for the Alcohol Credit.[12]

Congress relies on the CRS to analyze, appraise, and evaluate legislation.  *See* 2 U.S.C. § 166(d)(1).  Further, courts regularly rely on CRS reports to interpret statutes.  *See, e.g.*, *Sierra Club v. Abston Constr. Co. Inc.*, 620 F.2d 41, 44 (5th Cir. 1980) (citing a CRS report to help resolve an ambiguity in the Federal Water Pollution Control Act Amendments of 1972).  Here, Mr. Lazzari's CRS Report is especially significant because, after his report had been issued,

---

[11] The 18.4 cents referenced in the CRS report includes the additional 0.1 cent Leaking Undergound Storage Tank Trust Fund tax under section 4081(a)(2)(B).

[12] *See also*, Molly F. Sherlock, CONG. RESEARCH SERV., R41227, ENERGY TAX POLICY: HISTORICAL PERSPECTIVES ON AND CURRENT STATUS OF ENERGY TAX EXPENDITURES 23 n.45 (2011) ("Allowing an excise tax credit . . . increases the value of the tax incentive . . . . Since the taxpayer initially paid the higher excise tax rate, the taxpayer[] is able to deduct that higher excise tax as an expense to offset taxable income.").

Congress extended the Alcohol Credit without making substantive changes to the regime.[13]  If Congress had disagreed with the conclusion of Mr. Lazzari's report, it had every opportunity to amend the statutes to provide for a different result.  It did not.

> B.  **Long-standing tax principles require payments for independent activities to be analyzed separately, so the Alcohol Credit cannot reduce EMOC's Fuel Excise Tax**

Established federal tax principles require that offsetting obligations be treated as two separate payments, rather than a single net payment.  In *Bailey v. Commissioner*, 103 F.2d 448, 450 (5th Cir. 1939), the Fifth Circuit held that the "set off" of a note to the taxpayer from the corporation he controlled, and a separate loan from the corporation to the taxpayer "operates as though [the taxpayer] had paid his company $62,000 on account [of the loan] and it had paid him back the money on the notes."  *Id.*  The taxpayer held overdue company notes with a $62,000 principal balance.  The taxpayer also owed $95,952 to the company on account.  The court recognized two separate $62,000 payments that effectively offset each other, instead of just recognizing payment of the $33,952 balance.

The regulations under section 461 reinforce the principle that offsetting obligations are separate payments.  Treas. Reg. § 1.461-4 provides rules for determining when accrual method taxpayers can take liabilities into account for federal income tax purposes.  Treas. Reg. § 1.461-4(g)(1)(ii)(A) states that a "payment includes the *furnishing of cash or cash equivalents and the*

---

[13] *See* Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 708(b)(1), 124 Stat. 3296, 3312 (2010).  In addition, the Food, Conservation, and Energy Act of 2008, Pub. L. 110-246, §§ 15331-15332, 122 Stat. 1561, 2277-2279 (2008) reduced the amount of the Alcohol Credit and made other minor changes.

*netting of offsetting accounts*."  (emphasis added).  Thus, the offsetting of accounts is required to be treated as two "payments."[14]

In *Consolidated Edison Co. of New York v. United States*, New York City provided a property tax discount for taxpayers that prepaid their taxes.  10 F.3d 68 (2d Cir. 1993). Significantly, these local taxes are deductible from federal gross income under section 164(a)(1). A receipt from the City stated that the prepayment of the discounted amount "constitut[ed] a fully enforceable and valid payment of [the undiscounted amount] of such taxes."  *Id.* at 70. Thus, the taxpayer asserted that it was entitled to deduct for federal income tax purposes the property tax unreduced by the prepayment discount.  *Id.*  The taxpayer also argued that the discount was not separately included in federal gross income because it was tax-exempt interest on a loan to the City.  *Id.*

The Second Circuit held that the prepayment discount was not in substance a loan from the taxpayer to the City, but rather a subsidy from the City that was includible in gross income. *Id.* at 73.[15]  Separately, the Second Circuit analyzed the deductible amount of the property tax, concluding that the fixed amount of property tax accrued before the discount arose, and Con Edison was entitled to deduct the undiscounted amount.  *Id.* at 73-74.

*Consolidated Edison* demonstrates the necessity of analyzing offsetting obligations separately.  The Second Circuit separately considered (1) whether the discount was taxable

---

[14] Netting two obligations that are part of a set off *may* yield the same ultimate tax consequence as analyzing each separately.  *See, e.g., Watervliet Paper Co. v. Comm'r*, 16 B.T.A. 604 (1929).  However, this will not be the case if the two payments differ, for example, in terms of character, timing, or taxability.  For this reason, a sound tax analysis must consider each side of offsetting obligations separately, as discussed in this section.

[15] In the instant case, the federally-provided Alcohol Credit is not income for federal income tax purposes (whether claimed in cash, as a refundable income tax credit, or as a credit against the Fuel Excise Tax). As discussed below (*infra* at p. 23 & n.23), when Congress intends for a federal tax credit to be included in income, it does so explicitly through statute.

income, and (2) the amount of property tax that the taxpayer could deduct from federal gross income. *Id.* The Second Circuit did not combine the analysis, which would have incorrectly resulted in a deduction from gross income for the "net" state property tax, reduced by the discount.

In this case, the offsetting payments arise from two distinct statutory provisions in different sections of the Code—one provides a benefit to blenders (the Alcohol Credit) and the other imposes an obligation on the operators of refineries and terminals (the Fuel Excise Tax).[16] The benefit and obligation result from separate and independent activities. A blender may be entitled to the blending subsidy but owe no Fuel Excise Tax. Likewise, a gasoline producer may be liable for Fuel Excise Tax but engage in no blending activities. EMOC engaged in both activities, but that does not change their separateness. EMOC's blending activities gave rise to the Alcohol Credit, and its removal of taxable fuel (*e.g.* gasoline) from its terminals gave rise to Fuel Excise Tax liability.

Further, EMOC's Fuel Excise Tax is fixed by its removal activities under section 4081(a). The impact on EMOC's federal income taxes is the same regardless of how EMOC pays its Fuel Excise Tax–with cash, Alcohol Credits, or some other means.[17] The means a taxpayer uses to pay or satisfy a liability is irrelevant to the determination of that liability and the tax deduction resulting from the satisfaction of that liability.

EMOC's use of the Alcohol Credit as a payment in satisfaction of the Fuel Excise Tax is further supported by the structure of Form 720, which is used to report both the Fuel Excise Tax

---

[16] Indeed, these different statutory provisions are in located in different subtitles of the Code. Section 4081 is located in Subtitle D, Miscellaneous Excise Taxes, while section 6426 is located in Subtitle F, Procedure and Administration. This further demonstrates the provisions' separateness and independence.

[17] On several of the Forms 720 for 2008 and 2009, EMOC satisfied a portion of its Fuel Excise Tax with an overpayment carried forward from the previous quarter's Form 720.

and any Alcohol Credit.  A blank Form 720 for 2009 is attached as Plaintiff's Ex. 2 (Appx-005).

The form identifies the "total tax" on Line 3 of Part III, which is a fixed amount that includes the

Fuel Excise Tax.  The Alcohol Credit is not taken into account in determining this "total tax" on

Line 3.  Instead, the Alcohol Credit is claimed separately on schedule C, and the sum of all

credits claimed on schedule C is included on Line 4 of Part III.  Lines 5 and 6 of Part III report

the amount of any deposits made by the taxpayer in the particular quarter (Line 5) and any

overpayments carried forward from a prior quarter (Line 6).  These credits, deposits, and carried-

forward overpayments are added together (Line 9), and that sum is then subtracted from the

"total tax" to determine the balance due or overpayment.  Thus, on Form 720, the Alcohol Credit

is treated as payment of the Fuel Excise Tax, just like cash or application of a refund due from a

prior period.  Further, the Alcohol Credit is automatically applied not only against a taxpayer's

Fuel Excise Tax, but also against *all* excise taxes encompassed in the "total tax" figure,

underscoring the Alcohol Credit as the functional equivalent of cash.[18]  As noted above (*supra* at

pp. 12-13), the Fuel Excise Tax (unaffected by the Alcohol Credit) that a taxpayer reports in Part

I of Form 720 is the same fixed amount imposed by section 4081 and "received" by the Highway

Trust Fund under section 9503(b).

### C.    Treating the Alcohol Credit as a reduction of EMOC's Fuel Excise Tax creates inequitable and arbitrary results

While a blender may exclude from income any Alcohol Credits received as a cash

payment under section 6427(e), the government's position is that a blender that instead receives

the Alcohol Credit as a "credit against" its Fuel Excise Tax must effectively include the subsidy

in income through a reduction to its COGS.  In essence, the government presses a "bifurcation"

---

[18] Many excise taxes besides the Fuel Excise Tax are reported on Form 720, including environmental taxes, communications and transportation taxes, and a wide variety of fuel taxes imposed by provisions other than section 4081(a).

approach, where a blender's income tax treatment for the same federal subsidy (the Alcohol Credit) depends on whether and to what extent the blender uses that subsidy as a credit against its Fuel Excise Tax or instead receives it as cash. This approach is illogical, and leads to inequitable and arbitrary results.

An example illustrates the disparity created by the government's approach. Assume that Blender A and Blender B engage in blending activity that entitles each to a $100 subsidy, but Blender A has no Fuel Excise Tax while Blender B has $500 of Fuel Excise Tax. Under the government's approach, Blender A can receive its subsidy through a tax-free cash payment. Thus, Blender A receives a full $100 economic benefit for its blending activities. Blender B, on the other hand, must use its subsidy as a credit against its Fuel Excise Tax, which reduces the amount of Fuel Excise Tax included in COGS. Blender B then must pay another $35 of income tax that it otherwise would not have incurred, reducing the economic benefit of its blending activities from $100 to $65. *See supra* at p. 6-7. The table below illustrates this disparity:

| Example of Government's Bifurcation Approach | | |
|---|---|---|
| | **Blender A** | **Blender B** |
| Fuel Excise Tax | - | $500 |
| Alcohol Credit | $100 | $100 |
| Alcohol Credit Payment Method | Cash | Excise Tax Credit |
| | | |
| **Effectively Taxed or Tax-free?** | **Tax-free** | **Taxed** |
| **Alcohol Credit Value Received** | **$100** | **$65** |

Statutes should be interpreted to avoid such an inequitable, arbitrary, and absurd result unless there is clear statutory language indicating that Congress intended those results. *Cf. United States v. Serfass,* 684 F.3d 548, 551 (5th Cir. 2012) ("When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result."); *United States v. Solis-Campozano*, 312 F.3d 164, 166 (5th Cir. 2002) ("No authority

need be cited for the rule that such plain meaning controls, unless it leads to an absurd result.");

*Free v. Abbot Labs.*, 51 F.3d 524, 529 (5th Cir. 1995) ("[T]he statute is the sole repository of

congressional intent where the statute is clear and does not demand an absurd result.").

When Congress has wanted a federal tax credit to reduce a deduction, it has done so

explicitly.  For example, former section 280D did just this for a now-repealed federal excise tax

credit.[19]  Under current law, section 280C reduces various income tax deductions where federal

tax credits are allowable under other sections of the Code.[20]  Significantly, in the AJCA,

Congress added a provision to section 280C that reduces taxpayers' deductions for expenses

incurred in producing diesel fuel to the extent they claimed the tax credit for the production of

low-sulfur diesel fuel under section 45H.[21]  The amendment of section 280C in the same

legislation that enacted the Alcohol Credit shows that Congress knew it could have required

---

[19] Former section 280D provided that "[n]o deduction shall be allowed for that portion of the tax imposed by section 4986 for which a credit or refund is allowable under section 6429."  Former section 4986 was the windfall profits excise tax, an excise tax imposed on producers of crude oil.  *See* Crude Oil Windfall Profit Tax Act of 1980, Pub. L. No. 96-223, 94 Stat. 229, 230 (1980).  The windfall profits excise tax paid was generally deductible under section 164(a) or includable in COGS.  Former section 6429 provided a refundable credit for certain royalty owners against this tax, similar to the Alcohol Credit.

[20] Section 280C contains a lengthy list of situations where specified deductions are reduced when certain credits are claimed, including reductions of deductions on account of expenses that generated certain employment tax credits, qualified clinical testing tax credits, research tax credits, and many others.  Other sections of the Code contain restrictions for different federal tax credits.  *See*, *e.g.*, I.R.C. § 163(g) (no interest deduction on indebtedness with respect to which a mortgage credit certificate has been issued when credit has been received under I.R.C. § 25); I.R.C. § 25A(g)(5) (no Hope or Lifetime Learning Credit allowed when a deduction is allowed under any other provision of Chapter 1); I.R.C. § 30B(h)(5) (deduction reduced for any alternative motor vehicle credit received under I.R.C. § 30B); I.R.C. § 44(d)(7) (deduction reduced for Disabled Access Credit received under I.R.C. § 44); I.R.C. § 45E(e)(2) (deduction reduced for Small Employer Pension Plan Startup Costs Credit); I.R.C. § 275(a)(4) (no deduction for foreign taxes paid when the taxpayer receives a foreign tax credit under I.R.C. § 901).

[21] *See* AJCA, Pub. L. No. 108-357, § 339(c), 118 Stat. 1418, 1484 (2004) (adding I.R.C. § 280C(d) providing that "[n]o deduction shall be allowed for that portion of the expenses otherwise allowable as a deduction for the taxable year which is equal to the amount of the credit determined for the taxable year under section 45H(a).").  Here, "deduction" functions identically to COGS, because a cost generally cannot be included in COGS unless it is otherwise deductible.  I.R.C. § 263A(a)(2) (flush language) ("Any cost which (but for this subsection) could not be taken into account in computing taxable income for any taxable year shall not be treated as a cost described in this paragraph.").

taxpayers to treat the Alcohol Credit as reducing their tax deduction for the Fuel Excise Tax. Congress's decision *not* to reference the Alcohol Credit in section 280C (or add a similar reference elsewhere) is further evidence that it did not intend that result.  *See Whitfield v. United States*, 543 U.S. 209, 216 (2005) ("Congress ha[d] included an express overt-act requirement in at least 22 other current conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so."); *Drake v. Panama Canal Comm'n*, 907 F.2d 532, 535 (5th Cir. 1990) ("Congress' failure to furnish a mechanism for judicial review in the case of § 3761(a), while providing a 'detailed mechanism for judicial consideration' of §§ 3771(a) and 3772 claims, is a strong indication that the statutory scheme of the PCA [Panama Canal Act] precludes review of Appellants' claims.").

Likewise, when Congress has wanted to include a federal tax credit in income, it has also done so explicitly.[22]  Indeed, income tax credits claimed under section 40(a) for alcohol blending are expressly includible in income under section 87, as are many other federal tax credits under other provisions of the Code.[23]  But Congress did not enact any similar provisions concerning the income tax treatment of the Alcohol Credit when claimed as either a credit in payment of the Fuel Excise Tax or as a cash payment.  The statutory landscape thus refutes the government's assertion that Congress intended to make the Alcohol Credit effectively taxable (through the reduction of COGS).

---

[22] The IRS agrees.  In I.R.S. Chief Counsel Advice 201342010 (Aug. 29, 2013) it stated: "[I]n the absence of a specific statutory provision or judicial doctrine requiring inclusion [in income], federal tax credits are not gross income for purposes of determining a taxpayer's federal income tax liability."

[23] *See, e.g.*, I.R.C. § 50(d)(5) (gross income includes historic rehabilitation tax credits claimed by lessees); I.R.C. § 54(g) (gross income includes credits for holders of clean renewable energy bonds); I.R.C. § 54A(f) (gross income includes credits on certain qualified tax credit bonds); I.R.C. § 54AA(f)(1) (gross income includes credits on Build America Bonds); I.R.C. § 87 (gross income includes alcohol fuel mixture credits and biodiesel credits claimed as *income tax credits* under section 40 and 40A); I.R.C. § 1397E(j) (gross income includes qualified zone academy bond credits); I.R.C. § 1400N(1)(6) (gross income includes Gulf tax credit bonds).

If the government were correct that COGS must be reduced to the extent a blender uses its Alcohol Credit to satisfy its Fuel Excise Tax, a blender could structure its operations to ensure that the subsidy is received as a tax-free cash payment.  For example, a taxpayer filing a consolidated income tax return could have Subsidiary A manufacture gasoline, blend that gasoline with alcohol, and sell the gasoline-alcohol mixture to Subsidiary B without removing it from the terminal.  In that circumstance, Subsidiary A would be entitled to the Alcohol Credit for its blending activities, but would not incur the Fuel Excise Tax if Subsidiary B was properly registered.[24]  When Subsidiary B removed the mixture from the terminal or sold it to an unregistered party, it would incur the Fuel Excise Tax.  Subsidiary A would receive the Alcohol Credit as a tax-free cash payment under section 6427(e), while Subsidiary B would incur the Fuel Excise Tax, with no offset for the Alcohol Credit, and include that amount in its COGS.  In this hypothetical case, the consolidated income tax return would exclude from income the cash payment received by Subsidiary A and reflect the Fuel Excise Tax incurred by Subsidiary B as COGS.[25]  By contrast, if one entity both removed the fuel from the terminal and conducted the alcohol blending (as is the case here), the government's position is that the entity would have to reduce its Fuel Excise Tax taken as a COGS deduction by the amount of the Alcohol Credit.  The different tax treatment yielded by these two corporate structures demonstrates that the government's interpretation of the statute would produce absurd, inequitable, and arbitrary results.

---

[24] The Fuel Excise Tax is imposed only on taxable fuel that is (i) removed from a refinery; (ii) removed from a terminal; (iii) imported into the United States for consumption, use, or warehousing; or (iv) sold to a person who is not registered with the Treasury under section 4101.  Section 4081(a)(1)(A).

[25] Subsidiary A could also elect to have the its parent receive the benefit as a tax-free, refundable income tax credit under section 34(a)(3).

D.    *Sunoco* **was wrongly decided**

The Court of Federal Claims decision in *Sunoco v. United States* addressed the same legal issue presented here: whether the Alcohol Credit reduces or satisfies a taxpayer's Fuel Excise Tax for purposes of computing its federal income tax.  129 Fed. Cl. 322 (Ct. Cl. Nov. 22, 2016).  *Sunoco* adopted the government's "bifurcation" approach, holding that the Alcohol Credit must be "treated . . . as a reduction of the taxpayer's excise tax liability" with any cash payment under § 6427(e) "treated as [a] tax-free payment."  *Id.*  The case is currently being appealed to the Federal Circuit.  *See* Appeal Docketed, *Sunoco v. United States*, No. 17-1402 (Fed. Cir. Dec. 22, 2016), ECF No. 1.

*Sunoco* incorrectly concluded that the use of the subsidy as an excise tax credit "means [that] the taxpayer itself does not pay the full amount of its excise tax liability; rather it pays excise taxes that are reduced by the amount of the [Alcohol] Credit."  *Sunoco*, 129 Fed. Cl. at 327.  As discussed previously, the method of payment (*e.g.*, cash or credit) does not change the amount of Fuel Excise Tax because that amount is fixed by section 4081(a).  In reaching its conclusion, *Sunoco* brushed aside the significance of the statutory structure and legislative history that supported Sunoco's position.

*Sunoco* acknowledged that Congress intended the statutory changes in the AJCA to replenish the Highway Trust Fund.  But the court struggled to reconcile full funding of the Highway Trust Fund mandated by section 9503(b) with the "practical effect" that the taxpayer remits in cash only the Fuel Excise Tax less the Alcohol Credit.  *Id.*  Even though the court recognized that "Congress found it appropriate to replenish the Fund by imposing, on paper, the full excise tax rates on fuel blenders," it nonetheless asserted that the "reality" was that "the full tax rates were *not* imposed" because "the Government itself pays part of [the] fuel blenders' excise taxes from the Treasury General Fund in the form of the Mixture Credit."  *Id.* at 327-28.

24

(emphasis in original). *Sunoco* described the new statutory structure as creating an "accounting backdoor," enabling an "accounting sleight-of-hand," and engaging in "legal fiction." *Id*. at 328.

The words Congress puts "on paper" are not legal fiction but law, and it is especially important that effect be given to Congress's specific words in the "highly reticulated Internal Revenue Code, which uses language . . . with nearly mathematical precision." *Summa Holdings, Inc. v. Comm'r*, 848 F.3d 779, 789 (6th Cir. 2017).  The words Congress chose in the AJCA, as explained above (*supra* at pp. 8-14), impose the Fuel Excise Tax as determined under section 4081(a) unreduced by any Alcohol Credits.  That Fuel Excise Tax can be satisfied by blenders like EMOC in part through use of the Alcohol Credit and in part with cash.  Recognizing the Alcohol Credit as a payment of (rather than a reduction to) a taxpayer's Fuel Excise Tax gives effect to the statutory text.  Moreover, only this view is consistent with Congress's explicit intent to both encourage blending activities and fully fund the Highway Trust Fund.

In reaching its conclusion, *Sunoco* stated that the "legislative history favors the government's position."  129 Fed. Cl. at 330.  But the *only* item of "legislative history" that it found to favor the government's view was the report of the Staff of the Joint Committee on Taxation ("JCT Staff Estimate").  That report stated, without analysis, that replacing reduced excise tax rates with the Alcohol Credit would produce "No Revenue Effect."  *Id.* (citing Staff of Joint Comm. on Taxation, *Estimated Budget Effects of the Conference Agreement for H.R. 5250, the "American Jobs Creation Act of 2004"* (JCX-69-04) at Provision III.A.1 (Comm. Print 2004)).  This statement, the court surmised, meant that Congress somehow did not intend to change the rule that the Alcohol Credit reduces the amount of the Fuel Excise Tax—even as Congress was eliminating the statutory language that prescribed that rule.  *Id*. at 329-30.

*Sunoco* mistakenly relied on the JCT Staff Estimate to determine Congress's intent.  The Tax Court has rejected the use of unexplained revenue estimates prepared by the JCT staff to interpret statutory provisions.  *See, e.g., Fed. Home Loan Mortg. Corp. v. Comm'r*, 121 T.C. 129, 145-46 (2003) (JCT revenue estimates were not "particularly relevant to the question before us, which involves the interpretation of a particular statute[, and] it would be inappropriate to speculate on the factors that were considered in making such 'estimates'.") (footnote reference omitted); *Fort Howard Corp. & Subsidiaries  v. Comm'r*, 103 T.C. 345, 364 (1994) ("We place little faith in the interpretative value of these [revenue] estimates. . . .  The legislative history provides no explanation for the numbers reached, nor does it state the assumptions on which they are based.") (footnote reference omitted).  Because the JCT Staff Estimate provides no basis for its findings, *Sunoco*'s reliance on it to determine Congress's intent was misplaced, especially considering the more meaningful legislative history that was available, such as the Conference Report that described the Alcohol Credit claimed under section 6426(a) "as a payment of the taxpayer's [Fuel Excise Tax] liability received at the time of the taxable event."  H.R. REP. NO. 108-755, at 304 (2004) (Conf. Rep.).  *See supra* at p. 14-15.

Sunoco also mistakenly relied on two cases it viewed as analogous.  The court first referenced *Affiliated Foods, Inc. v. Commissioner* for the proposition that a "manufacturer's rebate 'that a taxpayer receives on goods that it purchased for resale is not, itself, an item of gross income but, instead, is treated as a reduction in the cost of goods sold.'"  129 Fed. Cl. at 330 (citing 128 T.C. 62, 80 (2007)).  *Affiliated Foods* represents a case where multiple events were integrated together to be a single transaction because the facts and circumstances demonstrated a sufficient relationship between the events to support the integration.  A manufacturers' rebate is a return of an amount previously charged on a sale of goods.  It

26

therefore reduces COGS for previously purchased goods if, based on all the facts and circumstances of the original purchase, the rebate is so tied to the original purchase that it is properly viewed as a reduction to the original purchase price.[26]  The court in *Affiliated Foods* found that the rebate was essentially a reduction in the cost of initial purchase so that the reduced amount was, in fact, the actual cost of the item.

As discussed above (*supra* at p. 18-19), the linkage required by *Affiliated Foods* to integrate two amounts into a single item is absent here.  The Alcohol Credit is based on the number of gallons of alcohol blended with gasoline or other taxable fuel.  The number of gallons of taxable fuel removed or sold fixes the Fuel Excise Tax under section 4081.  Whether and how much alcohol a taxpayer has blended is irrelevant to that determination.[27]  EMOC's blending activities did not reduce the amount of Fuel Excise Tax it incurred and paid under section 4081, and therefore did not reduce the amount of Fuel Excise Tax included in its COGS.  The mere use of the Alcohol Credit as a payment of the Fuel Excise Tax is not enough to integrate the two transactions.

*Sunoco* also referenced *Maines v. Commissioner* as analogous and supporting the government's "bifurcation" approach.  129 Fed. Cl. at 329-31 (citing 144 T.C. 123 (2015)).  But *Maines* is inapposite.  *Maines* analyzed whether certain New York State tax credits that exceeded the taxpayer's New York State tax liability and were thus paid in cash were includable in gross

---

[26] In *Affiliated Foods, Inc. v. Commissioner*, the Tax Court stated that "*[W]here a payment is made from a seller to a purchaser, and the purpose and intent of the parties is to reach an agreed upon net selling price, the payment is properly viewed as an adjustment to the purchase price that reduces gross sales.*" 128 T.C. 62, 82 (2007) (quoting Rev. Rul. 2005-28, 2005-1 C.B. 997, 997 (May 9, 2005)) (emphasis in *Affiliated Foods* opinion).

[27] Taxable fuel includes the alcohol component of any blended fuel, so blending will increase the Fuel Excise Tax under section 4081 to the extent that the alcohol increases the volume of the resulting mixture. However, the Fuel Excise Tax under section 4081 is the same for a gallon of unblended gasoline as it is for a gallon of blended fuel, regardless of the blended fuel's alcohol content.

income (and thus taxable) for federal income tax purposes.  The Tax Court held that, even though New York State law labeled the cash payments as "overpayments" of New York State tax, that label was not controlling for federal income tax purposes and the tax credits were thus includable in gross income.

There are two critical differences between the credits at issue in *Maines* and the Alcohol Credit at issue for ExxonMobil and in *Sunoco*.  First, state tax credits differ from federal tax credits.  Federal tax credits are excluded from gross income unless Congress explicitly says otherwise, while, as *Maines* held, state tax credits are not similarly excluded.  144 T.C. at 135-36.

Second, there was no "bifurcation" in *Maines* in the way that the *Sunoco* opinion uses the term.  *Sunoco* "bifurcates" the income tax treatment depending on how a taxpayer uses the Alcohol Credit: the Alcohol Credit used to satisfy the Fuel Excise Tax was effectively taxable (through a reduction to the Fuel Excise Tax included in COGS), but the Alcohol Credit received as a cash payment would be tax-free.  In *Maines*, the portion of the credit the taxpayer used to pay its New York State taxes and the excess portion of the credit received as a cash payment were both treated as taxable, although only the cash payment was the subject of the decision.[28] *Maines* therefore did not produce the absurd result that the *Sunoco* court described as a "bifurcation":  that a credit paid in cash is not taxable, but the same credit applied against an independently calculated tax is taxable.  Further, *Maines* analyzed only whether credits paid in

---

[28] The Tax Court noted that "[t]he Maineses stipulated that they took no deduction on their federal income-tax returns for the years at issue for state income tax paid in the preceding year."  *Maines v. Comm'r,* 144 T.C. 123, 131 (2015).  The taxpayers reduced their state and local tax deduction under section 164 for any credits claimed against their New York State taxes.  This stipulation has no bearing on the issue presented in this case however, because (1) the state credits and the underlying state tax liabilities were offered and imposed, respectively, by a state not the federal government and (2) the provision providing the federal tax deduction, section 164, is not at issue in this case.

cash are income, while the issue in *Sunoco* (and here) is whether a taxpayer is entitled to deduct the tax against which it claimed credits.  As discussed above, income inclusions and deductions must be analyzed separately.

      *Sunoco* also erred in concluding that "[t]here was no reason for Congress to include the [Alcohol] Credit in § 87 expressly as gross income because any reduction in a taxpayer's excise tax liability necessarily results in an increase in gross income."  129 Fed. Cl. at 331.  This begs the question.  Of course, a reduction in Fuel Excise Tax increases taxable income.  As discussed above, however, the Alcohol Credit does not reduce the Fuel Excise Tax when used as a credit against that tax.  Moreover, if Congress intended for taxpayers to reduce their COGS deduction for the Fuel Excise Tax by the Alcohol Credit, it would have amended section 280C or added a similar provision.  *See supra* at p. 21 & n.20.  Because Congress did not do so, the Alcohol Credit under section 6426(a) should not reduce the amount of Fuel Excise Tax included in COGS or otherwise deducted.

      *Sunoco* mistakenly dismissed the AJCA's amendment of section 280C to include a tax credit other than the Alcohol Credit by noting that section 280C is only for income tax credits. 129 Fed. Cl. at 331 n.6.  That observation is beside the point.  There is no inherent reason why only income tax credits, not excise tax credits, could have the effect of reducing a deduction.  It depends on what Congress wants, and indeed, as previously noted, former section 280D required taxpayers to reduce a deductible excise tax by the amount of an excise tax credit claimed against that tax.  *See supra* at p. 21 & n.19.  Congress could have done the same for the Alcohol Credit, either in section 280C or in another section if it wanted to restrict section 280C to income tax credits.  What is clear is that Congress did not do so for the Fuel Excise Tax satisfied by the Alcohol Credit.

*Sunoco* is wrongly decided, and this Court should not follow it.

V.    **CONCLUSION**

For the foregoing reasons, ExxonMobil's motion for partial summary judgment should be granted.  ExxonMobil is therefore entitled to federal income tax refunds in the amounts of $158,644,432 and $178,470,990, plus statutory interest, for its respective 2008 and 2009 tax years.

Dated: December 8, 2017                    Respectfully submitted,

                                           MILLER & CHEVALIER, CHARTERED

                                           By: /s/ KEVIN L. KENWORTHY
                                                 Kevin L. Kenworthy
                                                 D.C. Bar No. 414887
                                                 kkenworthy@milchev.com

                                                 George A. Hani
                                                 D.C. Bar No. 451945
                                                 ghani@milchev.com

                                                 Andrew L. Howlett
                                                 D.C. Bar No. 1010208
                                                 ahowlett@milchev.com


                                           900 16th Street NW
                                           Washington, DC 20006
                                           (202) 626-5800
                                           FAX (202) 626-5801

                                           THOMPSON & KNIGHT LLP

                                                 Emily A. Parker
                                                 Texas Bar No. 15482500
                                                 emily.parker@tklaw.com

                                                 Mary A. McNulty
                                                 Texas Bar No. 13839680
                                                 mary.mcnulty@tklaw.com

                                                 William M. Katz, Jr.
                                                 Texas Bar No. 00791003
                                                 william.katz@tklaw.com

                                           1722 Routh Street, Suite 1500
                                           Dallas, TX 75201
                                           (214) 969-1700
                                           FAX (214) 969-1751

                                           **ATTORNEYS FOR PLAINTIFF**
                                           **EXXON MOBIL CORPORATION**

31

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record by ECF on the 8th day of December, 2017.

By: /s/ KEVIN L. KENWORTHY
Kevin L. Kenworthy