**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| EXXON MOBIL CORPORATION, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 3:16-cv-2921-N |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**PLAINTIFF EXXON MOBIL CORPORATION'S RESPONSE TO DEFENDANT'S
MOTION AND REPLY IN SUPPORT OF EXXON MOBIL CORPORATION'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON CHANGE IN METHOD OF
ACCOUNTING**

Emily A. Parker
Texas Bar No. 15482500
emily.parker@tklaw.com
Mary A. McNulty
Texas Bar No. 13839680
mary.mcnulty@tklaw.com
William M. Katz, Jr.
Texas Bar No. 00791003
william.katz@tklaw.com
J. Meghan Nylin
Texas Bar No. 24070083
meghan.nylin@tklaw.com
Leonora S. Meyercord
Texas Bar No. 24074711
lee.meyercord@tklaw.com
Dina McKenney
Texas Bar No. 24092809
Dina.mckenney@tklaw.com

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Fax)

Kevin L. Kenworthy
D.C. Bar No. 414887
kkenworthy@milchev.com
George A. Hani
D.C. Bar No. 451945
ghani@milchev.com
Andrew L. Howlett
D.C. Bar No. 1010208
ahowlett@milchev.com

MILLER & CHEVALIER, CHARTERED
900 16th Street, NW
Washington, DC 20006
(202) 626-5800
(202) 626-5801 (Fax)

TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENTS AND AUTHORITIES..............................................................2

     A.   ExxonMobil's treatment of the transactions as mineral leases on its
          original returns did not adopt a method of accounting. ...........................2

          1.   Mineral lease treatment is not a method of accounting. ............................2

          2.   A mineral lease is not a "lease" for federal income tax
               purposes. ..........................................................................................4

     B.   ExxonMobil's reporting is irrelevant because the issue is whether –
          not when.....................................................................................................5

     C.   ExxonMobil's lifetime taxable income is irrelevant.................................8

          1.   Defining change in method of accounting based on lifetime
               taxable income would treat taxpayers inconsistently.................................10

          2.   ExxonMobil's lifetime taxable income is not the same
               between mineral lease treatment and purchase treatment.........................12

     D.   Defendant's change in method of accounting defense cannot apply
          to the RL3 and QG2 transactions because they were treated
          improperly as mineral leases for only one year. ....................................14

III. CONCLUSION..................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Burnet v. Harmel*,
  287 U.S. 103 (1932)..................................................................................................... 3, 7

*Cargill v. United States*,
  91 F. Supp. 2d 1293 (D. Minn. 2000) ...................................................................... 5

*Comm'r v. Brookshire Bros. Holding, Inc.*,
  320 F.3d 507 (5th Cir. 2003) ..................................................................................... 9

*Convergent Tech., Inc. v. Comm'r*,
  No. 29655-91, 1995 WL 422677 (T.C. Jul. 19, 1995).................................... 5, 6, 10

*Fla. Progress Corp. v. United States*,
  156 F. Supp. 2d 1265 (M.D. Fla. 1998), *aff'd per curiam on other grounds*, 264 F.3d
  1313 (11th Cir. 2001)................................................................................................... 10

*Foley v. Comm'r*,
  56 T.C. 765, 769-70 (1971), *acq.* 1972-2 C.B. 1, 1972 WL 124338....................... 15

*Graff Chevrolet Co. v. Campbell*,
  343 F.2d 568 (5th Cir. 1965) ..................................................................................... 4

*Knight-Ridder Newspapers, Inc. v. United States*,
  743 F.2d 781 (11th Cir. 1984) ................................................................................... 2

*Primo Pants Co. v. Comm'r*,
  78 T.C. 705 (1982)....................................................................................................... 10

*Saline Sewer Co. v. Comm'r*,
  T.C. Memo. 1992-236, 1992 WL 79079 (1992)...................................................... 10

*Shamrock Oil & Gas Corp. v. Comm'r*,
  35 T.C. 979, 1040 (1961), *aff'd,* 346 F.2d 377 (5th Cir. 1965) ............................. 3, 7

*Silver Queen Motel v. Comm'r*,
  55 T.C. 1101, 1105 (1971), *acq.* 1972-2 C.B. 1, 1972 WL 124365 ....................... 15

*Tate & Lyle, Inc. v. Comm'r*,
  103 T.C. 656 (1994), *rev'd on other grounds*, 87 F.3d 99 (3d Cir. 1996)................ 2

*Thomas v. Perkins*,
301 U.S. 655 (1937), *aff'g* 86 F.2d 954 (5th Cir. 1936) ........................................ 3, 7

*Thrasys, Inc. v. Comm'r*,
T.C. Memo 2018-199, 2018 WL 6431770 (2018) ................................................. 15

*W.A. Holt Co. v. Comm'r*,
368 F.2d 311 (5th Cir. 1966) ............................................................................... 3

*Wayne Bolt & Nut Co. v. Comm'r*,
93 T.C. 500 (1989) .............................................................................................. 10

*Witte v. Comm'r*,
513 F.2d 391 (D.C. Cir. 1975) ............................................................................. 8

## Statutes

26 U.S.C. § 61 ........................................................................................................ 6, 8

26 U.S.C. § 61(a) ................................................................................................... 7

26 U.S.C. § 63 ........................................................................................................ 10

26 U.S.C. § 63(a) ................................................................................................... 9

26 U.S.C. § 199 ...................................................................................................... 13

26 U.S.C. § 481 ...................................................................................................... 4, 9

26 U.S.C. § 611 ...................................................................................................... 13

26 U.S.C. § 613 ...................................................................................................... 11

26 U.S.C. §§ 613A(a), (d)(2) ................................................................................ 11

26 U.S.C. § 861 ...................................................................................................... 13

26 U.S.C. § 882 ...................................................................................................... 12

26 U.S.C. § 882(c)(1)(A) ....................................................................................... 11

## Regulations

26 C.F.R. §§ 1.481-1(c)(2), (3) ............................................................................ 4

26 C.F.R. § 1.446-1(a)(1) ........................................................................................ 16

26 C.F.R. § 1.446-1(e)(2)(ii)(a) ......................................................................... 8, 9, 15

26 C.F.R. § 1.446-1(e)(2)(ii)(b) ................................................................................ 4

26 C.F.R. § 1.446-1(e)(2)(ii)(d)(3)(i) ........................................................................ 9

26 C.F.R. § 1.611-2(a)(1) ........................................................................................ 13

26 C.F.R. § 1.882-5 ................................................................................................. 11

**Other Authorities**

Gen. Couns. Mem. 36234, 1975 WL 37615 (1975) ................................................ 15

Rev. Rul. 76-215, 1976-1 C.B. 194, 1976 WL 36338 ............................................. 3

Rev. Proc. 92-20, 1992-1 C.B. 685, § 2.01, 1992 WL 725613 ............................... 15

Rev. Proc. 97-27, 1997-1 C.B. 680, § 2.01(2), 1997 WL 233964 ............................ 15

Rev. Proc. 2002-18, 2002-1 C.B. 678, § 2.01(2), 2002 WL 393159 .................... 15, 16

Rev. Proc. 2015-13, 2015-5 I.R.B. 419, § 2.01(2), 2015 WL 232172 ....................... 15

U.S. Department of the Treasury, Policy Statement on the Tax Regulatory Process
     (Mar. 5, 2019) .................................................................................................... 16

## I.      INTRODUCTION

Defendant argues that ExxonMobil's reporting of the transactions as mineral leases on its original tax returns adopted a method of accounting.  (Def.'s Mot. [Dkt. 158] at 1–3).  However, as explained in ExxonMobil's motion, mineral lease treatment is *not* a method of accounting.  (ExxonMobil's Mot. [Dkt. 126] 7 – 13).   Under mineral lease treatment, ExxonMobil would include in income only its share of the operating income from the leased mineral and would not include in its income royalties that belong to the lessor.   Royalties are the lessor's share of production from the lessor's ownership of the mineral in place.   Under purchase treatment, ExxonMobil includes in its income *all* income from the property purchased from the State of Qatar ("SOQ") and Petroliam Nasional Berhad ("Petronas"),[1] rather than only the lessee's share of income under a mineral lease.  Because under mineral lease treatment, the royalty is never an item included in ExxonMobil's income, ExxonMobil did not adopt and could not have adopted a method of accounting for the royalty on its original returns.  Therefore, ExxonMobil's treatment of the transactions as purchases on its amended 2006 – 2009 returns was not a change in method of accounting, and ExxonMobil is entitled to partial summary judgment on the change in method of accounting issue.

Defendant's laborious discussion of ExxonMobil's reporting is irrelevant.  Because the issue is whether an item is ever includible in ExxonMobil's income, there is no method of accounting or change in method of accounting issue.   Further, Defendant's lifetime-taxable-income argument, which asserts that the correction to purchase treatment is a change in method of accounting merely because ExxonMobil's lifetime taxable income allegedly remains the same, is wrong for at least four reasons.   First, there is no change in method of accounting because

---

[1] Petronas is the Malaysian national oil and gas company.

ExxonMobil did not adopt a method of accounting when it treated the transactions as mineral leases.  Second, Defendant's lifetime-taxable-income argument directly conflicts with the Treasury Regulations.  Third, lifetime taxable income should not determine whether a correction from mineral lease to purchase treatment is a change in method of accounting because it would have different results depending on the taxpayer.  Fourth, ExxonMobil's lifetime taxable income is not the same between mineral lease and purchase treatment, so even under Defendant's erroneous lifetime-taxable-income argument, ExxonMobil's motion for summary judgment must be granted.

For all these reasons and those given in ExxonMobil's motion for summary judgment, the Court should grant ExxonMobil's motion and deny Defendant's cross-motion.

## II.      ARGUMENTS AND AUTHORITIES

### A.  ExxonMobil's treatment of the transactions as mineral leases on its original returns did not adopt a method of accounting.

#### 1.      Mineral lease treatment is not a method of accounting.

Defendant argues that ExxonMobil's reporting of the transactions as mineral leases on its original tax returns adopted a method of accounting.  (Def.'s Mot. [Dkt. 158] at 1–3).  This is incorrect because mineral lease treatment is *not* a method of accounting.  (ExxonMobil's Mot. [Dkt. 125] at 7–14).  A method of accounting determines when, not whether, an item is includible in income or allowable as a deduction.  *Tate & Lyle, Inc. v. Comm'r*, 103 T.C. 656, 668–69 (1994) (a "method of accounting for income only determines *when an item is includable in income*" and "never comes into play if the item is *excluded from gross income*" (emphasis added)), *rev'd on other grounds*, 87 F.3d 99 (3d Cir. 1996); *Knight-Ridder Newspapers, Inc. v. United States*, 743 F.2d 781, 798 (11th Cir. 1984) (finding that a rebate reserve was a method of accounting because it "did not determine whether or not a rebate would be deducted, but *when* that deduction would

2

occur"); *W.A. Holt Co. v. Comm'r*, 368 F.2d 311, 312 (5th Cir. 1966) (whether bad debts are ever deductible is not a method of accounting).

In a mineral lease, the royalty is the lessor's share of production from the lessor's ownership of the mineral in place. *Shamrock Oil & Gas Corp. v. Comm'r*, 35 T.C. 979, 1040 (1961) (the lessor retains a royalty "in any production from the property which follows its exploitation"), *aff'd,* 346 F.2d 377 (5th Cir. 1965); *Thomas v. Perkins*, 301 U.S. 655, 661 (1937) (in a mineral lease, "the oil in the ground [is] a reservoir of capital investment of the several parties, all of whom [are] entitled to share in the oil produced"), *aff'g* 86 F.2d 954 (5th Cir. 1936). The royalty is not the lessee's income as a matter of law. (ExxonMobil's Mot. [Dkt. 126] at 3 – 4); *Burnet v. Harmel*, 287 U.S. 103, 112 (1932) (royalties "are income of the lessor"); Rev. Rul. 76-215, 1976-1 C.B. 194, 1976 WL 36338 (stating that lessor's "share of production is a royalty and is, therefore, excluded from [the lessee's] income," and that this "share of production was always the property of [the lessor] and was not acquired from" the lessee). Because mineral lease treatment permanently excludes the royalty from the lessee's income, it does not determine timing and is not a method of accounting. Accordingly, ExxonMobil did not adopt a method of accounting on its original returns when it treated the transactions as mineral leases, and its correction to purchase treatment, where *all* income from the purchased property is the transferee's income, cannot be a change in method of accounting.[2]

Changes in method of accounting are strictly limited to situations that involve only the timing of income or deductions—a situation that is absent here. This limitation is necessary

---

[2] For purposes of responding to Defendant's motion, ExxonMobil will refer to the payments to SOQ and Petronas as "royalties," as that term is used in mineral leases. To be clear, however, ExxonMobil does not concede that any of the transactions in issue are mineral leases, and ExxonMobil's use of the term "royalties" is without prejudice to its position that the transactions are purchases.

because changes in method of accounting circumvent the statute of limitations through a section 481 adjustment, and thus allow the IRS to make adjustments for years in which the statute of limitations is closed.[3]  Accordingly, the Treasury Regulations expressly provide that a change in method of accounting is a change that involves the proper time for including an item in income or taking a deduction and does not include whether an item is included in income or deductible. 26 C.F.R. § 1.446-1(e)(2)(ii)(b).[4]  The Treasury Regulations therefore confirm that correcting an item from a deductible business expense to a nondeductible personal expense is not a change in method of accounting, nor is correcting an item from a deductible salary expense to a nondeductible dividend.  *Id*.  Similarly, correcting an item from a royalty excluded from ExxonMobil's income to an item included in ExxonMobil's income is not merely a timing issue, and thus it cannot be a change in method of accounting.

### 2.      A mineral lease is not a "lease" for federal income tax purposes.

Defendant fails to address uncontroverted law clearly establishing that royalties are not the mineral lessee's income.  Instead, Defendant conflates a mineral lease with a typical "lease" for a building or equipment by repeatedly referring to the transactions as "leases."  (Def.'s Mot. at 21 – 22).  Defendant appears to recognize the differences between a mineral lease and a lease because, in its motion for summary judgment on the purchase v. mineral lease issue, Defendant cited

---

[3] If there is a change in method of accounting, the taxpayer must make a section 481 adjustment in the year of the change.  The section 481 adjustment is the aggregate amount of additional income or deductions that the taxpayer would have reported in years prior to the year of the change, assuming that the taxpayer had used the new method of accounting in the prior years.  26 C.F.R. §§ 1.481-1(c)(2), (3).  The section 481 adjustment takes into account all prior years, without regard to whether the statute of limitations is open or closed for such years.  *Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 572 (5th Cir. 1965).  Unless otherwise stated, all "section" references herein are to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, as in effect for the applicable time.

[4] Unless otherwise indicated, all references to the Treasury Regulations are to 26 C.F.R. as amended, as in effect for the applicable time.

4

authorities addressing only mineral leases.  (Def.'s Mot. [Dkt. 153] at 15–19).  Yet, in its change in method of accounting motion, Defendant fails to cite a single authority addressing a mineral lease.  All of Defendant's "lease" authorities address a typical "lease" for federal income tax purposes.  More importantly, Defendant ignores the different tax consequences of a mineral lease and a typical lease that cause the issue in this case to be whether, not when, ExxonMobil includes an item (the royalty) in income.

A mineral lease is not a "lease" for federal income tax purposes, and the differences are stark and material to the issue here.  In a business lease of real property (or other non-mineral property), the lessee (1) is entitled only to use of the property and does not own a depreciable interest in the property; (2) includes in income all income from its use of the leased property; and (3) deducts rents paid for the property.  *Cargill v. United States*, 91 F. Supp. 2d 1293, 1295 (D. Minn. 2000) (explaining that in "return for its use of the facility," Cargill made deductible "rent payments" to the facility's owner and that this arrangement was a "lease for tax purposes").

By contrast, in a mineral lease, (1) the lessee acquires ownership of a depletable interest in the mineral in place and the lessor retains ownership of a depletable interest in the remainder of the mineral in place; (2) the royalty is the lessor's income from its ownership of the mineral in place and is therefore excluded from the lessee's income; and (3) the lessee is not entitled to any deductions for the royalty.  Thus, while a change from a "lease" to a purchase in a typical "lease" merely changes the timing of deductions by the transferee (rent v. depreciation), the change from a mineral lease to a purchase results in a permanent change in the transferee's income and deductions.

### B.  ExxonMobil's reporting is irrelevant because the issue is whether – not when.

ExxonMobil's reporting is irrelevant because the issue in this case is whether amounts are ever includible in ExxonMobil's income, not when.  For example, in *Convergent Technologies*,

5

the IRS took the position that stock warrants were not deductible, rather than amortizable over multiple years or deductible in a single year as Convergent contended. *Convergent Techs., Inc. v. Comm'r*, T.C. Memo. 1995-320, 1995 WL 422677 at *6–7 (1995). The Tax Court viewed the IRS's position as changing "the focus of this case from one of timing . . . to one of characterization of the item" as deductible or not. *Id.* at *14. Because the IRS's position that the stock warrants were never deductible made the issue in *Convergent* whether, not when, the stock warrants were deductible, the Tax Court held that no change in method of accounting resulted and Convergent could correct how it treated the warrants without IRS consent. *Id.* at *14–15. The various ways that Convergent reported the stock warrants on its returns had no impact on the court's decision. As in *Convergent*, where the IRS's position was that the stock warrants were never deductible, under Defendant's position, the royalties here are never includible in ExxonMobil's income. Accordingly, Defendant's position in this case makes the issue whether amounts are ever includible in ExxonMobil's income. ExxonMobil's reporting is therefore irrelevant.

Defendant does not dispute that a royalty is never included in the lessee's income under Supreme Court and Fifth Circuit law. Instead, Defendant mischaracterizes ExxonMobil's reporting to argue that ExxonMobil, in fact, included the royalty in its income on its original returns. Many pages of Defendant's brief note that the "royalties" were included in "gross receipts" on either line 1 or 10 of ExxonMobil's original returns. (Def.'s Mot. [Dkt. 158] at 12–13, 17–18, 20, 25). Defendant then erroneously equates "gross receipts" with "gross income," when they are not the same. (Def.'s Mot. [Dkt. 158] at 8–9). Gross receipts are a component of gross income and are reported on line 1. Gross income is defined in section 61 and reported on

line 11 of the corporate income tax return.[5] (Def.'s Mot. [Dkt. 158] at 12).  Defendant's equating of gross receipts and gross income is therefore inaccurate.

On all of its original returns (except for the Qatar royalties for 2009), ExxonMobil's gross income reported on line 11 did not include the royalties.  The in-kind royalties to Petronas are not reported anywhere on ExxonMobil's original returns.[6]  Ex. 1 (Declaration of Paige Merkle ("Merkle Decl.") ¶ 4) (App. at 3); (Def.'s App. at 2932-33, 2935 (Dkt. Nos. 154-5)).  The cash royalties to Petronas are consistently excluded from ExxonMobil's gross income as a cost of goods sold on line 2.  Ex. 1 (Merkle Decl. ¶ 5) (App. at 3); (Def.'s App. at 2932-33, 2935 (Dkt. Nos. 154-5)).  On ExxonMobil's original 2006 – 2008 tax returns, the Qatar JVCos' income is reported on line 10, net of the royalties.  Ex. 1 (Merkle Decl. ¶ 6) (App. at 4); (Def.'s App. at  2926-27, 2930 (Dkt. Nos. 154-5)).  On its 2009 original return, the Qatar royalties are reported in ExxonMobil's gross income but with an offsetting amount in line 26 (Other deductions).  Ex. 1 (Merkle Decl. ¶ 8) (App. at 4); (Def.'s App. at  2926-27 (Dkt. Nos. 154-5)).[7]

Reporting does not and cannot change the tax law.  Controlling case law dictates that the royalties are never ExxonMobil's income.  *Burnet v. Harmel*, 287 U.S. at 112; *Shamrock Oil & Gas Corp.*, 35 T.C. at 1040.  There is no line on the tax return to exclude items that are not the

---

[5] Gross income is "all income from whatever source derived" and includes gross income from business, dealings in property, interest, rents, royalties, dividends, and distributive share of partnership gross income. 26 U.S.C. § 61(a).  Line 11 is "Total income" and includes income from gross profit, dividends, interest, rents, royalties, capital gain net income, net gain or loss and other income, as well as returns and allowances and cost of goods sold.  Therefore, line 11 corresponds with the definition of "Gross income" in section 61(a).

[6] In-kind royalties are royalties paid through delivery of the extracted mineral rather than cash derived from its sale.  *Thomas*, 301 U.S. at 662 (finding that an in-kind royalty should be treated the same as "where the lessee sells all the oil and pays over the royalty in the form of cash").  Administratively accounting for the receipt of cash in a cash royalty on a tax return does not change the tax law that cash royalties and in-kind royalties are treated the same.

[7] In 2006 – 2008, only two of the JVCos made payments to SOQ.  Ex. 1 (Merkle Decl. ¶ 6) (App. at 4).

7

taxpayer's income.  For example, if an agent includes amounts it received on behalf of his principal in gross income and then deducts that same amount, the agent's reporting does not change that, as a matter of law, the amounts the agent received on behalf of his principal are not the agent's income.  Even if a taxpayer fails to report its wages on its return, the wages are still the taxpayer's income as a matter of law.  26 U.S.C. § 61.[8]  Similarly, even if ExxonMobil included the royalties on its return, that would not make the royalties ExxonMobil's income.

### C.    ExxonMobil's lifetime taxable income is irrelevant.

Defendant argues that ExxonMobil's lifetime taxable income is relevant here and allegedly would be the same under both purchase and mineral lease treatment.  (Def.'s Mot. [Dkt. 158] at 30–33).  Defendant is wrong.  As a threshold matter, for there to be a change in method of accounting, a taxpayer must first have adopted a method of accounting that could be changed. ExxonMobil did not adopt a method of accounting when it treated the transactions as mineral leases on its original returns.  Further, as explained in ExxonMobil's motion for summary judgment, Defendant's lifetime-taxable-income argument conflicts with applicable Treasury Regulations, which define a change in method of accounting as a "change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan."  26 C.F.R. § 1.446-1(e)(2)(ii)(a) (ExxonMobil's Mot. [Dkt. 126] at 14–19). A material item is defined as "any item that involves the proper time for the inclusion of the item

_____

[8] Even if ExxonMobil were treated as including the royalties in income and deducting the royalties on its original returns (contrary to the facts and the law), ExxonMobil still would be allowed to change the character of that deduction to interest without IRS consent. *Witte v. Comm'r*, 513 F.2d 391, 395 (D.C. Cir. 1975) (finding that while the taxpayer could not change the time of inclusion of amounts in income because the taxpayer had not requested the IRS's consent, the character of that reported income nonetheless could be recharacterized to interest and ordinary income).  Accordingly, in this circumstance, the Court must resolve the purchase v. mineral lease issue to determine the character of ExxonMobil's deduction.  That issue must be resolved at trial. *See* Dkt. 175.

in income or the taking of a deduction."[9]  *Id.*  Thus, the applicable Treasury Regulations do not refer to or adopt "taxable income"—*i.e.*, gross income less allowed deductions (26 U.S.C. § 63(a))—or the proper time for reporting items (plural) of "income and deductions" (conjunctive) as the standard for a change in a method of accounting.  A literal construction of the Treasury Regulations is appropriate considering that the consequence of a change in method of accounting is to circumvent the statute of limitations.  *Comm'r v. Brookshire Bros. Holding, Inc*., 320 F.3d 507, 513 (5th Cir. 2003) (finding no change in method of accounting and rejecting "the Commissioner's collateral, back-door attack to get around the time bar for closed years"); *see supra* note 3 (explaining section 481).

The Treasury Regulations include examples of corrected reporting where lifetime taxable income remains the same and no change in method of accounting results.  For example, adjusting a depreciable or amortizable asset's useful life is not a change in method of accounting.  26 C.F.R. § 1.446-1(e)(2)(ii)(d)(3)(i).  Because a useful-life adjustment changes only the time period during which a taxpayer's cost basis is recovered, and not the amount of the taxpayer's lifetime deduction, the taxpayer's lifetime taxable income remains the same.  By excluding useful-life adjustments from the definition of a change in method of accounting, the Treasury Regulations confirm that lifetime taxable income does not determine whether a change in method of accounting has occurred.[10]

---

[9] The emphasis on "item" in the Treasury Regulations highlights why mineral lease treatment is not a method of accounting.  Because the royalty under a mineral lease is permanently excluded from the lessee's income, there is no "item" of income or deduction to which a change in method of accounting could apply. *See* 26 C.F.R. § 1.446-1(e)(2)(ii)(a) (defining a change in method of accounting as a change in treatment of "any item that involves the proper time for the inclusion of the item in income or the taking of a deduction").

[10] Although some changes in method of accounting will not change lifetime taxable income, that does not make lifetime taxable income the deciding factor for whether a change in method of accounting has occurred.

In support of its lifetime-taxable-income argument, Defendant relies on several cases that do not even use the phrase "lifetime taxable income." (Def.'s Mot. [Dkt. 158] at 30). Instead, these cases refer to lifetime income, which is consistent with the focus in the Treasury Regulations on changes in "gross income," not taxable income. *See, e.g., Primo Pants Co. v. Comm'r*, 78 T.C. 705, 723 (1982); *Convergent Techs., Inc.*, T.C. Memo. 1995-320 at \*13; *Wayne Bolt & Nut Co. v. Comm'r*, 93 T.C. 500, 510 (1989). Defendant's failed attempt to distinguish *Saline Sewer* and *Florida Progress* in a footnote highlights its error in equating the separate concepts of gross income and taxable income. (Def.'s Mot. [Dkt 158] at 31, n. 28). *Fla. Progress Corp. v. United States*, 156 F. Supp. 2d 1265 (M.D. Fla. 1998), *aff'd per curiam on other grounds*, 264 F.3d 1313 (11th Cir. 2001); *Saline Sewer Co. v. Comm'r*, T.C. Memo. 1992-236, 1992 WL 79079 (1992). Defendant argues that *Saline Sewer* and *Florida Progress* involve a permanent change in the taxpayer's lifetime taxable income. This is not true. *Saline Sewers*' and *Florida Progress*' lifetime income was permanently changed only if the courts were looking at lifetime gross income and lifetime deductions separately. Taxable income as defined by section 63 (*i.e.*, gross income less deductions) remained the same. As in *Saline Sewer* and *Florida Progress*, ExxonMobil's lifetime gross income and lifetime deductions dramatically change if the transactions are purchases rather than mineral leases. Because ExxonMobil's income and deductions permanently change, the correction to purchase treatment is not a change in method of accounting, as defined by the Treasury Regulations and as recognized by the *Saline Sewer* and *Florida Progress* courts.

### 1. Defining change in method of accounting based on lifetime taxable income would treat taxpayers inconsistently.

Lifetime taxable income should not determine whether a correction from mineral lease to purchase treatment is a change in method of accounting because it would have different results depending on the taxpayer. For example, a taxpayer's lifetime taxable income would be different

between mineral lease and purchase treatment if the taxpayer qualifies for percentage depletion deductions. Unlike cost depletion, percentage depletion is based on the taxpayer's gross income from the mineral property and is not limited to the taxpayer's cost basis in the property. 26 U.S.C. § 613. As explained above, a taxpayer's gross income from the property is higher in a purchase because it includes all of the income from extraction of the mineral, rather than just the mineral lessee's share of that income. As a result, a taxpayer's percentage depletion deductions are higher in a purchase and reduce the taxpayer's lifetime taxable income more than under a mineral lease. Therefore, under Defendant's lifetime-taxable-income argument, a correction from mineral lease to purchase treatment would not be a change in method of accounting for any taxpayer who can claim percentage depletion for the mineral property.[11]

In addition, a correction from mineral lease to purchase treatment would not be a change in method of accounting for a foreign taxpayer with a U.S. branch and foreign operations. Section 882(c)(1)(A) limits deductions for U.S. tax purposes to deductions connected with income that is effectively connected with the conduct of a trade or business in the United States. The Treasury Regulations provide rules to apportion and allocate interest deductions. 26 C.F.R. § 1.882-5. If the U.S. branch of a foreign corporation is over-leveraged (or under-leveraged) relative to the foreign corporation's worldwide indebtedness, the amount of the interest deduction is reduced (or increased) from the amount of interest actually paid or accrued by the U.S. branch on U.S. liabilities. As a result, a foreign taxpayer's lifetime taxable income would be different between mineral lease and purchase treatment. Thus, correction from mineral lease to purchase treatment

---

[11] Percentage depletion is not allowed to an integrated producer like ExxonMobil and is not allowed with respect to foreign oil and gas wells. 26 U.S.C. §§ 613A(a), (d)(2).

would not be a change in method of accounting for such a foreign taxpayer under Defendant's lifetime-taxable-income argument.

Although ExxonMobil cannot take percentage depletion and is not subject to section 882, these examples show how the correction from mineral lease to purchase treatment would vary depending on each taxpayer's individual circumstances, if the Court were to accept Defendant's lifetime-taxable-income argument. From a tax administration perspective, it makes no sense for the same correction from mineral lease to purchase treatment to be a change in method of accounting for some, but not all, taxpayers. Accordingly, the Court should reject Defendant's argument.

### 2. ExxonMobil's lifetime taxable income is not the same between mineral lease treatment and purchase treatment.

Even if mineral lease treatment were a method of accounting (which it is not) and Defendant's unsupported legal theory applied (which it does not), ExxonMobil's correction to purchase treatment is not a change in method of accounting because its lifetime taxable income changes. On its amended returns, ExxonMobil included *all* of the income from the purchased property. Ex. 2 (Declaration of Renee Gonzalez ("Gonzalez Decl.") ¶ 8) (App. at 7–8). ExxonMobil then treated the payments to the SOQ and to Petronas as contingent purchase payments and determined that a portion of each payment was principal and the remainder was imputed interest. Ex. 2 (Gonzalez Decl. ¶ 9) (App. at 8). ExxonMobil capitalized the principal component of each payment and took depletion deductions with respect to the cost of the property purchased in the transactions. Ex. 2 (Gonzalez Decl. ¶ 9) (App. at 8).

Defendant's example showing the full deductibility of depletion is misleading and inaccurate. (Def.'s Mot. [158] at 7). ExxonMobil would never fully deduct through depletion its cost basis in the purchased property under purchase treatment. Depletion is calculated by

multiplying ExxonMobil's cost basis by a fraction equal to production for the year divided by total expected production.  26 U.S.C. § 611; 26 C.F.R. § 1.611-2(a)(1).  Each year ExxonMobil's cost basis is reduced by the prior year's depletion deduction.  A declining balance multiplied by a fraction never mathematically gets to zero.  (Ex. 3 Deposition of Paige Merkle at 33) (App. at 60); Ex. 4 (IRS Email Chain) (App. at 73).  The disallowed depletion deduction could result in a permanent difference in ExxonMobil's lifetime taxable income as compared to the complete exclusion from its income of royalties received by SOQ and Petronas under mineral lease treatment.  Therefore, under Defendant's example, ExxonMobil's lifetime taxable income would not be the same under purchase and mineral lease treatment.

Further, ExxonMobil's lifetime taxable income is different when correlative adjustments (resulting from changes in ExxonMobil's income and interest and depletion deductions) are taken into account.  ExxonMobil's tax return is thousands of pages long, due to the complexity of the Internal Revenue Code and the multiple volumes of Treasury Regulations, and computations of correlative adjustments are similarly complex.  For example, ExxonMobil's consolidated taxable income would be different over its lifetime under purchase treatment due to the reduction in the allowable section 199 deduction.  Section 199 allows a deduction in computing consolidated taxable income equal to a stated percentage (*e.g*., 3% or 6% for the years in issue) of "qualified production income" (QPI).  Ex. 5 (26 U.S.C. § 199 as in effect for the years in issue) (App. at 78–108).[12]  Under purchase treatment, ExxonMobil's U.S. source interest deduction is increased due to the payments to SOQ and Petronas.[13]  U.S. source interest expense reduces QPI so the QPI

---

[12] Section 199 was generally repealed for tax years beginning after December 31, 2017.  P.L. 115-97, sec. 13305(a).  A copy of the statute as in effect for the years in issue is included in the appendix. (App. at 78–108).

[13] The interest expense is apportioned between U.S. and foreign source income.  26 U.S.C. § 861.

deduction would be reduced under purchase treatment, resulting in an increase in consolidated lifetime taxable income.  Likewise, any disallowance of a deduction for depletion or interest (directly or indirectly) will result in a permanent difference in ExxonMobil's lifetime taxable income as compared to the complete exclusion from its income of royalties received by SOQ and Petronas under mineral lease treatment.  The computations necessary to determine ExxonMobil's lifetime taxable income highlight the absurdity of the lifetime-taxable-income argument.

**D.    Defendant's change in method of accounting defense cannot apply to the RL3 and QG2 transactions because they were treated improperly as mineral leases for only one year.**

Even if one assumes that the change in method of accounting defense applies to some of the transactions at issue (and it does not), the defense cannot apply to the Qatari transactions involving Ras Laffan Liquefied Natural Gas Company Limited (3) ("RL3") and Qatar Liquefied Gas Company Limited (II) ("QG2").  RL3 and QG2 first made payments to SOQ in 2009.  Ex. 6 (Declaration of Michael A. Bates ("Bates Decl.") ¶ 3) (App. at 110).  The payments for these transactions were reported for only one year (2009) before being correctly and consistently treated as purchase payments in 2010 and later years.  Ex. 1 (Merkle Decl. ¶¶ 7–8) (App. at 3); Ex. 2 (Gonzalez Decl. ¶ 8) (App. at 7–8).  Assuming mineral lease treatment is a method of accounting (which it is not, as discussed above), one year is not a sufficient length of time to have adopted an improper method of accounting.  Because the transactions are purchases, mineral lease treatment would be an improper method (if considered a method of accounting).  Therefore, this Court must resolve whether mineral lease or purchase treatment is proper to resolve Defendant's change of method of accounting defense as to the RL3 and QG2 transactions.

As quoted by Defendant, the relevant Treasury Regulation provides: "Although a method of accounting *may* exist under this definition without the necessity of a pattern of consistent treatment of an item, *in most instances a method of accounting is not established for an item*

14

*without such consistent treatment*."  26 C.F.R. § 1.446-1(e)(2)(ii)(a) (emphasis added); *see also* Gen. Couns. Mem. 36234, 1975 WL 37615 (1975) (explaining that this sentence of 26 C.F.R. § 1.446-1(e)(2)(ii)(a) adopts the "position that any erroneous practice within the overall-all accounting plan [i.e., for an item] which does not correctly reflect the facts is a 'method' if it has been consistently and systematically followed by taxpayer for two consecutive taxable years immediately preceding the year of change").  A taxpayer's use of an improper method for one year is not the "consistent treatment" required to establish a method of accounting.  *Thrasys, Inc. v. Comm'r*, T.C. Memo 2018-199, 2018 WL 6431770 at \*4 (2018) ("an erroneous treatment rises to the level of a 'method of accounting' only if it is employed consistently for two or more years"); *Foley v. Comm'r*, 56 T.C. 765, 769-70 (1971), *acq.* 1972-2 C.B. 1, 1972 WL 124338 (allowing taxpayer to adopt a proper method without IRS consent when the taxpayer had used an improper method only in year one); *Silver Queen Motel v. Comm'r*, 55 T.C. 1101, 1105 (1971), *acq.* 1972-2 C.B. 1, 1972 WL 124365 (same).

Long-standing IRS guidance since 1992 confirms that an improper method is adopted only if used in two or more consecutively filed returns:

> The treatment of a material item in the same way in determining the gross income or deductions in two or more consecutively filed federal income tax returns, without regard to any change in characterization of the method as permissible or impermissible, represents consistent treatment of that item for purposes of § 1.446-1(e)(2)(ii)(a).

Rev. Proc. 2015-13, 2015-5 I.R.B. 419, § 2.01(2), 2015 WL 232172 (emphasis added); *superseding* Rev. Proc. 97-27, 1997-1 C.B. 680, § 2.01(2), 1997 WL 233964 (including substantially the same language); *superseding* Rev. Proc. 92-20, 1992-1 C.B. 685, § 2.01, 1992

WL 725613 (including substantially the same language); *see also* Rev. Proc. 2002-18, 2002-1 C.B. 678, § 2.01(2), 2002 WL 393159 (including substantially the same language).[14]

Defendant incorrectly implies that a method of accounting was adopted when the RL3 and QG2 Development and Fiscal Agreements were entered into in 2004 and 2005, respectively. (Def.'s Mot. [Dkt. 158] at 17 n. 14).  A method of accounting is adopted with respect to an "item." *See* 26 C.F.R. § 1.446-1(a)(1) ("The term 'method of accounting' includes . . . the accounting treatment of any item.").  The "item" at issue here is the royalty payments made by each individual JVCo to SOQ. (Def.'s Mot. [Dkt. 158] at 2).  RL3 and QG2 did not make any royalty payments to SOQ until 2009.  Ex. 6 (Bates Decl. ¶ 3) (App. at 110).  Thus, even if mineral lease treatment were a method of accounting (which it is not), a method of accounting could not have been adopted for the royalty payments made by RL3 and QG2 until 2009.  Because a method of accounting cannot be adopted based on one tax year unless that treatment is proper, Defendant cannot obtain summary judgment regarding the RL3 and QG2 transactions unless the Court first determines that mineral lease treatment for RL3 and QG2 for 2009 was, in fact, proper.  And the Court cannot make that determination without ruling on the merits of ExxonMobil's refund claims at trial, which is an independent reason why Defendant's cross-motion for summary judgment should be denied.

## III.   CONCLUSION

For the foregoing reasons and those given in ExxonMobil's motion for summary judgment, Defendant's cross-motion for summary judgment on the change in method of accounting issue should be denied and ExxonMobil's motion on that same issue should be granted.

---

[14] As subregulatory guidance, a revenue procedure provides taxpayers with clarity and certainty concerning the legal interpretation that the IRS intends to apply; the IRS will not take positions inconsistent with its subregulatory guidance.  However, a revenue procedure does not have the force and effect of law.  U.S. Department of the Treasury, Policy Statement on the Tax Regulatory Process (Mar. 5, 2019).  (App. at 112–14).

Respectfully submitted,

THOMPSON & KNIGHT LLP

By: _____

    Emily A. Parker
    Texas Bar No. 15482500
    emily.parker@tklaw.com
    Mary A. McNulty
    Texas Bar No. 13839680
    mary.mcnulty@tklaw.com
    William M. Katz, Jr.
    Texas Bar No. 00791003
    william.katz@tklaw.com
    J. Meghan Nylin
    Texas Bar No. 24070083
    meghan.nylin@tklaw.com
    Leonora S. Meyercord
    Texas Bar No. 24074711
    lee.meyercord@tklaw.com
    Dina McKenney
    Texas Bar No. 24092809
    Dina.mckenney@tklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
FAX (214) 969-1751

MILLER & CHEVALIER, CHARTERED

    Kevin L. Kenworthy
    D.C. Bar No. 414887
    kkenworthy@milchev.com
    George A. Hani
    D.C. Bar No. 451945
    ghani@milchev.com
    Andrew L. Howlett
    D.C. Bar No. 1010208
    ahowlett@milchev.com

900 16th Street NW
Washington, D.C. 20006
(202) 626-5800
FAX (202) 626-5801

**ATTORNEYS FOR PLAINTIFF
EXXON MOBIL CORPORATION**

17