## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

EXXON MOBIL CORPORATION,

       Plaintiff,

v.

UNITED STATES OF AMERICA,

       Defendant.

CIVIL ACTION NO. 3:16-cv-2921-N

### APPENDIX TO PLAINTIFF EXXON MOBIL CORPORATION'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO SUPPLEMENT WITNESS LIST

Plaintiff Exxon Mobil Corporation ("ExxonMobil") submits this Appendix to its Response to Defendant's Motion for Leave to Supplement Witness List.

| Exhibit | Description | Appendix Pages |
|---------|-------------|----------------|
| 1. | Declaration of William M. Katz, Jr. | 1 - 3 |
| 1-A. | Excerpts of Transcript for the Deposition of Renee Gonzalez with Errata | 4 - 18 |
| 1-B. | Excerpts of Transcript for the Deposition of Paige Merkle with Errata | 19 - 42 |
| 1-C. | Excerpts of Transcript for the Deposition of Robert Jordan with Errata | 43 - 60 |
| 1-D. | March 21, 2017 Letter from Cory Johnson to Emily Parker | 61 - 63 |
| 1-E. | November 14, 2018 Letter from Johnson to Parker and Documents Referenced Therein | 64 - 93 |

Respectfully submitted,

THOMPSON & KNIGHT LLP

By:     /s/ *Emily A. Parker*
        Emily A. Parker
        State Bar No. 15482500
        emily.parker@tklaw.com
        Mary A. McNulty
        State Bar No. 13839680
        mary.mcnulty@tklaw.com
        William M. Katz, Jr.
        State Bar No. 00791003
        william.katz@tklaw.com
        J. Meghan Nylin
        State Bar No. 24070083
        meghan.nylin@tklaw.com
        Leonora S. Meyercord
        State Bar No. 24074711
        lee.meyercord@tklaw.com
        Dina McKenney
        Texas Bar No. 24092809
        Dina.mckenney@tklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas  75201
(214) 969-1700
(214) 969-1751 (Fax)

MILLER & CHEVALIER, CHARTERED

        Kevin L. Kenworthy
        D.C. Bar No. 414887
        kkenworthy@milchev.com
        George A. Hani
        D.C. Bar No. 451945
        ghani@milchev.com
        Andrew L. Howlett
        D.C. Bar No. 1010208
        ahowlett@milchev.com

900 16th Street NW
Washington, D.C. 20006
(202) 626-5800
(202) 626-5801 (Fax)

**ATTORNEYS FOR PLAINTIFF
EXXON MOBIL CORPORATION**

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

EXXON MOBIL CORPORATION,

       Plaintiff,

v.

       CIVIL ACTION NO. 3:16-cv-2921-N

UNITED STATES OF AMERICA,

       Defendant.

**DECLARATION OF WILLIAM M. KATZ, JR.**

1.      My name is William M. Katz, Jr.  I am of legal age and otherwise competent to make this declaration.  I am a partner at Thompson & Knight LLP ("T&K"), and I am counsel of record in this case for Plaintiff Exxon Mobil Corporation ("ExxonMobil").

2.      All of the facts stated in this declaration are true and correct and are based on my personal knowledge.  I acquired my personal knowledge during the course and scope of my work as counsel of record for ExxonMobil in this lawsuit.

3.      I have personal knowledge of communications between ExxonMobil and the United States of America ("Defendant") in this lawsuit, including letters and emails exchanged between T&K and Defendant's counsel at the Department of Justice (the "DOJ"), which I have drafted, sent, received, or reviewed.

4.      ExxonMobil produced the book-to-tax spreadsheet to Defendant on June 22, 2018.  Mr. Cavagnolo's name is listed on the top of the summary tab of the spreadsheet as its "source."

5.      Defendant has subpoenaed the following individuals to testify at trial: Paige Merkle, Renee Gonzalez, Robert Jordan, Robert Ylagan, Stephanie Malen, and Gary Thompson.

6.      Defendant first expressed its desire to call Richard Cavagnolo to testify in the above-captioned matter when it filed its Motion for Leave to Supplement Witness List on May 20, 2019.

7.      On May 24, 2019, I offered to produce Mr. Cavagnolo for a trial deposition in Houston on a mutual convenient date before June 17, 2019.  On June 3, 2019, Defendant rejected this offer.

8.      Attached to this Declaration are true and correct copies of the following:

A.      Excerpts of Transcript for the Deposition of Renee Gonzalez with Errata;

B.      Excerpts of Transcript for the Deposition of Paige Merkle with Errata;

C.      Excerpts of Transcript for the Deposition of Robert Jordan with Errata;

D.      March 21, 2017 Letter from Cory Johnson to Emily Parker; and

E.      November 14, 2018 Letter from Johnson to Parker and Documents Referenced Therein.

9.      I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas, Texas, on June 10, 2019.

_____
William M. Katz, Jr.

# EXHIBIT 1-A

Page 1

1              IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF TEXAS

2                      DALLAS DIVISION

3      EXXON MOBIL CORPORATION,   §

                                  §

4          Plaintff,             §

                                  §

5      vs.                       § CASE NO. 3:16-cv-2921

                                  §

6      UNITED STATES OF AMERICA,  §

                                  §

7          Defendant.            §

8

9      *** ATTORNEYS' EYES ONLY UNDER A PROTECTIVE ORDER ***

10               ORAL VIDEOTAPED DEPOSITION

11                 MS. RENEE E. GONZALEZ

12                   December 5, 2018

13

14          ORAL VIDEOTAPED DEPOSITION OF MS. RENEE E.

15      GONZALEZ, produced as a witness at the instance of

16      the Defendant and duly sworn, was taken in the

17      above-styled and numbered cause on the 5th day of

18      December, 2018, from 9:35 a.m. to 4:06 p.m., before

19      Michelle Hartman, Certified Shorthand Reporter in and

20      for the State of Texas and Registered Professional

21      Reporter, reported by computerized stenotype machine

22      at the offices of Thompson & Knight, 811 Main Street,

23      25th Floor, Houston, Texas, pursuant to the Federal

24      Rules of Civil Procedure and the provisions stated on

25      the record or attached hereto.

Page 2

```
 1                    A P P E A R A N C E S
 2      FOR THE PLAINTIFF:
 3           Mr. William M. Katz, Jr.
        and  Ms. Mary McNulty
 4           THOMPSON & KNIGHT
             1722 Routh Street
 5           Suite 1500
             Dallas, Texas 75201
 6           Telephone: 214-969-1330
             E-mail: william.katz@tklaw.com
 7
        FOR THE DEFENDANT:
 8
             Mr. Cory A. Johnson
 9      and  Ms. Elizabeth Kanyer
             U.S. DEPARTMENT OF JUSTICE
10           P.O. Box 26
             Washington, D.C. 20044
11           Telephone: 202-307-3046
             Fax:  202-514-9440
12           E-mail: cory.a.johnson@usdoj.gov
13
             Mr. Jonathan L. Blacker
14           Mr. Joshua D. Smeltzer
             U.S. DEPARTMENT OF JUSTICE
15           717 N. Harwood, Suite 400
             Dallas, Texas 75201
16           Telephone: 214-880-9765
             Fax:  214-880-9741
17           E-mail: jonathan.blacker2@usdoj.gov
                     joshua.d.smeltzer@usdoj.gov
18
19      ALSO PRESENT:
20           Mr. Jim Ferguson, ExxonMobil
21           Mr. Mike Flores, videographer
22
23
24
25
```

                                                    Page 3

 1                          INDEX
 2                                                  PAGE
 3      MS. RENEE E. GONZALEZ
 4      Examination by Mr. Johnson ........................6
        Signature Page  ................................154
 5      Signature Page  ................................155
        Court Reporter's Certificate ...................156
 6
 7                        EXHIBITS
 8      EXHIBIT            DESCRIPTION             PAGE
9      Exhibit 500    Form 1120X Amended U.S.         28
                       Corporation Income Tax Return
10                     for ExxonMobil Corporation and
                       Affiliated Companies for year
11                     ending 12/31/06,
                       EM_06-09_0167663 to 03
12
        Exhibit 503    April 13, 2013 1120X refund    150
13                     claim for 2009
14      Exhibit 504    Declaration of Renee Gonzalez   22
15      Exhibit 506    2006 Form 1120 U.S. Corporation  27
                       Income Tax Return for ID
16                     13-6186766
17      Exhibit 523    Plaintiff ExxonMobil            142
                       Corporation's Objections and
18                     Response to Defendant's
                       Interrogatory Number 22
19
        Exhibit 524    ExxonMobil Corporation's        113
20                     Objections and Responses to
                       Defendant's Interrogatory
21                     Numbers 24 through 27
22      Exhibit 527    ExxonMobil Corporation letter    93
                       dated 11/20/15 to Wilkins of
23                     the IRS from Ms. Gonzalez
24
25

Page 4

1                          EXHIBITS (cont.)

2        EXHIBIT                DESCRIPTION                PAGE

3        Exhibit 528    Fml.ftc.schedule1999 to 2016      81

4        Exhibit 529    Plaintiff ExxonMobil              25

                        Corporation's Objections and

5                       Answers to United States First

                        Set of Interrogatories

6

         Exhibit 531    Excel spreadsheet,               112

7                       EM_0609_0388404

8        Exhibit 534    Excel Spreadsheet                 52

                        EM_06_09_0455890.xlsx

9

         Exhibit 535    Form 3315 Application for        144

10                      Change in Accounting Method for

                        ExxonMobil Corporation ID

11                      13-5409005

12

13

14

15

16

17

18

19

20

21

22

23

24

25

     1                    (All exhibits marked by Counsel for

     2               the U.S. previously)

     3                    THE VIDEOGRAPHER:  We are now on the

     4     record.  Please note that the microphones are

     5     sensitive and may pick up whispering and private

     6     conversations.  Please turn off all cellphones or

     7     place them away from the microphones as they can

     8     interfere with the deposition audio.  Recording will

     9     continue until all parties agree to go off the

    10     record.

    11                    My name is Mike Flores representing

    12     Veritext Legal Solutions.  The date today is December

    13     5th, 2018.  The time is approximately 9:35 a.m.  The

    14     deposition is being held at Thompson & Knight located

    15     at 811 Main Street, Suite 2500, Houston, Texas, and

    16     being taken by the counsel for the Defendant.

    17                    The caption of the case is ExxonMobil

    18     Corporation versus United States of America.  The

    19     case is being held in the United States District

    20     Court for the Northern District of Texas, Dallas

    21     Division, Case Number 3:16-CV-2921.  The name of the

    22     witness today is Renee Gonzalez.

    23                    At this time the attorneys present in

    24     the room will identify themselves and the parties

    25     they represent.

Page 6

1                    MR. JOHNSON:  Cory Johnson from The

2       Justice Department for Defendant United States.

3                    MR. BLACKER:  Jonathan Blacker for the

4       United States.

5                    MS. KANYER:  Elizabeth Kanyar for the

6       United States.

7                    MR. SMELTZER:  Joshua Smeltzer for the

8       United States.

9                    MR. KATZ, JR.:  Bill Katz here on

10      behalf of the Plaintiff ExxonMobil Corporation, and

11      the witness Renee Gonzalez.  I'm here with my

12      partner, Mary McNulty, and also James Ferguson from

13      ExxonMobil.

14                    THE VIDEOGRAPHER:  And our court

15      reporter is Michelle Hartman, also representing

16      Veritext.

17                    And will you please swear in the

18      witness.

19                    MS. RENEE E. GONZALEZ,

20      having been first duly sworn, testified as follows:

21                          EXAMINATION

22            Q.  (BY MR. JOHNSON)  Good morning.

23            A.  Good morning.

24            Q.  Could you tell us your name for the

25      record, please.

Page 112

1    or a number's put on it?

2              A.  I don't know.

3                   (Exhibit 531 marked)

4              Q.  (BY MR. JOHNSON)  One of the -- marked

5    as our next exhibit, DX531, which is another Excel,

6    which we can look at on the screen, and that is Bates

7    numbered EM_0609_0388404.  And I'll go to the first

8    tab.  And here is the summary tab, and some of the

9    other tabs.

10                  Is this something you recognize?

11             A.  No.

12             Q.  Okay.  So you've never seen this

13   before?

14             A.  No.

15             Q.  Okay.  Then you know what -- who

16   prepared it?

17             A.  No.

18             Q.  And you don't know what it was used

19   for?

20             A.  No.

21             Q.  At the top here it says, "Source:

22   Richard Cavagnolo."  Do you know who that is?

23             A.  I have heard of him, but never met him.

24             Q.  Do you know what department or group

25   he's in at Exxon?

Page 113

1          A.   Yes.

2          Q.   Where?

3          A.   The Tax Reporting Analysis Center.

4          Q.   Okay.

5               THE WITNESS:   The stack is coming

6     down.

7          Q.   (BY MR. JOHNSON)   We have marked as

8     Exhibit 524, Ms. Gonzalez, a document entitled

9     "ExxonMobil Corporation's Objections and Responses to

10    Defendant's Interrogatory Numbers 24 through 27."

11               You've welcome to page through it, but

12    I wanted to ask:  At the very last page -- hopefully

13    we have all the pages this time -- is that a

14    verification you've provided?

15         A.   Yes, for response 27.

16         Q.   Okay.  So you weren't providing a

17    verification for any of the other responses?

18         A.   No.

19         Q.   Okay.  Are there any other -- I'm

20    sorry.

21         A.   I'm looking through it.

22         Q.   Other than the -- the DFAs and Qatar

23    and the PSCs in Malaysia that we have been talking

24    about, are there any other transactions by Exxon that

25    that you're aware of that it has treated in the

Page 153

1                    THE WITNESS:  I don't know.

2                    MR. KATZ, JR.:  Objection:  Calls for

3      speculation.

4                    MR. JOHNSON:  Huh?

5                    (Discussion off record)

6                    MR. JOHNSON:  Okay.  Yeah, let's take

7      a short break.

8                    THE VIDEOGRAPHER:  Off the record at

9      3:52 p.m.

10                      (Recess taken)

11                   THE VIDEOGRAPHER:  Back on the record,

12     4:06 p.m.

13                   MR. JOHNSON:  All right.  Thank you

14     Ms. Gonzalez.  I don't have anymore questions.  Thank

15     you for coming in.

16                   THE WITNESS:  My pleasure.

17                   MR. KATZ, JR.:  And we will reserve

18     our questions.  Thanks.

19                   THE VIDEOGRAPHER:  Off the record at

20     4:06 p.m.

21                   (Proceedings concluded at 4:06 p.m.)

22

23

24

25

Page 154

1    STATE OF TEXAS

2    COUNTY OF HARRIS

3

4                    REPORTER'S CERTIFICATE

5              ORAL VIDEOTAPED DEPOSITION OF

6                  MS. RENEE E. GONZALEZ

7                    December 5, 2018

8

9            I, Michelle Hartman, the undersigned

10   Certified Shorthand Reporter in and for the State of

11   Texas and Registered Professional Reporter, certify

12   that the facts stated in the foregoing pages are true

13   and correct.

14           I further certify that I am neither

15   attorney or counsel for, related to, nor employed by

16   any parties to the action in which this testimony is

17   taken and, further, that I am not a relative or

18   employee of any counsel employed by the parties

19   hereto or financially interested in the action.

20           That the deposition transcript was duly

21   submitted on _____ to the witness or to

22   the attorney for the witness for examination,

23   signature, and returned to me by _____.

24

25

1          SUBSCRIBED AND SWORN TO under my hand and

2     seal of office on this _____ day of December, 2018.

3

4

5

6          Michelle Hartman, CSR, RPR

           Texas CSR 7093

7          Expiration:  12/31/19

           Veritext Legal Solutions

8          Firm Registration No. 571

           300 Throckmorton, Suite 1600

9          Ft. Worth, Texas 76102

           817-336-3042

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 158

1      A C K N O W L E D G E M E N T   O F   D E P O N E N T

2

3      I, Ms. Renee E. Gonzalez, do hereby acknowledge

4      I have read and examined the foregoing pages of

5      testimony, and the same is a true, correct and

6      complete transcription of the testimony given

7      by me, and any changes or corrections, if any,

8      appear in the attached errata sheet signed by me.

9

10

11

12

13

14

15

       1/22/19

16     Date                        Ms. Renee E. Gonzalez

17

18

19

20

21

22

23

24

25

Page 160

1    Capital Reporting Company

     1250 Eye Street, Northwest

2    Suite 350

     Washington, D.C. 20005

3    (202) 857-DEPO

4             E R R A T A   S H E E T

5    Case Name:   Exxon Mobil Corporation v. United States Of America

6    Witness Name:  Ms. Renee E. Gonzalez

7    Deposition Date:   12/5/2018

8    Job No.: 3112504

9    Page No.   Line No.      Change/Reason for Change

10

11            See attached errata sheet.

12

13

14

15

16

17

18

19

20

21

22

23

24                                        1/22/19

25   Signature                            Date

**App. 017**

## RENEE E. GONZALEZ – ERRATA SHEET

Page 11, line 25 – change "James" to "Jaime" – transcription error

Page 12, line 20 – change "position" to "decision" – transcription error

Page 13, line 11 – change "of" to "and" – transcription error

Page 33, line 18 – change "due" to "to" – transcription error

Page 34, line 17 – change "in" to "and" – transcription error

Page 35, line 22 – change "capitalize" to "capitalized" – transcription error

Page 41, line 8 – change "foreigner" to "foreign" – transcription error

Page 56, line 20 – change "an" to "and" – transcription error

Page 61, line 25 – change "track" to "TRAC" – transcription error

Page 67, line 22 – change "assess" to "cess" – transcription error

Page 83, line 11 – change "Mobile" to "Mobil" – transcription error

Page 86, line 24 – change "honester" to "honest" – transcription error

Page 90, lines 10 and 11 – change "DCVM" to "NOGEI" – transcription error

Page 97, line 5 – change "bases" to "basis" – transcription error

Page 104, line 16 – change "U.S. Legal" to "U.S. liability" – transcription error

Page 126, line 9 – change "James'" to "Jim's" – transcription error

Page 130, line 3 – change "are" to "our" – transcription error

# EXHIBIT 1-B

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

                FOR THE NORTHERN DISTRICT OF TEXAS

 2                        DALLAS DIVISION

 3       EXXONMOBIL CORPORATION,     §

                                     §

 4            Plaintff,              §

                                     §

 5       vs.                         § CASE NO. 3:16-cv-2921

                                     §

 6       UNITED STATES OF AMERICA, §

                                     §

 7            Defendant.             §

 8

 9       *** ATTORNEYS' EYES ONLY UNDER A PROTECTIVE ORDER ***

10                  ORAL VIDEOTAPED DEPOSITION

11                    MS. PAIGE M. MERKLE

12                     December 6, 2018

13

14          ORAL VIDEOTAPED DEPOSITION OF MS. PAIGE M.

15       MERKLE, produced as a witness at the instance of the

16       Defendant and duly sworn, was taken in the

17       above-styled and numbered cause on the 6th day of

18       December, 2018, from 9:25 a.m. to 11:57 a.m., before

19       Michelle Hartman, Certified Shorthand Reporter in and

20       for the State of Texas and Registered Professional

21       Reporter, reported by computerized stenotype machine

22       at the offices of Thompson & Knight, 811 Main, Suite

23       2500, Houston, Texas, pursuant to the Federal Rules

24       of Civil Procedure and the provisions stated on the

25       record or attached hereto.
```

Page 2

1                              A P P E A R A N C E S

2

3      FOR  THE  PLAINTIFF:

4            Mr.  William  M.  Katz,  Jr.
       and   Ms.  Emily  Parker

5            THOMPSON  &  KNIGHT

             1722  Routh  Street

6            Suite  1500

             Dallas,  Texas  75201

7            Telephone:

             Fax:

8            E-mail:  william.katz@tklaw.com

9      FOR  THE  DEFENDANT:

10           Mr.  Cory  A.  Johnson
       and   Ms.  Elizabeth  Kanyer

11           U.S.  DEPARTMENT  OF  JUSTICE

             P.O.  Box  26

12           Washington,  D.C.  20044

             Telephone:  202-307-3046

13           Fax:   202-514-9440

             E-mail:  cory.a.johnson@usdog.gov

14

15     ALSO  PRESENT:

16           Mr.  Jim  Ferguson,  ExxonMobil

17           Mr.  Mike  Flores,  videographer

18

19

20

21

22

23

24

25

Page 3

1                              INDEX
2                                                      PAGE
3   MS. PAIGE M. MERKLE
4   Examination by Mr. Johnson .......................5
    Signature Page  .................................87
5   Signature Page  .................................88
    Court Reporter's Certificate ....................89
6
7                            EXHIBITS
8   EXHIBIT              DESCRIPTION              PAGE
9   Exhibit 505    Affidavit of Paige Merkle          8
10  Exhibit 506    ExxonMobil Proprietary 2006       18
                   Form 1120
11
    Exhibit 512    the 2006 1120 for ExxonMobil      43
12                 RasGas
13  Exhibit 521    1120 Form for ExxonMobil RasGas   64
                   for 2009
14
    Exhibit 523    Plaintiff ExxonMobil              76
15                 Corporation's Objections and
                   Response to Defendant's
16                 Interrogatory No. 22
17  Exhibit 524    Plaintiff ExxonMobil              77
                   Corporation's Objections and
18                 Responses to Defendant's
                   Interrogatory Nos. 24 - 27
19
    Exhibit 530    Excel spreadsheet                 35
20                 EM_06-09_0456926
21  Exhibit 531    Excel Spreadsheet Bates           51
                   EM_06-09_0388404
22
23
24
25

Page 4

```
 1                    (All exhibits marked by Counsel for

 2                    the U.S. previously)

 3                    THE VIDEOGRAPHER:  We are now on the

 4     record.  Please note that the microphones are

 5     sensitive and may pick up whispering and private

 6     conversations.  Please turn off all cellphones or

 7     place them away from the microphones as they can

 8     interfere with the deposition audio.  Recording will

 9     continue until all parties agree to go off the

10     record.

11                    My name is Mike Flores representing

12     Veritext Legal Solutions.  The date today is December

13     6th, 2018.  The time is approximately 9:26 a.m.  This

14     deposition is being held at Thompson & Knight located

15     at 811 Main Street, Suite 2500, Houston, Texas,

16     and is being taken by counsel for the Defendant.

17                    The caption of the case is ExxonMobil

18     Corporation versus United States of America.  The

19     case is being held in the United States District

20     Court for the Northern District of Texas, Dallas

21     Division, Case Number 3:16-cv-2921.  The name of the

22     witness is Paige Merkle.

23                    At this time will Counsel please state

24     their appearance for the record.

25                    MR. JOHNSON:  Cory Johnson from the
```

Page 5

1    Justice Department for the United States.

2                    MS. KANYER:  Elizabeth Kanyer, the

3    Justice Department.

4                    MR. KATZ, JR.:  William Katz here on

5    behalf of Plaintiff ExxonMobil Corporation, and the

6    witness, Paige Merkle.

7                    MS. PARKER:  Emily Parker, Thompson &

8    Knight, joining Mr. Katz.

9                    MR. FERGUSON:  Jim Ferguson,

10   ExxonMobil.

11                    THE VIDEOGRAPHER:  Our court reporter

12   today is Michelle Hartman.

13                    At this time, would you please swear

14   in the witness.

15                    MS. PAIGE M. MERKLE,

16   having been first duly sworn, testified as follows:

17                        EXAMINATION

18         Q.  (BY MR. JOHNSON)  Good morning,

19   Ms. Merkle.

20         A.  Good morning.

21         Q.  Could you tell us your full name for

22   the record.

23         A.  Paige Marie Merkle.

24         Q.  And you're employed by ExxonMobil?

25         A.  That's correct.

Page 51

     1                    THE VIDEOGRAPHER:   Back on the record,

     2        10:49 a.m.  Beginning tape two.

     3                    Q.  (BY MR. JOHNSON)   Okay.  Ms. Merkle,

     4        before we broke, you were describing sort of the

     5        process of how the results of RL 1 and RL 2 are

     6        reported up to RasGas, and I want to ask you to take

     7        a look at what we're marking as DX531, which is again

     8        not on paper.

     9                    A.  No.

    10                    Q.  It will be the Excel to your right on

    11        the screen, and it is Bates stamped EM_06-09_0388404.

    12        And again it has a number of tabs that I can scroll

    13        through.

    14                          But is this something you've seen

    15        before?

    16                    A.  I've seen it.

    17                    Q.  Okay.  There's the summary tab.  Is

    18        that something you've seen before?

    19                    A.  Yes, I've seen this.

    20                    Q.  So you've seen all the different tabs

    21        and scrolled through this Excel?

    22                    A.  I have.

    23                    Q.  And did you do that in connection with

    24        this case?

    25                    A.  Yes.

1          Q.  Did you have any hand in preparing

2     this?

3          A.  No.

4          Q.  Do you know who did?

5          A.  Yes.

6          Q.  And who was that?

7          A.  Richard Cavagnolo.

8          Q.  And who is he?

9          A.  He's a tax analyst at ExxonMobil.

10         Q.  Is -- do you -- is he in the same group

11    you are or some other group or --

12         A.  We're -- we're all in the same tax

13    department.  So, like you say, I'm a -- he's an

14    analyst where I'm a subject -- I don't prepare

15    returns.  He's preparing the returns.

16         Q.  And what was the purpose of your review

17    of this?

18         A.  To get ready for this case.

19         Q.  Okay.  To get -- get ready for your

20    deposition?

21         A.  Correct.

22         Q.  Okay.  Had you looked at this before

23    you signed your affidavit, the declaration?

24         A.  Yes.

25         Q.  What -- what's your understanding of

 1    what this Excel is intended to represent?

 2                    And I don't mean the particular tab

 3    we're on.  We can go by tab.  But overall, what's

 4    your understanding of what it's intended to

 5    represent?

 6            A.  One of the questions was, you know,

 7    where do you find the income associated with when we

 8    were doing the lease treatment, and where would you

 9    find it once you changed to CPP treatment.

10            Q.  Okay.

11            A.  So up there --

12            Q.  All right.  So let's just -- let's skip

13    the first tab, which is just an org chart.

14            A.  Correct.

15            Q.  We will go to the summary tab.  And

16    then you'll see some numbers in line -- or Column A

17    off to the left.

18            A.  Yes.

19            Q.  Do you know what those are for?

20            A.  Those are -- the RUs are what Exxon

21    terms the reporting unit.  So 7018, that's Ras

22    Laffan 1 and 7008 is Ras Laffan 2.  So those are the

23    partnerships that were in question.  So 7085 is RL 3

24    and 7084 is Qatar Gas 2.

25            Q.  Okay.  And then behind 7018 there's

Ms. Paige M. Merkle                    December 6, 2018

Page 54

1     another number.  Do you know what that is?

2              A.  Yes.  That's the reporting unit for

3     RasGas, Inc. -- ExxonMobil RasGas, Inc.  That's the

4     owner of --

5              Q.  Whose pro forma we were looking at

6     earlier?

7              A.  We were looking at earlier, correct.

8              Q.  Okay.  So going over to the years at

9     issue, '06 through '09 -- well, yeah.

10                So going over '06 through '09 --

11             A.  Uh-huh.

12             Q.  -- and there it's below a headline that

13     reads "TPAs Files to Treat As Sales."

14                Do you see that?

15             A.  Correct.

16             Q.  Okay.  And so what's indicated there

17     with regard to RL 1 on lines three and four and --

18             A.  All right.  So RL 1, 2006, it's saying

19     that when we filed the TPA, the -- the income was

20     reported originally as other income, and then the --

21     the increased gross receipts on the TPA.

22             Q.  Do you know if the lines three and four

23     for the post-'06 through '09 show the original

24     treatment or the new treatment?

25             A.  The original treatment is the 2006,

Case 3:16-cv-02921-N-BH   Document 220   Filed 06/10/19   Page 31 of 95   PageID 16480

1    because that's how we filed it.  It would have been

2    the light orange or tan or whatever you want to call

3    that.

4              Q.  Okay.  So in the original treatment for

5    '06, there was revenue -- a positive revenue number

6    included in other income, and then a negative number

7    for the royalty payments to the government?

8              A.  Correct.

9              Q.  Okay.  And skipping over -- and this,

10   as you can see, I manipulated a little wider than

11   the screen, but we can go back and forth.

12                But this is the tab A --

13             A.  Okay.

14             Q.  -- 2006.  Do you know what OFR 3548

15   RL 1, RL 2 stands for, the name of the tab?

16             A.  No, I don't know what OFR stands for.

17   But the rest is 3548 and, again, the owner of RL 1

18   and RL 2.

19             Q.  Do you know what's being represented

20   here in this -- this tab of the Excel?

21             A.  All right.  Well, it's starting off

22   with the financial audited income statements from

23   IFRS, and then they highlighted the royalties and

24   then --

25             Q.  So is -- let me stop you there.

Page 56

1          That's a snapshot of RL 1's financial

2     statement?

3          A.  Right.

4          Q.  And is that -- you've described for me

5     the starting point for the tax reporting.

6               Is that the snapshot of the starting

7     point?

8          A.  In 2006?  It's what was used to

9     establish the royalties.  There's a -- if you notice

10    in the top corner there a three, it says it's IFRS,

11    which means it's international gap, and ExxonMobil

12    would have -- had the starting point of U.S. gap.

13              And so we have a YY, that's the actual

14    basis.  But this is showing how we're getting our

15    royalties.

16         Q.  Okay.  So those are the royalties paid

17    under the DFAs?

18         A.  Correct, under -- and this is under

19    IFRS, rules.

20         Q.  Okay.

21         A.  All right.  So then -- well, anything

22    else you want to know?

23         Q.  Have you looked at this tab before?

24         A.  Yes.

25         Q.  Okay.  And you -- do you understand

1     what it's -- what it's doing, what's --

2              A.  Yes.

3              Q.  -- what these computations are?

4              A.  Yes.

5              Q.  And then so could you describe that for

6     me?

7              A.  Well, can you go back to the left, and

8     we'll work our way across.

9              Q.  Okay.

10             A.  So the next step here it -- we'll say

11    columns, N through B, we're showing the sourcing.  So

12    that 918 negative royalties, it's a part of the

13    total, but it's sourced specifically the FOGEI, and

14    if you --

15             Q.  Okay.

16             A.  So then -- but it's part of -- well,

17    before you leave.

18             Q.  All right.

19             A.  It's part of the -- if you were to add

20    up the 115, the 918 million and the 63 million, you

21    get the 1097, which is the other expenses shown here.

22    And this is labeled our Fisk and step eight.  So what

23    the Fisk does is get -- helps us do our allocation,

24    our sourcing of our revenue and our taxes.

25                  Step seven would have been taxes.

Page 58

```
 1      This is specifically step eight, which is talking

 2      about how are we going to source it on the U.S. and

 3      the income on -- for U.S. tax purposes.

 4                 Q.  And when you mean -- you say "source,"

 5      what do you mean?

 6                 A.  You have to put your income into

 7      different baskets, if we can call it that.  So you

 8      have U.S. source and foreign source.

 9                      And so on the foreign side, we are

10      using FOGEI and FORI and then U.S./passive and then

11      the other, something that's not going to use the

12      source base on the Fisk, because they have another

13      way of doing the sourcing.

14                 Q.  Okay.  And so what is Fisk?

15                 A.  The Fisk is a -- a model of -- that was

16      developed with the IRS, the IRS agent's name was

17      Fisk.

18                 Q.  Oh.

19                 A.  So basically we're saying we're going

20      get a 15 percent rate of return on our financial FORI

21      assets, and that is a reasonable way of sourcing

22      revenue and expenses.

23                 Q.  Okay.  All right.  So continuing on?

24                 A.  All right.  So we then reflect -- stop,

25      stop.  Go back to the Fisk there.  So there's the
```

Page 59

```
 1      1097 which is kind of AF -- maybe line 48 in the

 2      Fisk.  But anyway that what we're saying that billion

 3      dollars of expenses, majority of it is FOGE, which

 4      stands for foreign oil and gas extracted income, and

 5      then some of it is FORI, 161 million.  But that's,

 6      again, the sourcing that was used on the return.

 7                  So let's see, does it say -- this is

 8      which -- can you -- it says hears this RL 1.  So the

 9      step eight is the total, so the 4,652,000,000.

10                  Do you see that on line 55?

11           Q.   Uh-huh.

12           A.   Well, then we go, well, it's

13      ExxonMobil's share of that four billion because we

14      don't own all of it.  So that's where we say the

15      1.2 billion because it's part of our share.  And if

16      you scroll down you'll see something very similar for

17      RL 2.

18                  So step eight, again, is the

19      100 percent number, and the contingent payments are

20      located in the other expenses, and source mainly

21      FOGE.  And --

22           Q.   And FOGE is foreign source?

23           A.   Foreign oil and gas extractive.  So --

24           Q.   In terms of -- in terms of sourcing

25      rules, it's foreign other than domestic?
```

Page 60

```
 1              A.   Yes.

 2              Q.   Okay.

 3              A.   Okay.  And so then there is RL 2 share

 4     and somewhere at the bottom it should add it at all

 5     together and come up with a total.  You know.  Maybe

 6     not here.  So scroll to the right, then.

 7                   Yeah, here is where we're going to get

 8     it all added together.  So they take the snapshot of

 9     RL 2plus RL 1, and then here is the income that you

10     should see reported on our tax return.

11              Q.   Okay.  So all those steps for RL 1 and

12     RL 2and is -- and then the -- sort of the penultimate

13     calculation there, that one called "other income"?

14              A.   That's where the majority of it is.

15     But, like you say, the interest expense that's from

16     this partnership.  You can see the 89 million -- see,

17     there's the 89 million.  And I think if you got into

18     the details on the IDC and the depreciation, that's

19     going to be 103 but it's going to be offset by an

20     ANCON adjustment.  So you would have to see more

21     details to actually see that in the -- but anyway,

22     there's the interest income that you see reported,

23     the 18 million.  So it's not just the 24 but the --

24              Q.   Right.

25              A.   -- essentially --
```

Ms. Paige M. Merkle                    December 6, 2018

Page 61

1            Q.   Okay.

2            A.   -- the majority of the income from the

3    partnership --

4            Q.   But --

5            A.   -- is there.

6            Q.   -- there you see the computation for

7    the 2.4 billion, which we looked at earlier?

8            A.   Correct.

9            Q.   And that is -- that computation is the

10   result of 3.2 billion of gross receipts minus other

11   expenses, other U.S. tax adjustments, and something

12   called "reverse net loss"?

13           A.   Right.  Correct.  But those other

14   expenses, you know, make sure you realize they

15   include those contingent payments --

16           Q.   Okay.

17           A.   -- or royalties.

18           Q.   That's what I wanted to ask.

19                So the royalties are in that

20   799 million other expense number?

21           A.   That's right.

22           Q.   Okay.  So the 2.4 billion --

23           A.   Uh-huh.

24           Q.   -- that shows up on line ten as other

25   income is the result of subtracting the royalties and

```
 1      other expenses and a few other items from gross

 2      receipts?

 3                  A.  Correct.

 4                  Q.  All after being --

 5                  A.  -- calculated, you know, back over

 6      here.

 7                  Q.  Right.  I guess, but all reduced to

 8      reflect only Exxon's share.

 9                  A.  Right, and we're -- right.

10                  Q.  Okay.  You pointed that out earlier,

11      that there's a total number and then it's --

12                  A.  Cut to our share.

13                  Q.  -- set to our share.  So then this

14      computation there that leads to 2.4 billion is

15      Exxon's share of gross receipts minus Exxon's share

16      of the royalties minus Exxon's share of the other

17      items they listed?

18                  A.  Right.

19                  Q.  Okay.

20                  A.  And so now we're doing it again, so --

21                  Q.  And then the other tabs are just for

22      the other years '07 through '09?  Is your

23      understanding --

24                  A.  The same --

25                  Q.  -- the same basic process?
```

Ms. Paige M. Merkle                    December 6, 2018

Page 86

1    Ms. Merkle.

2                  That is all the questions I have.

3                  MR. KATZ, JR.:  We will reserve our

4    questions to trial.

5                  Thank you.

6                  THE VIDEOGRAPHER:  Off the record,

7    11:57 a.m.

8                  (Proceedings concluded at 11:57 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 87

```
 1    STATE OF TEXAS

 2    COUNTY OF HARRIS

 3

 4                    REPORTER'S CERTIFICATE

 5               ORAL VIDEOTAPED DEPOSITION OF

 6                    MS. PAIGE M. MERKLE

 7                    December 6, 2018

 8

 9           I, Michelle Hartman, the undersigned

10    Certified Shorthand Reporter in and for the State of

11    Texas and Registered Professional Reporter, certify

12    that the facts stated in the foregoing pages are true

13    and correct.

14           I further certify that I am neither

15    attorney or counsel for, related to, nor employed by

16    any parties to the action in which this testimony is

17    taken and, further, that I am not a relative or

18    employee of any counsel employed by the parties

19    hereto or financially interested in the action.

20           That the deposition transcript was duly

21    submitted on _____ to the witness or to

22    the attorney for the witness for examination,

23    signature, and returned to me by _____.

24

25
```

1          SUBSCRIBED AND SWORN TO under my hand and

2     seal of office on this _____ day of December, 2018.

3

4

5

6          Michelle Hartman, CSR, RPR

           Texas CSR 7093

7          Expiration:  12/31/19

           Veritext Legal Solutions

8          Firm Registration No. 571

           300 Throckmorton, Suite 1600

9          Ft. Worth, Texas 76102

           817-336-3042

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       A C K N O W L E D G E M E N T   O F   D E P O N E N T

2

3       I, Ms. Paige M. Merkle, do hereby acknowledge

4       I have read and examined the foregoing pages of

5       testimony, and the same is a true, correct and

6       complete transcription of the testimony given

7       by me, and any changes or corrections, if any,

8       appear in the attached errata sheet signed by me.

9

10

11

12

13

14

15
        1/31/2017                          Paige M. Merkle

16      Date                        Ms. Paige M. Merkle

17

18

19

20

21

22

23

24

25

Page 93

1   Capital Reporting Company

    1250 Eye Street, Northwest

2   Suite 350

    Washington, D.C. 20005

3   (202) 857-DEPO

4            E R R A T A   S H E E T

5   Case Name:  Exxon Mobil Corporation v. United States Of America

6   Witness Name:  Ms. Paige M. Merkle

7   Deposition Date:  12/6/2018

8   Job No.: 3112516

9   Page No.   Line No.     Change/Reason for Change

10

11

12

13

14

15

16

17

18

19

20

21   *See attached errata sheet*

22

23

24   Paige Merkle                    1/31/2019

25   Signature                       Date

## PAIGE M. MERKLE – ERRATA SHEET

Page 7, line 3 – add "/" between downstream and chemicals – transcription error

Page 8, line 3 – change "the math and economics" to "for math and economics" – transcription error

Page 12, line 14 – change "bill" to "fuel" – transcription error

Page 16, line 19 – change "OG" to "QG" – transcription error

Page 32, line 7 – change "base" to "basis" – transcription error

Page 36, line 11 – add "we" before "reimbursed" – transcription error

Page 45, line 15 – add "we" before "prepared" – transcription error

Page 45, line 16 – change "entities" to "entries" – transcription error

Page 49, line 13 – change "back" to "book" – transcription error

Page 56, lines 11 and 12 – change "gap" to "GAAP" – transcription error

Page 56, line 13 – change "YY" to "YNY" – transcription error

Page 57, line 13 – change "the" to "to" – transcription error

Page 57, lines 22 and 23 – change "Fisk" to "Fiske" – transcription error

Page 58, lines 12, 14, 15, 17, and 25 – change "Fisk" to "Fiske" – transcription error

Page 59, line 2 – change "Fisk" to "Fiske" – transcription error

Page 59, lines 3, 21, and 22 – change "FOGE" to "FOGEI" – transcription error

Page 59, line 8 –  change "hears this" to "here, it's" – transcription error

Page 60, line 9 – change "RL2plus" to "RL2 plus" – transcription error

Page 60, line 12 – change "RL2and" to "RL2 and" – transcription error

1

# EXHIBIT 1-C

Page 1

1              IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF TEXAS

2                      DALLAS DIVISION

3    EXXONMOBIL CORPORATION    )

                               )

4    vs.                       ) CASE NO. 3:16-cv-2921

                               )

5    UNITED STATES OF AMERICA  )

6

7    CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

8                     ORAL DEPOSITION

9                      ROBERT JORDAN

10                   February 14, 2019

11

12         ORAL DEPOSITION OF ROBERT JORDAN, produced as a

13   witness at the instance of the Defendant and duly

14   sworn, was taken in the above-styled and numbered

15   cause on the 14th day of February, 2019, from

16   9:06 a.m. to 1:55 p.m., before Shauna Foreman,

17   Certified Shorthand Reporter in and for the State of

18   Texas, reported by computerized stenotype machine at

19   the offices of Thompson & Knight, 811 Main Street,

20   Suite 2500, Houston, Texas, pursuant to the Federal

21   Rules of Civil Procedure and the provisions stated on

22   the record or attached hereto.

23

24

25

Page 2

```
 1                    A P P E A R A N C E S
 2
 3   FOR PLAINTIFF:
 4        WILLIAM E. KATZ, JR., ESQ.
          MARY McNULTY, ESQ.
 5        THOMPSON & KNIGHT
          1722 Routh Street
 6        Suite 1500
          Dallas, Texas  75201
 7        Telephone: 214-969-1700
          E-mail: william.katz@tklaw.com
 8
     FOR DEFENDANT:
 9
          CORY A. JOHNSON, ESQ.
10        DEPARTMENT OF JUSTICE, TAX DIVISION
          P.O. Box 26
11        Washington, D.C.  20044
          Telephone: 202-307-3046
12        E-mail: cory.a.johnson@usdoj.gov
13   ALSO PRESENT:
14        Jim Ferguson
          Chad Sillman
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                         INDEX
 2                                              PAGE
 3   ROBERT JORDAN
 4   Examination by Mr. Johnson .......................4
 5
 6                       EXHIBITS
 7
 8   NO.             DESCRIPTION                 PAGE
 9   Exhibit 1       Amended Exhibit A              7
     Exhibit 2       QG2 (RU 7814)/RL3 (RU 7085)/RL1   11
10                   (RU 7018)/RL2 (RU 7008)
     Exhibit 3       Qatar Purchase Payments       23
11                   Spreadsheet
     Exhibit 4       ExxonMobil Exploration &      36
12                   Producing Malaysia, Inc. (RU
                     0871) Spreadsheet
13   Exhibit 5       All PSCs Spreadsheet          44
     Exhibit 6       1995 PSC Spreadsheet          45
14   Exhibit 7       2008 Production Sharing       48
                     Contract
15   Exhibit 8       IFRS Financial Statements     59
                     Spreadsheet
16   Exhibit 9       Qatar Transaction 2009        67
                     Organization Chart
17   Exhibit 10      Form 1065                     80
     Exhibit 11      Spreadsheet EM6-90459723      86
18   Exhibit 12      Binder (Retained by Mr.      108
                     Johnson)
19
20           PREVIOUSLY MARKED EXHIBITS
21   Exhibit 506     (Previously Marked/Not        38
                     Attached)  2006 Form 1120
22   Exhibit 521     (Previously Marked/Not        33
                     Attached) Form 1120
23
24
25
```

Robert Jordan                                    February 14, 2019

                                              Page 4

 1                     ROBERT JORDAN,

 2   having been first duly sworn, testified as follows:

 3                     EXAMINATION

 4       Q.  (BY MR. JOHNSON)  Good morning.

 5       A.   Good morning.

 6       Q.   Could you tell us your name for the record?

 7       A.   Robert William Jordan.

 8       Q.   Okay.  We met earlier off the record.  My

 9   name's Cory Johnson.  I'm with the Justice

10   Department.  I'll be asking you some questions this

11   morning.

12                     Can you tell me where you're currently

13   employed?

14       A.   ExxonMobil Corporation.

15       Q.   Have you been deposed before?

16       A.   Never.

17       Q.   Okay.  Well, I'm sure you've met with your

18   attorneys and gotten some ground rules, but let me go

19   over a couple.

20                     As I said, I'm going to be asking you

21   some questions.  It would be helpful for the court

22   reporter if you make sure I'm done with my question

23   before you start answering, and I'll try and do the

24   same and not start another question and make sure

25   you're finished with your answer.

Page 59

1        A.   Yeah, I don't know.

2        Q.   Maybe you're better at this than I am.

3        A.   I don't know.  I recognize the --

4        Q.   What number are we on?  Maybe we can do it

5   with paper.  If not, we'll take some time on the

6   Excels or something.

7                 (Exhibit 8 marked)

8        Q.  (BY MR. JOHNSON)  We've marked as Exhibit 8,

9   Mr. Jordan, another Excel that was provided to us

10  that's one of the topics.

11       A.   Yes.

12       Q.   And I was trying to manipulate it

13  electronically but wasn't having too much success.

14  This is a printout of one of the tabs.

15                 Do you recognize this?

16       A.   I do.

17                 MR. KATZ:  Just so the record's clear,

18  can we just be real clear about which tab this is a

19  printout of and in which document?

20                 MR. JOHNSON:  Well, it is EM6-9388404.

21  Maybe this is it.  There it is.

22       A.   Yes.

23       Q.  (BY MR. JOHNSON)  So it's the Tab 5A, 2006

24  OFR.  And this is something you've seen before,

25  Mr. Jordan?

Page 60

1       A.   I have.

2       Q.   And what's your understanding of what it

3   is?

4       A.   The spreadsheet was developed in order to

5   track out the return -- the original return treatment

6   and mainly used to track the royalties from financial

7   statements to the 1120 we talked about earlier today.

8       Q.   Okay.  So was this something -- this

9   particular file created back when the original return

10  was done, or was it created in connection with this

11  case or some other time?

12      A.   In connection with this case.

13      Q.   Okay.  And do you know who prepared it?

14      A.   Richard Cavagnolo.

15      Q.   And I think you said it was prepared in

16  order to try to reconstruct where the original

17  reporting came from?

18      A.   Reconstruct or trace, verify where the

19  numbers were reported.

20      Q.   Okay.  And so, the first page of Exhibit 8,

21  the paper copy, is an income statement, correct?

22      A.   Correct.

23      Q.   Is that for one of the JVCOs?

24      A.   Correct.

25      Q.   And it's got indicated there under

Page 61

1    Expenses, royalties.

2              Do you see that?

3         A.   I do.

4         Q.   Okay.  And the sum was at 918 million for

5    2006?

6         A.   Correct.

7         Q.   And is it within that number the payments

8    to Qatar are included?

9         A.   Correct.

10        Q.   The payments under the DFAs or this DFA?

11        A.   Correct.

12        Q.   Okay.  And then towards the back -- six

13   pages from the back -- and I think I found it there

14   electronically.

15             Do you see that?

16        A.   I do.

17        Q.   That computation of other income?

18        A.   That's the 2459 I mentioned earlier.

19        Q.   Okay.  So there's a lot of tracing leading

20   up to this point in this exhibit?

21        A.   Yes, yes.

22        Q.   We'll skip over that.  But then can you

23   tell me what -- and I don't know why this is, but if

24   you look up on the electronics, there's a box by the

25   author that doesn't show up in the printout.  But

Robert Jordan                                     February 14, 2019

Page 62

1    could you tell me what's being represented there in

2    that other income computation?

3         A.   The other income, the four numbers there?

4         Q.   Yes, those four numbers and then there

5    appears to be a sum.

6         A.   Yeah, the 2459 billion.  That amount is --

7    and there's lots of data going back that will tie

8    those numbers out.  There's $3.5 billion of gross

9    receipts.

10        Q.   3.25?

11        A.   3.25 of gross receipts.  There's other

12   expenses that are netted, and that amount includes a

13   royalty component to offset that.  That's included in

14   gross receipts.

15        Q.   So the other expense amount includes a

16   royalty amount plus some other expenses?

17        A.   Yes.

18        Q.   Okay.

19        A.   If you go to the left, you can see it to

20   the dollar if you wanted to tie it all out.  Then

21   there's other U.S. tax adjustments of $5 million, and

22   then a reversal of 734,000 to get to a net number of

23   2,459 billion.

24        Q.   And I think if we look at the

25   second-to-last page, there's a red arrow coming from

Page 63

1  before where we see that 2.4 billion?

2        A.   Correct.

3        Q.   That seems to be a screen shot of the

4  pro forma 1120 for RasGas 2006?

5        A.   Correct.

6        Q.   Now going back to that page, the other

7  income comp that we were looking at, in the new

8  treatment the 3.2 billion of gross receipts doesn't

9  change?

10        A.   Correct.

11        Q.   Okay.  But there is now fewer other

12  expenses because the royalty is taken out of the

13  other expenses there?

14        A.   Royalties are taken out; but under the new

15  treatment, keep in mind that -- the royalties income

16  is included on gross receipts.  They are offset on

17  the other expenses.

18        Q.   Okay.

19        A.   So to get to the purchase treatment,

20  the -- the amount of the royalties are included as

21  income.

22        Q.   Right.

23        A.   So the Line 10 item would increase by the

24  amount of the royalties, which is a component of the

25  799.

1      Q.   Okay.  And then instead of the royalty

2   being subtracted there, there would be a subtraction

3   somewhere for the interest component and the

4   depletion expense component?

5      A.   Meaning on -- can you --

6      Q.   In the new treatment, the royalty in its

7   old amount is no longer subtracted and instead that

8   is split into an interest component and a depletion

9   expense component for that year?

10     A.   Correct.  But I think under the corrected

11  treatment, the interest would be on a different line

12  number on the federal return and the depletion would

13  be on another line number on the federal return.

14     Q.   Okay.

15     A.   But in taxable income, Line 30 would

16  reflect those three items.

17     Q.   Okay.

18     A.   Recognizing the royalties, then there's the

19  interest and then the depletion part of it.

20     Q.   So if we assume the royalty was 10, the

21  three components -- and let's assume that the

22  interest is 6 and depletable basis is 4 and the UOP

23  rate gets us 1 of completion that year, we would have

24  10 minus 7 under the new treatment?

25     A.   Yeah, the corrected treatment would give

Robert Jordan                                          February 14, 2019

Page 65

1   you the 10 minus the 7 to get you to the 3.

2        Q.   Right.  Instead of 10 minus 10, you would

3   have 10 minus 7?

4        A.   Correct.

5        Q.   Okay.

6        A.   Because basically the royalty -- under the

7   lease treatment, the royalty income and the royalty

8   payments net to zero.

9        Q.   And then the 3 that's not subtracted in

10  that first year is what we looked at earlier that's

11  sort of rolled over to the next year and subsequent

12  years?

13       A.   The principal component, the depletable.

14       Q.   Yes.  Using my example with the $3, that's

15  rolled over to the next year and then depleted at the

16  UOP rate that year and so on?

17       A.   Yes.  It's attached to the basis.

18       Q.   Right.  Okay.  Now, this exercise that

19  we're looking at in Exhibit 8 I think you said was

20  done in connection with this case.

21            Was a similar exercise done originally

22  for the original reporting?

23       A.   I don't follow your question.

24       Q.   Well, you said Exhibit 8 was done in

25  connection with this case?

Robert Jordan                                    February 14, 2019

Page 66

1       A.   It was prepared for -- within the last year

2   or two.  So yes.

3       Q.   So it wasn't done at the time of Exxon

4   preparing its 2006 return?

5       A.   No.  But I mean, if you look at the various

6   tabs, you've got all years there.  So it would have

7   been prepared in 2006, but they -- as information

8   taken from the various returns to consolidate it into

9   one Excel file.

10       Q.   Okay.  As I understand it, this document

11   was prepared recently for this case?

12       A.   Okay.

13       Q.   Is that right?

14       A.   Yes.

15       Q.   Okay.  Was something similar done in order

16   for Exxon to prepare its original 2006 return?

17       A.   Work papers would have been prepared.  But

18   was it similar or identical to this?  I don't know.

19       Q.   Okay.  Was -- were the JVCOs treated as

20   partnerships for purposes of Exxon's original 2006

21   return?

22       A.   Yes.

23       Q.   Okay.  And were they treated that way for

24   2007 through 2009 on the original returns?

25       A.   Yes.

Robert Jordan                    February 14, 2019

Page 116

1  issues that we need to get someone potentially

2  prepared to testify about or the issues we need to

3  give you a clear answer to.

4                MR. JOHNSON:  Okay.  Yeah, I can do it

5  by letter.

6                MR. KATZ:  I think that's probably the

7  quickest way we can get this resolved.

8                MR. JOHNSON:  Other than that, that's

9  it.

10                MR. KATZ:  Okay.  We'll reserve our

11  questions.

12        (Whereupon at 1:55 p.m. the

13        deposition was adjourned.)

14        (Signature not requested.)

15

16

17

18

19

20

21

22

23

24

25

Robert Jordan                                February 14, 2019

                                              Page 117

 1              IN THE UNITED STATES DISTRICT COURT

                FOR THE NORTHERN DISTRICT OF TEXAS

 2                      DALLAS DIVISION

 3   EXXONMOBIL CORPORATION    )

                               )

 4   vs.                       ) CASE NO. 3:16-cv-2921

                               )

 5   UNITED STATES OF AMERICA  )

 6

 7                  REPORTER'S CERTIFICATE

 8            ORAL DEPOSITION OF ROBERT JORDAN

 9                    February 14, 2019

10

11       I, Shauna Foreman, Certified Shorthand Reporter

12   in and for the State of Texas, hereby certify to the

13   following:

14       That the witness, Robert Jordan, was duly sworn

15   by the officer and that the transcript of the oral

16   deposition is a true record of the testimony given by

17   the witness;

18       That the original deposition was delivered

19   to Cory A. Johnson.

20       That a copy of this certificate was served on

21   all parties and/or the witness shown herein on

22   _____.

23       I further certify that pursuant to FRCP Rule

24   30(f)(1), the signature of the deponent:

25          ____was requested by the deponent or a party

Page 118

1    before the completion of the deposition and that the

2    signature is to be before any notary public and returned

3    within 30 days (or _____ days, per agreement of counsel)

4    from date of receipt of the transcript.  If returned, the

5    attached Changes and Signature page contains any changes

6    and the reasons therefor;

7           _____was not requested by the deponent or a

8    party before the completion of the deposition;

9        I further certify that I am neither counsel for,

10   related to, nor employed by any parties or attorneys

11   in the action in which this testimony is taken, and

12   further that I am not financially or otherwise interested

13   in the outcome of this action.

14       Certified to by me on this the 15th day

15   of February, 2019.

16

17

18                    Shauna Foreman, CSR

                      Texas CSR 3786

19                    Expiration:  10/31/2021

                      Veritext Legal Solutions

20                    300 Throckmorton Street

                      Suite 1600

21                    Fort Worth, Texas  76102

                      Tel. (817)336-3042

22                    Firm No. 571

23

24

25

## ROBERT JORDAN – ERRATA SHEET

Page 29, line 19 – change "enumerator" to "numerator" – transcription error

Page 40, line 6 – change "zero, some gain" to "zero sum game" – transcription error

Page 44, line 14 – change "481" to "411" – transcription error

Page 61, line 18 – change "2459" to "2.459" – transcription error

Page 62, line 6 – change "2459" to "2.459" – transcription error

Page 62, line 23 – change "2,459" to "2.459" – transcription error

Page 63, line 14 – change "new" to "lease" – transcription error

Page 74, line 11 – change "in kind" to "in-kind" – transcription error

Page 74, line 12 – change "in kind" to "in-kind" – transcription error

Page 74, line 18 – change "in kind" to "in-kind" – transcription error

Page 79, line 3 – change "enumerator" to "numerator" – transcription error

Page 90, line 12 – change "point" to "foreign" – transcription error

Page 91, line 9 – change "FEC" to "FTC" – transcription error

Page 91, line 20 – change "Cost" to "Cross" – transcription error

Page 92, line 6 – change "FEC" to "FTC" – transcription error

Page 92, line 6 – change "in" to "/" – transcription error

Page 92, line 7 – change "Exploration" to "Expiration" – transcription error

Page 96, line 3 – change "1998 credits expired in 1993" to "1993 credits expired in 1998" – transcription error

Page 104, line 3 – change "Tory" to "Troy" – transcription error

Page 104, line 12 – change "Schrieter" to "Schreiter" – transcription error

Page 104, line 25 – change "Havermann" to "Havemann" – transcription error

1

Page 105, line 3 – change "Carl Schlmaz" to "Karl Schmalz" – transcription error

Page 106, line 10 – change "Tori" to "Troy" – transcription error

Page 106, line 17 – change "Schrieter" to "Schreiter" – transcription error

Page 107, line 20 – change "Ian White" to "EY"

Robert W Jordan

Mr. Robert W. Jordan

3/19/19

Date

2

# EXHIBIT 1-D



**U.S. Department of Justice**

**Tax Division**

| | |
|---|---|
| *717 N. Harwood* | *Main Line: 214-880-9721* |
| *Dallas, Texas 75201* | *Attorney's Direct Line: 202-307-3046* |
| *Suite 400* | *Fax: 214-880-9741/9774* |

DAH:GH:CAJohnson
DJ 5-73-22415
CMN 2017100142

March 21, 2017

*Via Email*

Emily A. Parker
Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201

    Re:  *Exxon Mobil Corp. v. United States*
        No. 3:16-cv-02921; N.D. TX

Dear Emily:

    Pursuant to FRCP 26(a)(1)(A), this is to advise you that we have copies of certain documents which Exxon Mobil provided to the IRS during audit that we may use to support our defenses in this case. These include Forms 720, agreements concerning the Malaysian and Qatari transactions, and IDR responses. We also have tax returns and certified transcripts of account for the tax years at issue.

    Additionally, although we do not yet know the identity of individuals likely to have discoverable information that we may use to support our defenses, we believe that employees or former employees of Exxon Mobil and the entities and counter-parties involved in the Malaysian and Qatari transactions may have such information. We anticipate that discovery will reveal those individuals.

    Please do not hesitate to call me if you wish to discuss this further.

        Sincerely yours,

        *s/ Cory A. Johnson*

        CORY A. JOHNSON
        Senior Litigation Counsel

**App. 062**

- 2 -

cc:    Jonathan Blacker
        Joshua Smeltzer
        Kevin Kenworthy
        Bill Katz
        Mary McNulty
        Meghan Nylin
        George Hani

# EXHIBIT 1-E



**U.S. Department of Justice**

**Tax Division**

| | |
|---|---|
| *717 N. Harwood* | *Main Line: 214-880-9721* |
| *Dallas, Texas 75201* | *Attorney's Direct Line: 202-307-3046* |
| *Suite 400* | *Fax: 214-880-9741/9774* |

REZ:DIP:MMA:CAJohnson
DJ 5-73-22415
CMN 2017100142

November 14, 2018

*Via FedEx*

Emily A. Parker, Esquire
Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas,TX 75201-2533

    Re: *Exxon v. United States*
       <u>3:16-cv--2921; N.D. Tx.</u>

Dear Emily:

  As you know, we believe that supplementation of our disclosures is not required, because any additional or corrective information was otherwise made known during the discovery process. *See* FRCP 26(e)(1)(A). Additionally, we feel that your motion to compel was inappropriate and inconsistent with the rules. Nevertheless, in the interest of avoiding further dispute and resolving this issue as quickly as possible, we provide the following additional disclosures in resolution of your motion, which you should now withdraw.

  The individuals likely to have discoverable information that the United States may use to support its claims or defenses are those individuals listed in Exxon Mobil Corporation's Third Amended Disclosures (dated October 22, 2018), with the exception of David Foyt, and those listed in our letter of November 5, 2018. The United States also may rely on individuals, yet to be identified, from Exxon Mobil Corporation who provide testimony on the topics outlined in our recently served notice of deposition pursuant to FRCP 30(b)(6). The United States also may use any or all of the individuals identified in your response to Interrogatory No. 23 to support its claims or defenses.

- 2 -

As you know, we have not yet had the opportunity to depose any of these individuals. Accordingly, we refer you to your own descriptions of the knowledge they may have, or their prior interviews.

Additionally, in the Supplemental Complaint, Exxon alleges that the IRS did not comply with section 6751(b). We are puzzled that that could be an issue at this point. However, if Exxon intends to pursue some such argument, we may further rely on IRS employees Mary Ellen Brinkley-Diminich, Eileen Johnson and/ or Debra Tarr, who may be contacted through counsel for the United States. As you know, they have information about the initial determination of the section 6676 penalty and its approval. However, we are unsure whether any such information would be properly discoverable here, given the documents produced to date and Exxon's failure to identify any specific issue under section 6751(b). (Indeed, Exxon has known of their involvement in the penalty determination for months, and has not sought their depositions.) We are available to discuss whether any discovery is needed.

In addition to those previously disclosed, the documents the United States may use to support its claims or defenses are those currently produced, or yet to be produced, by Exxon in response to our requests for production of documents. We also may use the documents we previously produced to Exxon showing compliance with section 6751(b).

Sincerely yours,

*s/ Cory A. Johnson*

CORY A. JOHNSON
Senior Litigation Counsel

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

EXXON MOBIL CORPORATION,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

CIVIL ACTION NO. 3:16-cv-2921-N

_____

<u>**EXXON MOBIL CORPORATION'S THIRD AMENDED DISCLOSURES**</u>

Exxon Mobil Corporation ("<u>ExxonMobil</u>") makes these third amended disclosures to the

United States of America ("<u>Defendant</u>") in accordance with Federal Rule of Civil Procedure

26(a)(1).

A.     **The name and, if known, the address and telephone number of each individual likely to have discoverable information, along with the subjects of that information, that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

    1.    Stuart McGill
         Former President of ExxonMobil Gas & Power Marketing Company and Former Managing Director of Esso Production Malaysia, Inc.
         c/o Emily A. Parker
         Thompson & Knight LLP
         1722 Routh St., Suite 1500
         Dallas, Texas 75201
         (214) 969-1700

         Mr. McGill was the President of ExxonMobil Gas & Power Marketing Company and has knowledge regarding the liquefied natural gas ("<u>LNG</u>") operations in Qatar under various Development and Fiscal Agreements and Joint Venture Agreements between ExxonMobil (or its subsidiaries and affiliates) and the State of Qatar and Qatar Petroleum Company.  Mr. McGill was also the Managing Director of Esso Production Malaysia, Inc. and has knowledge regarding petroleum operations under various Production Sharing Contracts in Malaysia and regarding ExxonMobil's (or its subsidiaries and affiliates') historical operations in Malaysia.  Mr. McGill was involved in the decision to build the Terengganu Crude Oil Terminal in Malaysia.

**EXXON MOBIL CORPORATION'S THIRD AMENDED DISCLOSURES - Page 1**

2.      Ron Billings
Former Vice President, LNG for ExxonMobil Gas & Power Marketing Company
c/o Emily A. Parker
Thompson & Knight LLP
1722 Routh St., Suite 1500
Dallas, Texas 75201
(214) 969-1700

Mr. Billings was the Vice President, LNG for ExxonMobil Gas & Power Marketing Company and has knowledge regarding the LNG operations in Qatar under various Development and Fiscal Agreements and Joint Venture Agreements between ExxonMobil (or its subsidiaries and affiliates) and the State of Qatar and Qatar Petroleum Company. Mr. Billings further has knowledge regarding the negotiation and implementations of various LNG-related agreements involving ExxonMobil (or its subsidiaries and affiliates) in Qatar.

3.      Steven Kane
Treasurer, ExxonMobil Upstream Ventures
c/o Emily A. Parker
Thompson & Knight LLP
1722 Routh St., Suite 1500
Dallas, Texas 75201
(214) 969-1700

Mr. Kane is a Treasurer for ExxonMobil Upstream Ventures. During the relevant time period, Mr. Kane served as a Senior Finance Manager. Mr. Kane has knowledge regarding the financing of the LNG projects involving ExxonMobil (or its subsidiaries and affiliates) in Qatar. Mr. Kane also has knowledge regarding the Qatar LNG value chain.

4.      Liam Mallon
President of ExxonMobil Development Company
c/o Emily A. Parker
Thompson & Knight LLP
1722 Routh St., Suite 1500
Dallas, Texas 75201
(214) 969-1700

Mr. Mallon is the President of ExxonMobil Development Company. He was the Executive Chairman and Executive Director of Esso Malaysia Bhd. during the negotiation of the 2008 Production Sharing Contract. Mr. Mallon has knowledge regarding petroleum operations under various Production Sharing Contracts, the Main Principles Agreement, and related documents in Malaysia and regarding ExxonMobil's (or its subsidiaries and affiliates') historical operations in Malaysia.

5.      Phil Dingle
Former President, ExxonMobil Gas & Power Marketing Company and Former Chairman of Esso Production Malaysia, Inc.
c/o Emily A. Parker
Thompson & Knight LLP
1722 Routh St., Suite 1500
Dallas, Texas 75201
(214) 969-1700

Mr. Dingle was the President of ExxonMobil Gas & Power Marketing Company and has knowledge regarding the marketing of LNG produced under various Development and Fiscal Agreements and Joint Venture Agreements between ExxonMobil (or its subsidiaries and affiliates) and the State of Qatar and Qatar Petroleum Company. Mr. Dingle also served as the Chairman of Esso Production Malaysia, Inc. and has knowledge regarding petroleum operations under various Production Sharing Contracts and related documents in Malaysia and regarding ExxonMobil's (or its subsidiaries and affiliates') historical operations in Malaysia.

6.      Paige Merkle
Upstream Subject Matter Expert, Tax Reporting & Analysis Center, ExxonMobil
c/o Emily A. Parker
Thompson & Knight LLP
1722 Routh St., Suite 1500
Dallas, Texas 75201
(214) 969-1700

Ms. Merkle is the Upstream Subject Matter Expert for the Tax Reporting & Analysis Center for ExxonMobil and, in that role, is responsible for providing general support and guidance to team members in the application of tax laws and filing requirements. Ms. Merkle has responsibility for advising on tax return preparation and assisting the audit group with tax refund claim submissions, when needed. Ms. Merkle has reviewed how the payments to the State of Qatar and to Petroliam Nasional Berhad ("Petronas") were originally reported on ExxonMobil's 2006-2009 U.S. tax returns and ExxonMobil's policies and procedures regarding preparation and filing of ExxonMobil's tax returns reflecting the transactions at issue in Qatar and Malaysia. Ms. Merkle also has knowledge of the classification of assets as foreign oil and gas extraction income assets and foreign oil related income assets in Qatar and Malaysia and more generally and the policies and procedures underlying such classification. Ms. Merkle also has knowledge regarding the model supporting the computations on which ExxonMobil's 2006-2009 claims for refund are based, including the computation of imputed interest on the payments to the State of Qatar and Petronas, cost recovery deductions, and the allocation of interest between U.S. and foreign source income to calculate limits on foreign tax credits.

**EXXON MOBIL CORPORATION'S THIRD AMENDED DISCLOSURES - Page 3**

7.      Paul Sibal
        Chief Process Engineer, ExxonMobil Production Company
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

        Mr. Sibal was the Chief Process Engineer for ExxonMobil Production Company
        and, in that role, was responsible for the long-term technical health of the
        organization in process engineering.   Mr. Sibal formerly served as the
        Surveillance and Reliability Manager in ExxonMobil Production Company.  Prior
        to that time, he was the LNG Technology Supervisor and then the Gas
        Technologies Research Manager at Upstream Research Company.  Mr. Sibal has
        knowledge regarding gas and LNG production, natural gas liquids recovery, sour
        gas treating and sulfur recovery, LNG transportation and receiving terminal
        design and operation, and the LNG operations in Qatar involving ExxonMobil (or
        its subsidiaries and affiliates) in particular, including the LNG technology and the
        value added by the post-extraction processing of natural gas to convert it into
        LNG in Qatar.

8.      Ayob Yahaya
        Operations Facilities Engineering Advisor, ExxonMobil Exploration and
        Production Malaysia Inc. ("EMEPMI")
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

        Mr. Yahaya is an Operations Facilities Engineering Advisor for EMEPMI and, in
        that role, has been responsible for providing technical support for the operations
        of EMEPMI's offshore and onshore facilities in Malaysia.   Mr. Yahaya has
        historical and current knowledge regarding petroleum operations for the various
        upstream operations in Malaysia.

9.      David Norwood
        Production Controller, ExxonMobil
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

Mr. Norwood is the Production Controller for ExxonMobil.  He served as the Controller for ExxonMobil Qatar in 2007 and as the Business Services Manager for ExxonMobil Qatar from 2008-2012.  In his roles as Controller and Business Services Manager, Mr. Norwood was responsible for the financial reporting of ExxonMobil's (or its subsidiaries and affiliates') activities in Qatar.  Mr. Norwood has knowledge regarding the transactions at issue in Qatar, including how the payments to the State of Qatar were reported on ExxonMobil's 2006-2009 financial books and ExxonMobil's policies regarding financial reporting for the transactions at issue in Qatar.

10.     Gey Teng Lee
        Tax Advisor, EMEPMI
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

        Ms. Lee is a Tax Advisor for EMEPMI and, in that role, has been responsible for providing tax support on direct and indirect tax matters for the ExxonMobil affiliates in Malaysia. She currently leads the Goods and Service Tax reporting work for the Malaysian affiliates as well as Tax advisory support for the Malaysian Business Support Center and Chemical affiliate in Malaysia.

11.     Sri Halena Farid
        ExxonMobil Information Technology ("EMIT") Business Analysis and Reporting ("BAR") Billing Supervisor, ExxonMobil
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

        Ms. Farid is the EMIT BAR Billing Supervisor for ExxonMobil.  Ms. Farid worked in the Joint Interest Petronas Coordination Group of EMEPMI from 2009 – 2014 and served as a Joint Interest & Petronas Coordination Supervisor from 2012 – 2014.  Ms. Farid was responsible for ensuring the quarterly production sharing contract ("PSC") accounts were prepared accurately and timely, audited by PwC, and submitted to Petronas.  She was the focal point for Petronas audits conducted on EMEPMI's books and was responsible for ensuring proper control over the company's interest in operations under the PSCs.

12.     Renee Gonzalez
        Vice President and Assistant General Tax Counsel, ExxonMobil
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

        Ms. Gonzalez is a Vice President and the Assistant General Tax Counsel of
        ExxonMobil and, in that role, is responsible for legal counsel on ExxonMobil's
        U.S. federal and state income tax, property and excise tax controversies, state tax
        planning and legislative issues, and providing legal advice on discrete U.S.
        federal and state income tax issues. Ms. Gonzalez has knowledge about
        ExxonMobil's 2006 – 2009 claims for refund, the tax consequences of such
        claims to ExxonMobil, and the IRS examination of such claims, including the
        designation of such claims for litigation and the determination, assessment and
        payment of penalties.  Ms. Gonzalez also has knowledge of ExxonMobil's
        historic and current foreign tax credit position.  She also has knowledge of the
        Section 481 computations in the protective Forms 3115 Application for Change in
        Accounting Method filed on November 26, 2014.

13.     Robert Stall
        Valuation Principal, Ernst & Young
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

        Mr. Stall is a Valuation Principal and the U.S. Mining & Metals Leader for Ernst
        & Young and, in that role, is responsible for valuing business enterprises in
        numerous industries with a special focus on energy and the valuation of
        machinery and equipment and other tangible property assets.  Mr. Stall has
        knowledge of the fair market value valuation methodology performed by Ernst &
        Young and reflected in the annual valuation reports prepared by Ernst & Young
        for ExxonMobil's 2006 – 2009 tax years for purposes of apportioning interest
        expense using the fair market value method.

14.     Debra M. Tarr
        Internal Revenue Service
        c/o Cory A. Johnson
        Senior Litigation Counsel
        U.S. Department of Justice
        555 4th Street N.W., Room 8810
        Washington D.C. 20001
        (202) 307-3046

        Ms. Tarr is a Large Business & International ("LB&I") Team Manager for the
        Internal Revenue Service.  Ms. Tarr was responsible for auditing ExxonMobil's
        claims for refund related to the 2006-2009 tax years.  In Ms. Tarr's capacity as
        LB&I Team Manager, Ms. Tarr oversaw the issuance of information document
        requests and summonses to ExxonMobil regarding ExxonMobil's refund claims,
        participated in meetings with ExxonMobil regarding those refund claims, and has
        knowledge regarding the legal and factual bases on which ExxonMobil argued it
        was entitled to the refunds requested in this litigation during the audit.  Ms. Tarr
        also has information regarding the penalties imposed under Section 6676 of the
        Internal Revenue Code for ExxonMobil's 2006 – 2009 tax years.

15.     David Foyt
        Former Global Team Manager, Internal Revenue Service
        c/o Cory A. Johnson
        Senior Litigation Counsel
        U.S. Department of Justice
        555 4th Street N.W., Room 8810
        Washington D.C. 20001
        (202) 307-3046

        Mr. Foyt was a Global Team Manager for the Internal Revenue Service.  Mr. Foyt
        was responsible for auditing ExxonMobil's claims for refund related to the 2006-
        2009 tax years.  In Mr. Foyt's capacity as Global Team Manager, Mr. Foyt
        oversaw the issuance of information document requests and summonses to
        ExxonMobil regarding ExxonMobil's refund claims, participated in meetings
        with ExxonMobil regarding those refund claims, and has knowledge regarding the
        legal and factual bases on which ExxonMobil argued it was entitled to the refunds
        requested in this litigation during the audit.  Mr. Foyt also has information
        regarding the penalties imposed under Section 6676 of the Internal Revenue Code
        for ExxonMobil's 2006 – 2009 tax years.

The persons identified in Defendant's Initial Disclosures may be included as persons
whom ExxonMobil may use to support its claims in this lawsuit.  ExxonMobil reserves the right
to identify other persons or other subjects of information as discovery proceeds.

**EXXON MOBIL CORPORATION'S THIRD AMENDED DISCLOSURES - Page 7**

16.     Jeff Sengele
        Division Manager for Federal Income Tax Audit and State Income Tax Audit and
        Compliance, ExxonMobil
        c/o Emily A. Parker
        Thompson & Knight LLP
        1722 Routh St., Suite 1500
        Dallas, Texas 75201
        (214) 969-1700

        Mr. Sengele is the Division Manager for Federal Income Tax Audit and State
        Income Tax Audit and Compliance for ExxonMobil and, in that role, is
        responsible for ExxonMobil's U.S. federal and state income tax, property and
        excise tax controversies.  Ms. Sengele has knowledge about ExxonMobil's 2006 –
        2009 claims for refund, the tax consequences of such claims to ExxonMobil, and
        the IRS examination of such claims, including the designation of such claims for
        litigation and the determination, assessment and payment of penalties.

**B.      A copy of, or a description by category and location of, all documents, electronically
stored information, and tangible things that the disclosing party has in its
possession, custody, or control and may use to support its claims or defenses, unless
the use would be solely for impeachment.**

The following documents may be used by ExxonMobil to support its claims and have
been provided or will be provided within a reasonable time after service of these disclosures:

1.     ExxonMobil's consolidated Form 1120 U.S. Corporation Income Tax Return for
       taxable years 2006 through 2010, which are located in ExxonMobil's electronic
       files maintained by the Tax Reporting and Analysis Center ("TRAC");

2.     ExxonMobil's Form 1120X Amended U.S. Corporation Income Tax Return
       ("Form 1120X") for taxable years 2006 through 2009, which are located in
       ExxonMobil's electronic files maintained by the Tax Law, Appeals and Litigation
       group ("TLAL");

3.     ExxonMobil's Forms 843 Claim for Refund and Request for Abatement ("Forms
       843") for taxable years 2006 through 2009, which are located in ExxonMobil's
       electronic files maintained by TRAC and TLAL;

4.     Exxon Mobil Oil Corporation's Forms 720 Quarterly Federal Excise Tax Return
       for each quarter of taxable years 2008 and 2009, which are located in
       ExxonMobil's electronic files maintained by TLAL and by ExxonMobil's
       Indirect Tax group;

5.     Correspondence with, and documents provided to or from, the Internal Revenue
       Service ("IRS") regarding the issues described in ExxonMobil's Complaint and
       Supplemental Complaint and the Answer and Response filed by the United States,

which are located in ExxonMobil's electronic files maintained by TLAL and/or which have been or will be obtained by ExxonMobil through the discovery process or the Freedom of Information Act;

6.      The contractual agreements, including but not limited to Production Sharing Contracts and Joint Operating Agreements, between ExxonMobil (or its subsidiaries and affiliates) and Petronas and/or Petronas Carigali SDN BHD related to ExxonMobil's (or its subsidiaries and affiliates') exploration, development, production, transportation, processing, storage and marketing of crude oil and natural gas (and their products) in Malaysia, which are located in EMEPMI's electronic files or in EMEPMI's hard-copy files located in its office or in its secured offsite facility;

7.      The contractual agreements, including but not limited to the Development and Fiscal Agreements and Joint Venture Agreements, between ExxonMobil (or its subsidiaries and affiliates) and State of Qatar, Qatar Petroleum, Qatar General Petroleum Corporation, and/or any of the joint ventures formed pursuant to the Joint Venture Agreements related to ExxonMobil's (or its subsidiaries and affiliates') exploration, development, production, transportation, processing, storage and marketing of condensate and  LNG in Qatar, which are located in ExxonMobil's Qatari subsidiaries' electronic files and in hard-copy files maintained in ExxonMobil's Qatari subsidiaries' offices in Qatar;

8.      Financing documents referring to or reflecting capital investments made in Qatar under the various Development and Fiscal Agreements and Joint Venture Agreements, which are located in ExxonMobil's Qatari subsidiaries' electronic files and in hard-copy files maintained in ExxonMobil's Qatari subsidiaries' offices in Qatar;

9.      Any economic models used to analyze the value expected to be derived by ExxonMobil (or its subsidiaries and affiliates) from the investments made in Qatar under the various Development and Fiscal Agreements and Joint Venture Agreements, which are located in ExxonMobil's Qatari subsidiaries' electronic files and in hard-copy files maintained in ExxonMobil's Qatari subsidiaries' offices in Qatar;

10.     Any economic models used to analyze the value expected to be derived by ExxonMobil (or its subsidiaries and affiliates) from the investments made in Malaysia under certain Production Sharing Contracts, which are located in EMEPMI's electronic files or in EMEPMI's hard-copy files located in its office or in its secured offsite facility;

11.     Non-privileged internal memoranda, presentations, and accounting documents referring to or reflecting capital investments made under the various Development and Fiscal Agreements in Qatar, the value of the minerals up to, and including, the point of royalty calculation, and income from the sale of minerals and mineral products, which are located in ExxonMobil's Qatari subsidiaries' electronic files

**EXXON MOBIL CORPORATION'S THIRD AMENDED DISCLOSURES - Page 9**

and in hard-copy files maintained in ExxonMobil's Qatari subsidiaries' offices in Qatar;

12. Non-privileged internal memoranda, presentations, and accounting documents referring to or reflecting capital investments made under the various Production Sharing Contracts in Malaysia, the value of the minerals up to, and including, the point of royalty calculation, and income from the sale of minerals and mineral products, which are located in EMEPMI's electronic files or in EMEPMI's hard-copy files located in its office or in its secured offsite facility;

13. The Forms 3115 Application for Change in Accounting Method filed on November 26, 2014 and correspondence with, and documents provided to or from, the IRS regarding such Forms 3115, which are located in ExxonMobil's electronic files maintained by TLAL;

14. For tax periods ending December 31, 2006, 2007, 2008, and 2009, IRS Forms 4340, Certificate of Assessments, Payments and Other Specified Matters, and IRS Account Transcripts, including the MFTRA-C version, for Form 1120 and Civil Penalty, which are located in ExxonMobil's electronic files maintained by TLAL;

15. Documents reflecting the treatment of the payments to the State of Qatar and to Petronas on ExxonMobil's financial books for 2006 – 2009, which are located in ExxonMobil's files maintained in hard copy and electronically by EMEPMI and ExxonMobil's Qatari subsidiaries, and which are maintained electronically by TRAC;

16. The closing agreement between the IRS and ExxonMobil regarding the apportionment of interest under the fair market value methodology for ExxonMobil's 1989–2009 tax years and any exhibits thereto (the "Closing Agreement") and any correspondence with, and documents provided to or from, the IRS regarding the Closing Agreement and documents related to the apportionment of interest expense between U.S. and foreign source income for ExxonMobil's 2006 – 2009 tax years, which are located in ExxonMobil's electronic files maintained by TLAL and TRAC;

17. IRS documents relating to the penalties at issue in the case, including documents referring to or reflecting the absence of written managerial approval of the penalties, which are located in ExxonMobil's electronic files maintained by TLAL and TRAC and/or which have been or will be obtained by ExxonMobil through the discovery process or the Freedom of Information Act;

18. IRS documents, including internal IRS communications, regarding the issues described in ExxonMobil's Complaint and Supplemental Complaint and the Answer and Response filed by the United States, which are located in ExxonMobil's electronic files maintained by TLAL and TRAC and/or which have been or will be obtained by ExxonMobil through the discovery process or the Freedom of Information Act; and

19.     Documents produced in discovery by any party.

ExxonMobil reserves the right to identify other documents disclosed during discovery by any party or documents it subsequently determines are relevant to disputed facts in this action.

**C.     A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34, the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

ExxonMobil paid the total tax assessed for taxable years 2006 through 2009 as follows:

| Taxable Year | Tax Paid |
|---|---|
| 2006 | $3,695,187,422 |
| 2007 | $3,893,091,559 |
| 2008 | $1,741,428,305 |
| 2009 | $  139,912,688 |

By letter dated June 26, 2014, ExxonMobil timely submitted Form 1120X for 2006 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $264,720,803 plus statutory interest.

By letter dated June 26, 2014, ExxonMobil timely submitted Form 1120X for 2007 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $297,976,031 plus statutory interest.

By letter dated April 13, 2015, ExxonMobil timely submitted Form 1120X for 2008 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $652,852,400 plus statutory interest.

By letter dated April 13, 2015, ExxonMobil timely submitted Form 1120X for 2009 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of federal income tax of $138,971,996 plus statutory interest.

ExxonMobil paid the penalties assessed for taxable years 2006 through 2009 as follows:

| Taxable Year | Penalties Paid |
|---|---|
| 2006 | $52,944,161 |
| 2007 | $59,595,206 |
| 2008 | $81,771,720 |
| 2009 | $13,215,459 |

By letters dated September 23, 2016, March 3, 2017 and May 9, 2017, ExxonMobil timely submitted Forms 843 for 2006 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of penalties of $52,944,161 plus statutory interest.

By letters dated September 23, 2016, March 3, 2017 and May 9, 2017, ExxonMobil timely submitted Forms 843 for 2007 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of penalties of $59,595,206  plus statutory interest.

By letters dated September 23, 2016, March 3, 2017 and May 9, 2017, ExxonMobil timely submitted Forms 843 for 2008 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of penalties of $81,771,720 plus statutory interest.

By letters dated September 23, 2016, March 3, 2017 and May 9, 2017, ExxonMobil timely submitted Forms 843 for 2009 with the Internal Revenue Service Center in Ogden, Utah, claiming a refund of penalties of $13,215,459 plus statutory interest.

ExxonMobil seeks damages in the amount of the total of the claims for refund made in Forms 1120X and Forms 843 related to taxable years 2006 through 2009, or $1,562,047,776.00, or such other amount as is legally refundable, plus statutory interest as allowed by law.

**D.      For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Not applicable.

**E.      The correct names of the parties to the action.**

ExxonMobil believes the parties are correctly named.

**EXXON MOBIL CORPORATION'S THIRD AMENDED DISCLOSURES - Page 12**

**App. 078**

**F.**     **The name and, if known, address and telephone number of any potential parties to the action.**

None.

Dated: October 22, 2018

Respectfully submitted,

THOMPSON & KNIGHT LLP

By: */s/ Emily A. Parker*         
     Emily A. Parker
     State Bar No. 15482500
     emily.parker@tklaw.com
     Mary A. McNulty
     State Bar No. 13839680
     mary.mcnulty@tklaw.com
     William M. Katz, Jr.
     State Bar No. 00791003
     william.katz@tklaw.com
     J. Meghan Nylin
     State Bar No. 24070083
     meghan.nylin@tklaw.com
     Leonora S. Meyercord
     State Bar No. 24074711
     Lee.Meyercord@tklaw.com

1722 Routh Street, Suite 1500
Dallas, Texas  75201
 (214) 969-1700
FAX (214) 969-1751

MILLER & CHEVALIER, CHARTERED

     Kevin L. Kenworthy
     D.C. Bar No. 414887
     kkenworthy@milchev.com
     George A. Hani
     D.C. Bar No. 451945
     ghani@milchev.com
     Andrew L. Howlett
     D.C. Bar No. 1010208
     ahowlett@milchev.com

900 16th Street NW
Washington, D.C. 20006
(202) 626-5800
FAX (202) 626-5801

**ATTORNEYS FOR PLAINTIFF
EXXON MOBIL CORPORATION**

**EXXON MOBIL CORPORATION'S THIRD AMENDED DISCLOSURES - Page 14**

## CERTIFICATE OF SERVICE

I certify that on October 22, 2018, a true and correct copy of the foregoing document was served via e-mail on the following counsel of record:

CORY A. JOHNSON
Senior Litigation Counsel
U.S. Department of Justice
P.O. Box 26
Washington, D.C. 20044

JONATHAN L. BLACKER
JOSHUA D. SMELTZER
Trial Attorney, Tax Division
U.S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas 75201

*/s/ J. Meghan Nylin*
J. Meghan Nylin



**U.S. Department of Justice**

**Tax Division**

*Please reply to:*        *Court of Federal Claims Section*

*Trial Attorney :Cory A. Johnson*                                      *P.O. Box 26*
*Attorney's Direct Line: 202-307-3046*                     *Washington, D.C. 20044*
*Cory.A.Johnson@usdoj.gov*                                    *Fax No. 202-514-9440*
REZ:DIP:CAJohnson

November 5, 2018

Emily A. Parker, Esquire
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

              Re:    *Exxon Mobil v. United States*
                     <u>Case No. 3:16-cv-02921; N.D. Tex.</u>

Dear Emily:

      We are writing to ask that you confirm that you will not assert the default limit of 10 depositions in FRCP 30 with respect to depositions of the deponents listed below:

              Stuart McGill
              Ron Billings
              Steven Kane
              Liam Mallon
              Phil Dingle
              Paige Merkle
              Paul Sibal
              Ayob Yahaya
              David Norwood
              Gey Teng Lee
              Sri Halena Farid
              Renee Gonzalez
              Robert Stall
              Jeff Sengele
              Troy Babin
              Jaime Spellings
              James Schreiter
              Exxon per FRCP 30(b)(6)
              Any testifying experts disclosed by Exxon
              Barksdale Hortenstine

- 2 -

If you intend to assert the default limit, we will have to seek leave from the Court. Of course, as discovery progresses, there may be others we wish to depose as well. Finally, please confirm which deponents you would be representing and presenting.

If you wish to discuss further, please let me know. Thank you.

Sincerely yours,


*s/ Cory A. Johnson*

CORY A. JOHNSON
Senior Litigation Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORPORATION, | ) | |
| | ) | Case No. 3:16-cv-2921 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**PLAINTIFF EXXON MOBIL CORPORATION'S
OBJECTIONS AND RESPONSE TO DEFENDANT'S INTERROGATORY NO. 23**

Plaintiff Exxon Mobil Corporation ("ExxonMobil") serves the following objections and response to Interrogatory No. 23 served by Defendant United States of America ("Defendant").

**INTERROGATORY**

23.    Identify the following individuals, and for each individual identified give a detailed description of his/ her role:

(a)    all those involved in and responsible for determining how to report for federal income tax purposes items relating to the DFAs and PSCs in your original returns;

(b)    all those involved (whether Exxon employees or outside parties) in the consideration of seeking to change the federal income tax treatment of items relating to the DFAs and PSCs, including those involved in originating the idea of changed treatment, examining costs and benefits, computing tax results, and discovering any purported mistaken reporting.

**RESPONSE:** ExxonMobil objects to this interrogatory because the term "identify," as defined in Defendant's definitions, renders the interrogatory overly broad and unduly

burdensome and seeks information that is irrelevant to the issues in the lawsuit and invades the personal privacy of ExxonMobil's employees and other non-parties.  ExxonMobil further objects to this interrogatory because the phrases "all those involved with and responsible for," "all those involved (whether Exxon[Mobil] employees or outside parties) in the consideration of seeking to change," "those involved in originating the idea of changed treatment, examining costs and benefits, computing tax results, and discovering any purported mistaken reporting," and "items relating to the DFAs and PSCs" are vague and ambiguous and render the interrogatory overly broad and unduly burdensome.  ExxonMobil previously objected to this interrogatory because Defendant has exceeded the maximum number of interrogatories, including discrete sub-parts, permitted under Federal Rule of Civil Procedure 33(a)(1).  Pursuant to the agreed September 21, 2018 Order (Dkt. 96), ExxonMobil is now withdrawing its objection under Federal Rule of Civil Procedure 33(a)(1) and answering this interrogatory.

Without waiving the above objections, ExxonMobil responds to sub-part (a) as follows: The individuals listed below were the U.S. tax advisors assigned to the DFAs and PSCs when they were executed.

Malaysia:

- PM5 – 6/17/1988:
    - Steve Gibson
- PM8 – 6/17/1988
    - Steve Gibson
- PM9 –  12/7/1994
    - Joe Czajkowski
- 1995 PSC  - 12/7/1994
    - Joe Czajkowski
- GPSC  - 11/17/1998
    - Joe Czajkowski
- NGPSA – 11/17/1998
    - Joe Czajkowski
- 2008 PSC – 6/3/2009
    - Frank Anderson

Qatar:

- RL1 DFA – 12/20/1992
  - Dennis Bloomquist
- RL2 Original DFA - 3/27/2001
  - Troy Babin
- Sponsors' DFA – 7/2/2002
  - Troy Babin
- QG2 – 8/31/2004
  - Troy Babin / Jim Schrieter
- RL3 - 7/11/2005
  - Troy Babin / Jim Schrieter

Without waiving the above objections, ExxonMobil responds to sub-part (b) as follows: The table below identifies those individuals most involved in the decision to correct the federal income tax reporting of the DFAs and PSCs from mineral leases to purchases—including analyzing why the DFAs and PSCs were purchases, advising of the tax consequences of purchase treatment, computing the tax consequences of purchase treatment, and advising about how to correct the federal income tax reporting from mineral lease to purchase treatment—their titles, and their role.  In addition, the privilege logs identify other persons involved.

| Name | ExxonMobil Title | Role |
|---|---|---|
| Wayne Gardner | Tax Counsel | Advised of the generic consequences of purchase treatment |
| Troy J. Babin | Manager – Tax Law Division, Upstream Business Services; Senior Tax Counsel, Upstream Business Services | Analyzed why the DFAs and PSCs were purchases; advised of the tax consequences of purchase treatment; computed the tax consequences of purchase treatment; advised about how to correct the federal income tax reporting from mineral lease to purchase treatment |

| | | |
|---|---|---|
| Denny L. Wright | Senior Tax Counsel – Gas Power & Marketing | Analyzed why the DFAs and PSCs were purchases; reviewed tax consequences of purchase treatment |
| David J. Bolen | Tax Attorney, Tax Law, Appeals & Litigation (TLAL) | Analyzed why the DFAs and PSCs were purchases; advised of the tax consequences of purchase treatment; reviewed the tax consequences of purchase treatment; advised about how to correct the federal income tax reporting from mineral lease to purchase treatment |
| Tax Leadership Council (the members of the Tax Leadership Council who were most involved in the decision are listed in this chart) | | Recommended that the federal income tax reporting of the DFAs be corrected from mineral leases to purchases; reviewed and analyzed why the DFAs were purchases, the tax consequences of purchase treatment, and how to correct the federal income tax reporting from mineral lease to purchase treatment |
| Jaime M. Spellings | Vice President and General Tax Counsel (2010) | Made the decision to correct the federal income tax reporting of the DFAs and PSCs from mineral leases to purchases; reviewed and analyzed why the DFAs and PSCs were purchases, the tax consequences of purchase treatment, and how to correct the federal income tax reporting from mineral lease to purchase treatment |
| Charles S.  Felice | Upstream General Tax Counsel | Review and analyzed why the DFAs and PSCs were purchases, the tax consequences of purchase treatment, and how to correct the federal income tax reporting from mineral lease to purchase treatment |
| Carol A. Havemann | Associate General Tax Counsel | Reviewed and analyzed why the DFAs and PSCs were purchases, the tax consequences of purchase treatment, and how to correct the federal income tax reporting from mineral lease to purchase treatment |

| Steve LaSala | Vice president and General Tax Counsel (2007), Associate General Tax Counsel (2000) | Reviewed and analyzed purchase treatment of DFAs and PSCs |
|---|---|---|
| James G. Schreiter | Upstream Business Services – Tax | Analyzed why the PSCs were purchases; advised of the tax consequences of purchase treatment; computed the tax consequences of purchase treatment |
| Tim C. Raymond | Manager – Tax Law Division | Analyzed why the DFAs and PSCs were purchases |
| Greg A. Williamson | Upstream Business Services | Analyzed why the PSCs were purchases; advised of the tax consequences of purchase treatment |
| Jason R. Turpen | Senior Tax Attorney, Tax Attorney, Upstream Business Services – Tax | Analyzed why the DFAs and PSCs were purchases; advised of the tax consequences of purchase treatment |
| Eric S. Powell | Senior Tax Attorney, Tax Law Appeals and Litigation (TLAL) | Analyzed why the DFAs and PSCs were purchases; advised of the tax consequences of purchase treatment; computed the tax consequences of purchase treatment |
| Alton J. Fleming | Senior Finance Manager, Upstream Treasurer | Computed the tax consequences of purchase treatment |
| Charles T. Fee, Jr. | Assistant General Tax Counsel – Tax Law, Appeals & Litigation | Reviewed and analyzed why the DFAs and PSCs were purchases, the tax consequences of purchase treatment, and how to correct the federal income tax reporting from mineral lease to purchase treatment |
| Renee E. Gonzalez | Assistant General Tax Counsel – Tax Law, Appeals & Litigation (TLAL) | Reviewed and analyzed why the DFAs and PSCs were purchases, the tax consequences of purchase treatment, and how to correct the federal income tax reporting from mineral lease to purchase treatment |
| A.C. Fertitta | Tax Attorney | Analyzed why the PSCs were purchases; advised of the tax consequences of purchase treatment; computed the tax consequences of purchase treatment of PSCs |

| Michael A. Wolf | Tax Counsel – Upstream Business Services | Analyzed why the DFAs and PSCs were purchases |
| Larry Lightfield | Global Direct Tax Process Owner, Tax Reporting & Analysis Center (TRAC) | Computed the tax consequences of purchase treatment for DFAs |
| Leigh Ann Collins | Tax Accountant, Tax Reporting & Analysis Center (TRAC) | Computed the tax consequences of purchase treatment for DFAs |
| A.O. Anchondo | Senior Tax Advisor, Tax Reporting & Analysis Center (TRAC) | Computed the tax consequences of purchase treatment for DFAs and PSCs |
| Tupil V Narasiman | Senior Tax Advisor, Tax Law, Appeals & Litigation (TLAL) | Computed the tax consequences of purchase treatment of PSCs and DFAs |
| Badri N. Sashti | Tax Advisor, Tax Reporting & Analysis Center (TRAC) | Submitted Qatar TPA 0602 for 2008-2009 |
| Gary Thompson | Federal Domestic Tax Audit Adviser | Submitted Malaysia TPA 0623 for 2008-2009 |
| Anne Agoh | Tax Analyst, Tax Reporting & Analysis Center (TRAC) | Computed the tax consequences of purchase treatment of PSCs |
| Jeff Sengele | Audit Manager, Tax Reporting & Analysis Center (TRAC) | Reviewed and analyzed why the DFAs and PSCs were purchases and the tax consequences of purchase treatment |
| Lynn A. Smothers | Income Tax Audit Manager, Tax Reporting & Analysis Center (TRAC) | Reviewed and analyzed why the DFAs and PSCs were purchases and the tax consequences of purchase treatment |
| **Name** | **Ernst & Young Title** | **Role** |
| Barksdale Hortenstine | Partner | Advised on the tax treatment of the DFAs and PSCs |
| Telma Henry | Senior Manager | Advised on the tax treatment of the DFAs and PSCs |
| Deborah L. Byers | Partner, International Tax Services | Advised of the tax consequences of purchase treatment; computed the tax consequences of purchase treatment |

| Chetan Vagholkar | Partner (2008), Senior Manager | Advised of the tax consequences of purchase treatment; computed the tax consequences of purchase treatment |
| Larry M. Eshleman | Executive Director, Tax | Computed the tax consequences of purchase treatment |
| Andreas Pecher | Partner and Principal | Computed the tax consequences of purchase treatment |
| Steve Gertzman | National Director of Federal Tax Accounting | Advised about how to correct the federal income tax reporting from mineral lease to purchase treatment |

Respectfully submitted,

THOMPSON & KNIGHT LLP

By:   */s/ Emily A. Parker*
        Emily A. Parker
        State Bar No. 15482500
        emily.parker@tklaw.com
        Mary A. McNulty
        State Bar No. 13839680
        mary.mcnulty@tklaw.com
        William M. Katz, Jr.
        State Bar No. 00791003
        william.katz@tklaw.com
        J. Meghan Nylin
        State Bar No. 24070083
        meghan.nylin@tklaw.com
        Leonora S. Meyercord
        Texas Bar No. 24074711
        lee.meyercord@tklaw.com
1722 Routh Street, Suite 1500
Dallas, Texas  75201
(214) 969-1700
FAX (214) 969-1751

MILLER & CHEVALIER, CHARTERED

        Kevin L. Kenworthy
        D.C. Bar No. 414887
        kkenworthy@milchev.com
        George A. Hani
        D.C. Bar No. 451945
        ghani@milchev.com
        Andrew L. Howlett
        D.C. Bar No. 1010208
        ahowlett@milchev.com
900 16th Street NW
Washington, D.C. 20006
(202) 626-5800
FAX (202) 626-5801

**ATTORNEYS FOR PLAINTIFF
EXXON MOBIL CORPORATION**

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was served via e-mail on all counsel of record on

October 22, 2018.


_____*/s/ J. Meghan Nylin*_____
J. Meghan Nylin

## VERIFICATION

My name is Charles S. Felice. I am employed as Upstream General Tax Counsel for ExxonMobil. In this capacity, I have personal knowledge regarding the individuals who made the decision to report the Qatar and Malaysia transactions as mineral leases on ExxonMobil's original returns for federal income tax purposes and those individuals most involved in the decision to correct the federal income tax reporting of those transactions from mineral leases to purchase. As such, I am qualified and authorized to make this verification. I verify that I have read the above interrogatory answers; that the answers were prepared with the assistance and advice of legal counsel; that the information contained in the answers was furnished by various employees of ExxonMobil or was derived from business records maintained by ExxonMobil; that, while I do not have personal knowledge of each of the facts recited in the answers, they are true and correct to the best of my knowledge; and that these answers constitute the corporate response of ExxonMobil.

I declare under penalty of perjury that the foregoing verification is true and correct.

Executed on October 22, 2018.

Charles S. Felice