IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EXXON MOBIL CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-2921-N |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses Defendant United States of America's (the "Government") motion for partial summary judgment on penalties [258] and Plaintiff Exxon Mobil Corp.'s ("Exxon Mobil") motions for partial summary judgment on penalties [261] and for additional findings [277].

## I. BACKGROUND

The background is set forth in greater detail in this Court's Findings of Fact and Conclusions of Law (Feb. 24, 2020) [276] ("FFCL"). In short, Exxon Mobil was involved in multiple oil and gas ventures in Qatar and Malaysia, which for tax purposes were treated as partnerships and reported on Exxon Mobil's consolidated tax returns. Exxon Mobil had historically treated those transactions as mineral leases. In June 2014 and April 2015, Exxon Mobil filed amended tax returns treating the transactions as purchases for tax years 2006-09. The IRS disallowed the refund claims in May 2016, contending that the transactions were mineral leases and that the change in treatment was an impermissible

change in accounting method. The IRS later imposed a penalty under 26 U.S.C. § 6676 of approximately $200 million. Exxon Mobil then filed this refund action.

The Court bifurcated the refund issues from the penalty issue. The Court held a bench trial on the refund issues and found for the Government. The Court determined that the transactions were primarily mineral leases, and thus did not need to reach the change in accounting method issue. *See* FFCL. The parties now have both moved for summary judgment on the penalty issue.

## II. "REASONABLE BASIS" IN SECTION 6676

### *A. Basics*

Section 6676 of the Code was originally enacted in 2007 to plug a perceived penalty hole. As originally enacted, it provided, in pertinent part:

> SEC. 6676. ERRONEOUS CLAIM FOR REFUND OR CREDIT.
> (a) CIVIL PENALTY.—If a claim for refund or credit with respect to income tax (other than a claim for a refund or credit relating to the earned income credit under section 32) is made for an excessive amount, unless it is shown that the claim for such excessive amount has a reasonable basis, the person making such claim shall be liable for a penalty in an amount equal to 20 percent of the excessive amount.

IRC § 6676(a) (2007) (Pub. L. 110-28 § 8247, 121 Stat. 190, 204 (2007)). Neither the statute nor the implementing regulations define "reasonable basis." In 2015, Congress amended the "reasonable basis" language:

> IN GENERAL.—Section 6676(a) is amended by striking "has a reasonable basis" and inserting "is due to reasonable cause".

MEMOORANDUM OPINION AND ORDER – PAGE 2

Pub. L. 114-113, Div. Q, Title II, § 209(c)(1), 129 Stat. 3040, 3085 (2015).  The parties agree that the "reasonable basis" language controls here, but they disagree as to what exactly that means.

The IRS has advised that "reasonable basis" in section 6676 (before the 2015 amendment) has the same meaning as reasonable basis in section 6662, as defined in Treas. Reg. § 1.6662-4(e)(2)(i).  *See* IRS Program Manager Technical Advice 2014-15, at 5-6 (August 6, 2014), *available at* https://www.irs.gov/pub/lanoa/PMTA-2014-015.pdf.  That section incorporates by reference the definition of Treas. Reg. § 1.6662-3(b)(3), which provides:

> (3) Reasonable basis. Reasonable basis is a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper. The reasonable basis standard is not satisfied by a return position that is merely arguable or that is merely a colorable claim. If a return position is reasonably based on one or more of the authorities set forth in § 1.6662–4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in § 1.6662–4(d)(2). (See § 1.6662–4(d)(3)(ii) for rules with respect to relevance, persuasiveness, subsequent developments, and use of a well-reasoned construction of an applicable statutory provision for purposes of the substantial understatement penalty.) In addition, the reasonable cause and good faith exception in § 1.6664–4 may provide relief from the penalty for negligence or disregard of rules or regulations, even if a return position does not satisfy the reasonable basis standard.

Treas. Reg. § 1.6662-3(b)(3).  The authorities listed in Treas. Reg. § 1.6662-4(d)(3)(iii) are set forth in the margin.[1]

---

[1] "Applicable provisions of the Internal Revenue Code and other statutory provisions; proposed, temporary and final regulations construing such statutes; revenue rulings and revenue procedures; tax treaties and regulations thereunder, and Treasury Department and

MEMOORANDUM OPINION AND ORDER – PAGE 3

The reasonable basis test is one of several under the IRC for evaluating taxpayer positions. *See Chemtech Royalty Assocs. v. United States*, 823 F.3d 282, 287, 290 (5th Cir. 2016) (citing Treas. Reg. §§ 1.6662-3(b)(3), 1.6662-4(d)(2)). These standards are on a continuum, from highest to lowest, as follows:

more likely than not

substantial authority

reasonable basis

not frivolous

*See id.* Thus, although reasonable basis "is a relatively high standard of tax reporting," Treas. Reg. § 1.6662-3(b)(3), it is nonetheless the second lowest standard.

### B. Subjective vs. Objective

The Government argues that this Court should overlay a subjective element on "reasonable basis," as the Eighth Circuit did in *Wells Fargo & Co. v. United States*, 957 F.3d 840 (8th Cir. 2020). *Wells Fargo* concerned a negligence penalty under IRC § 6662, which also has a "reasonable basis" defense. The *Wells Fargo* court relied on a linguistic

---

other official explanations of such treaties; court cases; congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers; General Explanations of tax legislation prepared by the Joint Committee on Taxation (the Blue Book); private letter rulings and technical advice memoranda issued after October 31, 1976; actions on decisions and general counsel memoranda issued after March 12, 1981 (as well as general counsel memoranda published in pre–1955 volumes of the Cumulative Bulletin); Internal Revenue Service information or press releases; and notices, announcements and other administrative pronouncements published by the Service in the Internal Revenue Bulletin. Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority." Treas. Reg. § 1.6662-4(d)(3)(iii)

MEMOORANDUM OPINION AND ORDER – PAGE 4

analysis of the regulation: the section "provides a defense to the negligence penalty only when the taxpayer's 'return position is reasonably *based* on one or more of the [relevant] authorities.'" *Id.* at 852 (quoting Treas. Reg. § 1.6662-3(b)(3), emphasis and alteration in original). Relying on Black's Law Dictionary's definition of "base," the court held that "in order to 'base' a return position on particular legal authority, a taxpayer must show that it actually relied upon those authorities in forming its position." *Id.*

There are two problems with importing the *Wells Fargo* holding from IRC § 6662 into IRC § 6676. First, section 6662 deals with penalties for negligence. "For purposes of this section, the term 'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title . . . ." IRC § 6662(c). *Accord* Treas. Reg. § 1.6662-3(b)(1) ("The term negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. 'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly."). Section 6662 thus inherently focuses on the taxpayer's subjective conduct. *See Wells Fargo*, 957 F.3d at 852 ("'a 'negligence penalty' . . . suggests that the focus of the inquiry must be, at least in part, on the taxpayers actual conduct").

Section 6676, in contrast, focuses on whether the *claim* had a reasonable basis, not on whether the *taxpayer* had a reasonable basis. *Accord* IRS Program Manager Technical Advice 2010-03, at 2-3 (Feb. 26, 2010), *available at* https://www.irs.gov/pub/lanoa/ pmta_2010-03.pdf ("Whether a claim has a reasonable basis, however, is not dependent on the subjective state of mind of the taxpayer presenting the claim or the actions of the

MEMOORANDUM OPINION AND ORDER – PAGE 5

taxpayer in determining the appropriateness of the claim. The statute requires an examination of the claim itself to determine whether it has a reasonable basis."). Thus, the difference in the statutory texts counsels against migrating *Wells Fargo* from section 6662 to section 6676.

Second, the scant legislative history for section 6676 argues against importing the *Wells Fargo* construction of section 6662 into section 6676.[2] The Court was unable to locate any formal legislative history for the 2015 amendment to section 6676 in the form of congressional committee reports. Two commentators have explained the 2015 amendment as follows:

> The change from the objective reasonable basis exception to a subjective reasonable cause exception had been recommended by, among others, the National Taxpayer Advocate for years.[748] Imposing a penalty without taking into account the taxpayer's particular facts and circumstances was considered to impair their right to a fair and just tax system.
>
> Although reasonable basis is not defined, the IRS has stated that, because the §6676 penalty is intended to supplement the §6662 accuracy-based penalties, it generally has the same meaning.[749] Accordingly, reasonable basis generally is a relatively high standard that is significantly higher than not frivolous or not patently improper, but does not have to be supported by substantial authority. A return position that is merely arguable or that is merely a colorable claim does not qualify. Generally, there is a reasonable basis for a return position that is reasonably based on one or more of the authorities set forth in Reg. §1.6662-4(d)(3)(iii), taking into account the relevance and persuasiveness of the authorities and subsequent developments.[750]

---

[2] The Court found no useful history regarding the 2007 enactment of section 6676. *See* STAFF OF JOINT COMM. ON TAXATION, 111th Cong., GENERAL EXPLANATION OF TAX LEGISLATION ENACTED IN THE 110TH CONGRESS 36-37 (Comm. Print 2009) (JCS-1-09), *available at* https://www.jct.gov/publications/2009/jcs-1-09/. It was a small part of an omnibus appropriations bill, and most of the available history deals with other aspects of that bill. *See also* H.R. Rep. No. 110-168 § 8247, at *76-77 (May 24, 2007).

MEMOORANDUM OPINION AND ORDER – PAGE 6

---

[748] National Taxpayer Advocate, Annual Report to Congress (Legislative Recommendation: Amend the Erroneous Refund Penalty to Permit Relief in Case of Reasonable Cause for Claim to Refundable Credits) at 544 (Dec. 31, 2011), National Taxpayer Advocate, Annual Report to Congress (Legislative Recommendation: Amend Section 6676 to Permit Reasonable Cause Relief) at 351 (Dec. 31, 2014); AICPA Legislative Proposals, Tax Penalty Legislative Proposals (Apr. 11, 2013); 2015 IRSAC Large Business and International Report.
[749] PMTA 2014-15; IRM 20.1.5.18(9) (04-22-19).
[750] See Reg. §1.6662-3(b)(3). See discussion at IV.B.3.a., above.

Alan J. Tarr & Pamela Jensen Drucker, BNA Tax Portfolio 634-3rd Civil Tax Penalties, *available at* https://www.bloomberglaw.com/product/tax/document/2698274344.

The cited National Taxpayer Advocate[3] 2014 Annual Report to Congress explains that "reasonable basis" is an objective test that penalizes unsophisticated lay taxpayers who are doing their best to comply, but may not have a reasonable basis, as defined in the regulations: "Section 6676 does not appear to require the IRS to take into account all the facts and circumstances, including the taxpayer's knowledge and experience with tax law and his or her efforts to comply with the law, in determining whether there was such reasonable basis."  National Taxpayer Advocate, Annual Report to Congress (Legislative Recommendation: Amend Section 6676 to Permit Reasonable Cause Relief) at 351 (Dec. 31, 2014), *available at*  https://www.taxpayeradvocate.irs.gov/wp-content/uploads/2020/08/2014-ARC_VOL-1_S2_LR-8-508.pdf (last visited Jan. 7, 2021).

---

[3] "The Taxpayer Advocate Service (TAS) is an independent organization within the Internal Revenue Service (IRS). Our job is to ensure that every taxpayer is treated fairly and that you know and understand your rights."
https://taxpayeradvocate.irs.gov/about-us/ (last visited Jan. 7, 2021).

The Report recommended precisely the language change adopted by Congress in 2015. Thus, the Report appears to be the most authoritative legislative history available. *See also* AICPA, *Tax Penalties Legislative Proposals* at 5 (April 11, 2013), *available at* https://www.aicpa.org/Advocacy/Tax/TaxLegislationPolicy/DownloadableDocuments/ AICPA-legislative-proposals-penalties-2013.pdf (making similar proposal) (last visited Jan. 7, 2021).

The legislative history, such as it is, teaches against extending the *Wells Fargo* holding to pre-amendment section 6676. There would be no reason to amend section 6676 in 2015 to provide for a subjective standard if that section already embodied a subjective standard. The Court thus declines the Government's proposal to apply a subjective gloss to pre-amendment section 6676.

### III. EXXON MOBIL HAD A REASONABLE BASIS FOR ITS CLAIMS

#### A. Sale vs. Mineral Lease

The Court has already discussed at length Exxon Mobil's position that the transactions were sales and not mineral leases. *See generally* FFCL. The Court acknowledged that this is "an extremely complex case, both factually and legally." *Id.* at 25. Although the Court ultimately rejected Exxon Mobil's position, it was only with considerable analysis. The Court readily holds that Exxon Mobil's sale vs. mineral lease position was reasonably based on one or more of the authorities set forth in Treas. Reg. § 1.6662–4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments). *See generally* FFCL; *see also* Exxon Mobil Briefing [dkt.

175, 257-1, 257-2, 257-3]. The Court therefore denies the Government's motion and grants Exxon Mobil's motion on this point.

### B. Change in Accounting Method

The Court must take a bit more time with the change in accounting method issue, as it has not previously addressed that issue. IRC § 446(e) provides: "Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary." Exxon Mobil did not seek or obtain approval from the Secretary before filing its refund claims that changed the treatment of the Qatar and Malaysia transactions from mineral leases to sales. The question before the Court is whether Exxon Mobil has a reasonable basis for its contention that the change in treatment from mineral lease to sale was not a change in accounting method.[4]

Exxon Mobil generally points to its briefing on the merits of the change in accounting issue to support its current argument that it had a reasonable basis. *See, e.g.*, Pl. Exxon Mobil's Brief in Support of Mot. for Partial Summ. J. Regarding Penalties at 12 [262] (citing to merits briefs at docket nos. 125, 178, 241, 242, 257-1, 257-2, 257-3). The Court generally agrees that Exxon Mobil's merits briefing reflects a reasonable basis.

---

[4] The Government makes much of the fact that Exxon Mobil's position on this has evolved over time. While the Court acknowledges the rhetorical force of that claim, it is not directly pertinent to the question before the Court. Because there is no subjective element to the reasonable basis inquiry, *see supra* Part II.B, it does not affect the Court's determination if Exxon Mobil articulated a different position in its pre-suit dealings with the IRS.

MEMOORANDUM OPINION AND ORDER – PAGE 9

Because the Court is not ruling on the merits of the change in accounting issue, it is not necessary for the Court to analyze in detail all of Exxon Mobil's briefing. One example suffices.

In *Plaintiff Exxon Mobil Corporation's Response to Government's Motion and Reply in Support of Exxon Mobil Corporation's Motion for Partial Summary Judgment on Change in Method of Accounting* 2-4 [178] Exxon Mobil argues that a change in method of accounting deals with *when*, not *whether*, an item is includable in income or allowed as a deduction. In support of that proposition, Exxon Mobil cited to: *Tate & Lyle, Inc. v. Comm'r*, 103 T.C. 656, 668-69 (1994), *rev'd on other grounds*, 87 F.3d 99 (3d Cir. 1996); *Knight-Ridder Newspapers, Inc. v. United States*, 743 F.2d 781, 798 (11th Cir. 1984). The Court holds that Exxon Mobil reasonably cited those cases for that proposition.[5]

*Tate & Lyle* dealt with whether a taxpayer should deduct interest owed to its foreign parent in the tax year when it accrued or in the tax year when it was paid. 103 T.C. at 657. The pertinent part of that opinion dealt with IRC § 267(a)(2), which also uses the term "method of accounting." *Id.* at 667-68.

> The accrual and cash methods of accounting (and any combination thereof) are procedures and rules governing the timing of items of income and deductions. The underlying assumption of requiring that taxable income be determined by the taxpayer's "method of accounting" and that the method "clearly reflect income" is that the method of accounting involves *when* an item of income or expense is to be reported for tax purposes. *See Schlude v. Commissioner*, 283 F.2d 234, 236–237 (8th Cir. 1960), revg. 32 T.C. 1271 (1959), vacated on other issue 367 U.S. 911 (1961). Indeed, section 1.446–1(e)(2)(ii)(a) and (b), Income Tax Regs., provides that a change in a method of accounting involves the proper time for the inclusion of an item of income

---

[5] Exxon Mobil also cited *W.A. Holt Co. v. Comm'r*, 368 F.2d 311, 312 (5th Cir. 1966) as support for that proposition. The Court finds that citation more problematic.

MEMOORANDUM OPINION AND ORDER – PAGE 10

or the taking of a deduction. *See Wayne Bolt & Nut Co. v. Commissioner*, 93 T.C. 500 (1989).

The total exclusion of an item from the recipient's gross income is a question of characterization that is unrelated to the taxpayer's method of accounting. In *Underhill v. Commissioner*, 45 T.C. 489, 496 (1966), we stated:

> Critical to respondent's position is a determination that the situation involves a "method of accounting"—a phrase which, at times, appears to have certain chameleon qualities. Whatever may be the subtleties of a "method of accounting" we do not think that they concern us in the instant situation. The issue before us is the extent to which payments received by * * * [the taxpayer] are taxable or nontaxable—i.e., the character of the payment—not the proper method or time of reporting an item the character of which is not in question. * * * [Citations omitted.]

The characterization of an item determines *whether* that item is includable or not includable in gross income. A method of accounting for income only determines *when* an item is includable in income.

*Id.* at 668-69 (emphasis in original). *Tate & Lyle* thus supports Exxon Mobil's position that a method of accounting change relates to when, not whether, at item is properly included in income or allowed as a deduction.[6]

*Knight-Ridder* dealt in part with whether an advertising rebate reserve was an accounting method or an improper deduction. 743 F.2d at 797. That distinction affected whether certain IRS claims were barred by limitations. The court noted:

> The Internal Revenue Code does not specifically define an "accounting method." However, the implementing regulations provide:
>
>> A change in accounting method includes a change in the overall plan of accounting for gross income or deductions or a

---

[6] The Third Circuit reversed on the basis that a Treasury Regulation otherwise in issue was not arbitrary or capricious and that the retroactive application of that regulation did not violate due process. 87 F.3d 99 (1996).

MEMOORANDUM OPINION AND ORDER – PAGE 11

> change in the treatment of a *material item* used in such overall plan . . . .
> A material item is any item which *involves the proper time for the inclusion of the item in income or the taking of a deduction*.

Treas. Reg. § 1.446–1(e)(2)(ii)(a); 26 C.F.R. § 1.446–1(e)(2)(ii)(a) (1983) (emphasis added); *see also* Treas. Reg. § 1.481–1(a)(1); 26 C.F.R. § 1.481(a)(1) (1983). The essential characteristic of a "material item" is that it determines the timing of income or deductions. *See* [4 B. Bittker, *Federal Taxation of Income, Estates and Gifts*] ¶ 105.6.2, at 124–25 [(1980)].

*Id.* at 797-98 (footnotes omitted). *Knight-Ridder* thus also supports Exxon Mobil's position that an accounting method change affects when items appear in income, not whether items appear in income.

Based on that understanding of method of accounting change, Exxon Mobil argued that, in a mineral lease, the lessor's share of production never comes into the lessee's income or out as a deduction. In a sale transaction, though, all production comes into the buyer's income; the parties debate the subsequent tax consequences, but those are not material to this point. The issue from Exxon Mobil's perspective is not what happens subsequently, but rather that production that was not part of Exxon Mobil's income under a mineral lease treatment becomes part of Exxon Mobil's income under sale treatment. It thus is not an issue of *when* it is income or a deduction, but *whether* it is income. Thus, according to Exxon Mobil's argument, the change from mineral lease to sale treatment is not a change in method of accounting.

The Government certainly had responses to this argument, and were the Court to decide the merits of the change in accounting method argument, it would need to consider the relative merits of Exxon Mobil's and the Government's arguments. Here it is sufficient

to hold that Exxon Mobil had colorable support for its legal contention that a change that affects *whether*, not *when*, an item comes into income is not an impermissible change in accounting method; Exxon Mobil further had a factual basis to argue that the change from mineral lease to sale treatment was a whether, not when, change and thus not an impermissible change in accounting method. "If a return position is reasonably based on one or more of the authorities set forth in § 1.6662–4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard . . . ." Treas. Reg. § 1.6662-3(b)(3). Exxon Mobil's return position thus satisfies the reasonable basis standard. Accordingly, the Court grants Exxon Mobil's motion and denies the Government's motion regarding penalty for impermissible change in accounting method.

### IV. ADDITIONAL FINDINGS

Exxon Mobil also moves for the Court to make additional fact findings based on the record at the bench trial. The Court has reviewed Exxon Mobil's additional proposed findings and has determined that the proposed findings are not material to the Court's disposition of this case. Accordingly, without regard to whether the evidentiary record supports such proposed findings, the Court denies Exxon Mobil's motion for additional findings.

### CONCLUSION

For the reasons stated, the Court grants Exxon Mobil's motion for partial summary judgment regarding penalty and denies the Government's motion. The parties are directed to confer regarding whether any additional proceedings in the District Court are needed. If

MEMOORANDUM OPINION AND ORDER – PAGE 13

either party believes that such proceedings are needed, the parties are directed to identify the further proceedings needed in a joint status report filed within 28 days of the date of this Order.  If the parties agree that no further proceedings in the District Court are needed, the parties are directed to confer regarding a form of judgment.  If the parties are unable to agree as to form, then each party shall submit its proposed form of judgment, together with a brief discussion of the differences, within 28 days of the date of this Order.

Signed January 13, 2021.

David C. Godbey
United States District Judge