**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| EXXON MOBIL CORPORATION, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 3:16-cv-2921-N |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**PLAINTIFF EXXON MOBIL CORPORATION'S MOTION TO MAINTAIN THE
SEALED STATUS OF CONFIDENTIAL DOCUMENTS AND REMOVE HIGHLY
SENSITIVE DOCUMENTS FROM CM/ECF
<u>AND BRIEF IN SUPPORT</u>**

Emily A. Parker
Texas Bar No. 15482500
emily.parker@tklaw.com
Mary A. McNulty
Texas Bar No. 13839680
mary.mcnulty@tklaw.com
William M. Katz, Jr.
Texas Bar No. 00791003
william.katz@tklaw.com
J. Meghan Nylin
Texas Bar No. 24070083
meghan.nylin@tklaw.com
Leonora S. Meyercord
Texas Bar No. 24074711
lee.meyercord@tklaw.com
Richard B. Phillips, Jr.
Texas State Bar No. 24032833
rich.phillips@tklaw.com
Dina McKenney
Texas Bar No. 24092809
dina.mckenney@tklaw.com

THOMPSON & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1700
(214) 969-1751 (Fax)

Kevin L. Kenworthy
D.C. Bar No. 414887
kkenworthy@milchev.com
George A. Hani
D.C. Bar No. 451945
ghani@milchev.com
Andrew L. Howlett
D.C. Bar No. 1010208
ahowlett@milchev.com

MILLER & CHEVALIER, CHARTERED
900 16th Street, NW
Washington, DC 20006
(202) 626-5800
(202) 626-5801 (Fax)

Pursuant to Local Rule 79.4, Plaintiff Exxon Mobil Corporation ("ExxonMobil") requests that the Court order that all sealed documents maintained on paper remain sealed. During this litigation, both ExxonMobil and Defendant United States of America submitted to the Court certain paper documents containing proprietary and confidential business information belonging to ExxonMobil (the "Confidential Documents"). Recognizing the confidential nature of these documents and the harm that would result from public disclosure, this Court granted ExxonMobil's requests that the Confidential Documents be submitted under seal to prohibit public disclosure. ExxonMobil now files this motion to maintain the sealed and confidential nature of the paper documents at issue. Additionally, pursuant to Miscellaneous Order No. 61-1, ExxonMobil moves to remove certain highly sensitive documents, as defined by that Order, from the CM/ECF system.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This litigation concerns ExxonMobil's claims for refund of federal income taxes and penalties, plus interest, for taxable years 2006, 2007, 2008 and 2009. Throughout this proceeding, ExxonMobil has acted to protect its Confidential Documents—which are primarily confidential agreements and other documents relating to the transactions in Qatar and Malaysia at issue in this lawsuit and nonpublic detailed financial information, tax calculations and workpapers—from public disclosure.

The Court recognized that the Confidential Documents are protected by Federal Rule of Civil Procedure 26(c) and entered a pretrial protective order protecting the Confidential Documents from public disclosure. *See* Amended Protective Order, Dkt. No. 52 (the "Protective Order"). ExxonMobil designated the Confidential Documents as "Confidential Information" during discovery due to the harm that would result from public disclosure. Pursuant to the

Protective Order, both parties filed the Confidential Documents under seal to protect them from public disclosure. *See, e.g.*, Dkts. 83, 94, 158–59, 176, 187, 263–67, 287.

Further, when ExxonMobil entered the Confidential Documents as exhibits at trial, it sought and obtained leave to submit those materials under seal and to close the courtroom during testimony regarding the Confidential Documents. *See, e.g.*, Dkt. 273 at 9–10, 72; Dkt. 274 at 43–44, 127–28, 221, 226; Dkt. 275 at 3, 7–8, 18, 20–22, 27. Finally, ExxonMobil sought and obtained an order from this Court that the confidential portions of the trial transcripts be redacted from the publicly available transcripts. Dkts. 238, 243, 255. ExxonMobil and Defendant submitted trial exhibits as paper documents.

Included in the Confidential Documents are certain agreements with foreign sovereigns or entities owned and controlled by a foreign sovereign, specifically the Development and Fiscal Agreements ("DFAs"), the Joint Venture Agreements ("JVAs"), and the Production Sharing Contacts ("PSCs"), and related agreements, together with their related amendments, restatements, and supplements. *See* Declaration of Robert F. Ylagan ("Second Ylagan Decl.") ¶ 11, attached to Pl.'s App'x as Exhibit 1 (App. 3).[1] These agreements, together with internal documents summarizing the key terms and economics of those agreements and information regarding ExxonMobil's oil and gas reserves in Qatar and Malaysia (collectively, "Highly Sensitive Information"), contain sensitive and confidential information that may be of interest to a hostile foreign government and whose use or disclosure by a hostile foreign government would likely cause significant harm to ExxonMobil. *Id.*

---

[1] ExxonMobil also submitted a Declaration of Robert F. Ylagan in support of the parties' Joint Submission in Support of the first Protective Order. *See* Dkt. 48, Tab 11 ("First Ylagan Decl."). The First Ylagan Declaration is attached to ExxonMobil's Appendix as Exhibit 1-A (App. 5–16).

On August 8, 2018, the Court granted Defendant United States of America's motion for partial summary judgment on Count I of ExxonMobil's Original Complaint [Dkt. 80]. On June 19–24, 2019, this matter proceeded to trial before the Court on specified issues. Thereafter, the Court entered its Findings of Fact and Conclusions of Law [Dkt. 276] regarding Counts II and III of the Original Complaint on February 24, 2020. And on January 13, 2021, the Court granted ExxonMobil's motion for partial summary judgment regarding penalties, thereby granting judgment in favor of ExxonMobil on Count I of the Supplemental Complaint [Dkt. 290].

Now that final judgment has been entered [Dkt. 292], ExxonMobil requests that the Court order that all paper copies of the Confidential Documents be maintained under seal pursuant to Local Rule 79.4. Additionally, ExxonMobil requests that the Court remove the Highly Sensitive Information from CM/ECF.

## II.   ARGUMENT AND AUTHORITIES

### A. The Court should order that all paper copies of documents entered under seal be maintained under seal.

#### 1. Legal Standard

Under Northern District of Texas Local Rule 79.4, all sealed documents maintained on paper will be deemed unsealed 60 days after final judgment "[u]nless the presiding judge otherwise directs." N.D. Tex. L.R. 79.4. In granting ExxonMobil's repeated requests to file the Confidential Documents under seal and close the courtroom during testimony regarding the contents of the Confidential Documents, this Court has already ruled that the interests favoring nondisclosure outweigh the presumption of public access to court records. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). In light of the Court's previous determination that the Confidential Documents should be filed under seal, the only issue presented by this Motion is whether the paper

copies of Confidential Documents should remain under seal notwithstanding the entry of final judgment. The answer to that question is unquestionably, "yes."

> **2. Public disclosure of ExxonMobil's Confidential Documents would significantly harm ExxonMobil's competitive standing in the oil and gas industry.**

The Confidential Documents that ExxonMobil filed under seal contain confidential and proprietary information relating to the transactions at issue in this lawsuit and tax workpapers and calculations pertaining to its tax-refund claim. In particular, the Confidential Documents fall into the following categories:

- DFAs, JVAs, sale and purchase agreements ("SPAs") for liquefied natural gas ("LNG"), production sharing contracts ("PSCs"), and other Qatari agreements;

- Financial models analyzing the economics related to the SPAs, the sale of gas or LNG, or the construction of new LNG trains;

- Internal presentations and documents regarding project financials and economics and development strategies in Qatar, including strategies related to marketing and expansion opportunities in Qatar and the assumptions used in the economic evaluation of such opportunities;

- Technical information related to ExxonMobil's facilities and operations in Qatar;

- PSCs and other Malaysian agreements;

- Financial models analyzing the economics related to various PSCs and other transactions;

- Internal presentations and documents regarding development strategies in Malaysia, including strategies related to the negotiation and execution of new PSCs;

- Nonpublic financial and tax information, including information regarding ExxonMobil's foreign tax credits and tax liability, including for years beyond the years at issue in this lawsuit; and

- Other agreements, internal analyses and evaluations, and other documents designated by ExxonMobil as Confidential Information under the Amended Protective Order.

All of these documents either qualify as trade secrets or confidential commercial information. None of these documents at issue has been publicly disclosed. *See* First Ylagan Decl. ¶¶ 3, 18 (App. 6, 16); Second Ylagan Dec. ¶¶ 4, 5 (App. 2–3).

If ExxonMobil's proprietary or confidential research, development or commercial information is publicly disclosed and becomes available to its competitors, ExxonMobil and its shareholders would suffer significant economic harm. First, with respect to the DFAs, JVAs, PSCs and other key agreements related to transactions at issue, if they were publicly disclosed, ExxonMobil would be harmed because its competitors would know the specific terms of the agreements and could use them against ExxonMobil in future contracting or bidding opportunities. First Ylagan Decl. ¶¶ 5, 9, 12, 15 (App. 7–8, 11, 14–15); Second Ylagan Decl. ¶ 5 (App. 3). Courts have found that the competitive disadvantage that would flow to a contracting party if agreements containing confidential business information were made public can outweigh the public's interest in accessing court records.[2] Moreover, these agreements contain express confidentiality provisions that, if breached, could result in liability for breach of contract. Further, ExxonMobil's contractual counterparties would question whether ExxonMobil properly maintained the agreements' terms in confidence, which would impact ExxonMobil's ongoing and future relationships with those counterparties. *See* First Ylagan Decl. ¶¶ 9, 15 (App. 11, 14–15); Second Ylagan Decl. ¶ 5 (App. 3).

---

[2] *See, e.g.*, *DISH Network, LLC v. WLAJ-TV, LLC*, CV 16-0869, 2017 WL 1333057, at *2 (W.D. La. Apr. 3, 2017) ("This Court agrees disclosure of the terms of the Agreement could cause substantial harm to DISH, as well as WLAJ and non-party Sinclair Broadcast Group. In this case, this Court concludes the competitive disadvantages that would flow to these parties if the Agreement were made public outweighs the interest of the public, including competitors, of viewing specific provisions in the Agreement.").

Indeed, the State of Qatar has noted that the DFAs "provide express restriction on the disclosure of confidential information." *See* Letter from the Ministry of Energy and Industry for the State of Qatar, attached to Pl.'s App'x as Exhibit 2 (App. 18). The State of Qatar expressly notified ExxonMobil that any disclosure in this litigation of "the joint venture or development and fiscal agreements, as well as related documents and agreements; documents or models relating to pricing, marketing, strategic, development, or economic issues; and documents related to technical issues" would "release commercially sensitive information and would ***damage the interests of the State of Qatar and its relationship with ExxonMobil***." *Id.* (emphasis added).

Further, the Qatari and Malaysian projects at issue are ongoing, and the agreements governing those projects are subject to future renegotiation, modification, or amendment. *See* First Ylagan Decl. ¶¶ 9, 15 (App. 11, 14–15); Second Ylagan Decl. ¶ 5 (App. 3). If ExxonMobil's business or negotiation plans or strategies were publicly disclosed, ExxonMobil would be harmed because its counterparties could use this information against ExxonMobil in future negotiations. *See* First Ylagan Decl. ¶¶ 9, 15, 17 (App. 11, 14–16); Second Ylagan Decl. ¶ 5 (App. 3). Thus, ExxonMobil has a strong interest in maintaining the confidentiality of these agreements.

In addition, because the claims in this lawsuit involve various aspects of the petroleum industry—including the exploration, production, development, and refining of hydrocarbons, and the processes for marketing, manufacturing, storing, shipping, and regasifying liquefied natural gas—the Confidential Documents contain proprietary and confidential information regarding ExxonMobil's operations. *See* First Ylagan Decl. ¶¶ 5-8, 12-15 (App. 7–15); Second Ylagan Decl. ¶ 5, 7 (App. 3). If this information is publicly disclosed, ExxonMobil would be harmed because many of them reflect proprietary or confidential technical, engineering, research, development, production, reserve, or well information, placing ExxonMobil at a competitive disadvantage

because its competitors would be able to ascertain proprietary and confidential information about ExxonMobil's operations without having made the same investment that ExxonMobil did. *See* First Ylagan Decl. ¶¶ 5-8, 12-15 (App. 7–15); Second Ylagan Decl. ¶ 5, 7 (App. 3).

Finally, because this is a tax-refund lawsuit, ExxonMobil's tax return and return information—as defined in 26 U.S.C. § 6103(b)(1) and (2)—includes confidential information that should be protected. To support its claims, ExxonMobil relied on nonpublic financial and tax information, including forecasts or projections, reflecting ExxonMobil's analysis of the transactions at issue. *See* First Ylagan Decl. ¶ 17 (App. 15–16). Public disclosure of this information would harm ExxonMobil by allowing its competitors to use the information against ExxonMobil in future contracting or bidding opportunities, and by allowing its contractual counterparties to understand how ExxonMobil evaluates the transactions at issue, which would impact future negotiations. *See id.* As the Fifth Circuit has recognized, "[i]ncome tax returns are highly sensitive documents" in part because of "the taxpayer's privacy concerns … ." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993); *accord Sunoco, Inc. v. United States*, No. 15-cv-587, Protective Order (Fed. Cl. July 15, 2015) (noting that there is a "strong public policy in maintaining the confidentiality of tax returns and return information").[3] Nonpublic financial information is likewise sensitive and protected from disclosure. *See HomeVestors of Am., Inc. v. LeGate*, No. 3:12-CV-01850-P, 2013 WL 3348948,

---

[3] Courts in tax cases routinely enter trial protective orders prohibiting the disclosure of confidential information. *E.g.*, *Facebook, Inc. v. Comm'r*, No. 21959-16 (Oct. 3, 2019), *Tribune Media Co. v. Comm'r*, No. 20940-16 (T.C. Sept. 20, 2019); *TGS-NOPEC Geophysical Co. v. Comm'r*, No. 28140-14 (T.C. Dec. 29, 2017); *Coca Cola v. Comm'r*, No. 31183-15, Order (T.C. Nov. 21, 2017); *PRA Grp. v. Comm'r*, No. 25240-11, Order (T.C. May 8, 2017); *Guidant v. Comm'r*, No. 5989-11, Order (T.C. July 8, 2016); *Eaton v. Comm'r*, No. 5576-12, Order (T.C. Aug. 5, 2015); *Medtronic v. Comm'r*, No. 6944-11, Order (T.C. Jan. 22, 2015); *Amazon.com, Inc. v. Comm'r*, No. 31197-12, Order (T.C. Oct. 21, 2014). These orders generally provide that protected information shall remain under seal and shall not become part of the record of the case available to the public unless the parties otherwise agree or the Tax Court so orders.

at *5 (N.D. Tex. July 3, 2013) ("Therefore, the Court orders that all financial documents produced by HBN shall be treated as confidential information and governed by the Protective Order entered by this Court on October 12, 2012.").

Recognizing that confidential information would be disclosed in this case, this Court issued the Protective Order to protect that information from public disclosure during the pretrial phase of this litigation. This Court also granted ExxonMobil's requests to enter the Confidential Documents under seal at trial and to redact those portions of the publicly available transcript. *See* Dkts. 238, 243, 255; Dkt. 273 at 9–10, 72; Dkt. 274 at 43–44, 127–28, 221, 226; Dkt. 275 at 3, 7–8, 18, 20–22, 27. Accordingly, this Court has already ruled that the interests favoring nondisclosure outweigh the presumption of public access to court records. That remains true today. Second Ylagan Decl. ¶ 5 (App. 3). Accordingly, this Court should order that the paper copies of Confidential Documents be maintained under seal to maintain the confidentiality of this same information after final judgment.[4]

Notably, ExxonMobil's request is no broader than necessary to protect its interests. It does not seek to seal the entire record. Rather, ExxonMobil seeks to maintain the seal of any paper copies of the Confidential Documents to prevent disclosure of its proprietary and confidential business information.

### B. The Court should remove the Highly Sensitive Information from CM/ECF.

In response to a recent cybersecurity breach that left vulnerable all documents on CM/ECF, even those filed under seal, the Northern District of Texas recently entered Miscellaneous Order 61-1 ("MO 61-1"). Under MO 61-1, a party may request removal from CM/ECF of a previously

---

[4] Local Rule 79.4 addresses only "sealed documents maintained on paper" and does not discuss electronically filed documents. Accordingly, sealed documents maintained electronically on the CM/ECF system remain sealed.

filed document that qualifies as a Highly Sensitive Document ("HSD"), as defined by MO 61-1. *See* MO 61-1 at 2.  The Court defines an HSD as "a document that contains sensitive or confidential information that may be of interest to the intelligence service of a hostile foreign governing and whose use or disclosure by a hostile foreign governing would likely cause significant harm." *Id.* at 1.  The Court expects that HSDs may be filed in cases involving "foreign sovereign interests" or "non-public intellectual property, including trade secrets." *Id*.

As reflected by the Second Ylagan Declaration, ExxonMobil believes, in good faith, that the Highly Sensitive Information satisfies the criteria for an HSD.  The Highly Sensitive Information consists of (1) the Development and Fiscal Agreements, Joint Venture Agreements, Production Sharing Contacts, and related agreements, together with their related amendments, restatements, and supplements; (2) documents summarizing the key terms and economics of those agreements; and (3) information regarding ExxonMobil's oil and gas reserves in Qatar and Malaysia.  *See* Second Ylagan Decl. ¶ 11 (App. 3–4).  Those documents appear at Docket Nos. 75-1, 83 (exhibits 3 and 17 only), 94, 106-3, 154, 156, 159, 163-2 through 163-13, 174, 176, 183, 195, 198, 247, 257, 260, 263, 264, 265, 266, 267, 269, 270, 271, 272, 287, 288-1 through 288-3. *See id.*

These documents contain sensitive and confidential information that may be of interest to a hostile foreign government and whose use or disclosure by a hostile foreign government would likely cause significant harm to ExxonMobil.  *See* Second Ylagan Decl. ¶ 11 (App. 3–4).  By way of example, the State of Qatar expressly notified ExxonMobil that any disclosure in this litigation of "the joint venture or development and fiscal agreements, as well as related documents and agreements; documents or models relating to pricing, marketing, strategic, development, or economic issues; and documents related to technical issues" would "release commercially

sensitive information and would *damage the interests of the State of Qatar and its relationship with ExxonMobil*." Letter from the Ministry of Energy and Industry for the State of Qatar (emphasis added). In light of this risk of significant harm, ExxonMobil requests that the Court remove the Highly Sensitive Information from CM/ECF and, under L.R. 79.4, maintain those documents under seal.

### III.   CONCLUSION

For the reasons set forth above, ExxonMobil respectfully requests that the Court enter an order that all paper copies of any documents filed under seal be maintained under seal and that the Highly Sensitive Information be removed from CM/ECF and maintained under seal in a paper format.

Dated: March 4, 2021

        Respectfully submitted,

        THOMPSON & KNIGHT LLP

By:    /s/ *Emily A. Parker*
        Emily A. Parker
        Texas Bar No. 15482500
        emily.parker@tklaw.com
        Mary A. McNulty
        Texas Bar No. 13839680
        mary.mcnulty@tklaw.com
        William M. Katz, Jr.
        Texas Bar No. 00791003
        william.katz@tklaw.com
        J. Meghan Nylin
        Texas Bar No. 24070083
        meghan.nylin@tklaw.com
        Leonora S. Meyercord
        Texas Bar No. 24074711
        lee.meyercord@tklaw.com
        Richard B. Phillips, Jr.
        State Bar No. 24032833
        rich.phillips@tklaw.com
        Dina W. McKenney
        Texas Bar No. 24092809
        dina.mckenney@tklaw.com
        1722 Routh Street, Suite 1500
        Dallas, Texas 75201
        (214) 969-1700
        FAX (214) 969-1751

        MILLER & CHEVALIER, CHARTERED
        Kevin L. Kenworthy
        D.C. Bar No. 414887
        kkenworthy@milchev.com
        George A. Hani
        D.C. Bar No. 451945
        ghani@milchev.com
        Andrew L. Howlett
        D.C. Bar No. 1010208
        ahowlett@milchev.com
        900 16th Street NW
        Washington, D.C. 20006
        (202) 626-5800
        FAX (202) 626-5801

        **ATTORNEYS FOR PLAINTIFF**
        **EXXON MOBIL CORPORATION**

**PLAINTIFF'S MOTION TO MAINTAIN THE SEALED STATUS OF CONFIDENTIAL DOCUMENTS AND REMOVE HIGHLY SENSITIVE DOCUMENTS FROM CM/ECF – PAGE 11**

**CERTIFICATE OF CONFERENCE**

I certify that on February 26, 2021, I emailed Cory Johnson, counsel for Defendant, regarding the relief requested in this motion. On March 4, 2021, Mr. Johnson advised me that Defendant is unable to indicate whether it opposes the relief requested as of that date, and Plaintiff therefore assumes Defendant is opposed. The parties will promptly inform the Court if Defendant's position changes.

/s/ *J. Meghan McCaig.*
J. Meghan McCaig